UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |
|---|---|
| OPHNET, INC., A Massachusetts Corporation and JOHN A. HIRSCH and RONALD W. ZOLLA, Individually and as Shareholders of ZHL, INC., A Massachusetts Corporation, and KENNETH CRAM, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL LAMENSDORF, Individually and as a Shareholder of ZHL, INC.; MICHAEL LAMENSDORF, M.D., P.C., A Florida Professional Corporation; BAYOU JENNKAY, INC., a Florida Corporation; and KATHY LAMENSDORF, Individually and as an officer of Bayou JennKay, Inc.; and ZHL, INC., a Massachusetts Corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. <br> 1:05-cv-10970-DPW |

---

## OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

On May 27, 2005, the Defendant Kathy Lamensdorf's response was due to the plaintiffs' document requests. See "Plaintiffs' Cross-Motion to Compel Production of Documents," submitted concurrently herewith. She did not respond to the document requests, and did not produce any documents. Id.

In the apparent belief that the best defense is a good offense, Mrs. Lamensdorf and the other defendants instead moved to compel a relative handful of documents which were ordered produced in February by the Massachusetts Superior Court. See Orders of

February 11, 2005, concerning defendants' motions.[1]  Counsel for the Lamensdorfs,

however, filed their motion without first holding the discovery conference required by

Rule 37.1(A)[2].  Indeed, as the attached correspondence demonstrates, even after the

motion was filed and plaintiffs' counsel insisted that a discovery conference be held,

counsel claimed that he was unable to address the substance of any of the issues due to

lack of authority and that neither of the two Florida lawyers who now seek to be admitted

to this Court would agree to a discovery conference within the 7 days required by L.R.

37.1(A) because they were "traveling on business" and too busy.  This failure to adhere

to the reasonable requirements of the Local Rules, without more, justifies rejection of the

Lamensdorfs' motion.

Even if the Court were to reach the substance of the motion, the fact of the matter

is apart from two justiciable issues concerning (i) whether Mr. Hirsch and Mr. Zolla must

produce tax returns that post-date the Lamensdorfs' document requests and (ii) whether

the plaintiffs should be compelled to request from the IRS tax returns not now in their

possession, *the plaintiffs have produced* all the responsive documents they are reasonably

required to produce.  For that reason as well, the motion should be denied.

## I.    THE MOTION FOR SANCTIONS SHOULD BE DENIED FOR FAILURE TO COMPLY WITH L.R. 37.1

---

[1] As this Opposition is written it is expected that the defendants will shortly comply with
L.R. 81.1 and file certified copies of the Superior Court record.  If not, the plaintiffs will
make copies of all cited pleadings available on request.

[2] Throughout this motion, "counsel for the Lamensdorfs" means the firm of Foley Hoag
and the attorneys from that firm who represent the Lamensdorfs in that matter.  At the
time of the events in question, the Lamensdorfs' Florida attorneys had not even applied
for *pro hac vice* admission and as this opposition is written only one of the Florida
lawyers who have sought admission before this Court have in fact been admitted.  The
term "Florida counsel" will be used to denote those lawyers.

The Court should not address the substance of the Defendants' Motion to Compel because the Defendants have <u>not</u> complied with the Local Rules concerning discovery disputes. LR 37.1(A) provides, in pertinent part:

> (A) Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the conference. ...Failure of opposing counsel to respond to a request for a discovery conference within seven (7) days of the request shall be grounds for sanctions, which may include automatic allowance of the motion.

The purpose of the rule is to "avoid premature motions" and "to enable the parties to attempt to narrow, if not resolve, their dispute. It is not up to the court to expend its energies when the parties have not sufficiently expended their own." <u>Hasbro v. Serafino</u>, 168 F.R.D. 99, 101 (D. Mass. 1996).

As the correspondence collectively attached here to as <u>Exhibit 1</u> shows, however, the defendants did not in any meaningful sense comply with the rule. Indeed, by the defendants' own account of the 'discovery conference' contained in their Memorandum, <u>only</u> the missing tax returns were the subject of the discovery conference; the subject of William Hirsch's deposition, of obtaining documents from William Hirsch, or of reopening discovery generally was <u>not</u> raised. <u>See</u> Defendants' Memorandum at 11. Manifestly, it is impossible to narrow or resolve an issue that was never on the table.

Furthermore, both the Defendants' account of the discovery conference and the certification provided under LR 37.1 is highly misleading. Mr. Taffe's supposed

3

"conference" consisted of tossing imprecations about the plaintiffs' document production over his shoulder at opposing counsel as he left the room following a deposition.[3]

Moreover, the failure to abide by the letter and spirit of the rules did not stop there. Almost immediately after service of the motion, counsel for the Plaintiffs requested, in writing, a discovery conference with his counterpart. Id. at letter of May 31, 2005. Massachusetts counsel insisted that he had no authority to answer for the motion he had filed, and instead referred the matter to Florida counsel; Florida counsel, in turn, was unavailable to hold the requested conference until a week later (according to Massachusetts counsel) because Florida counsel was too busy with work and travel. See Ex. 1 at letters of June 3, 2005. Not until the very day this opposition was due, at 4:50 p.m., did the defendants' lawyers confer with plaintiffs' counsel (a call plaintiffs' counsel initiated), and at that time refused to withdraw or modify any part of the motion, including the parts that seek to compel documents that the plaintiffs agreed to produce.

It is therefore unsurprising that the Defendants' memorandum violates LR 37.1, which requires the memorandum state with particularity the "time, date, location and duration of the conference; who was present for each party; the matters on which the parties reached agreement; and the issue remaining to be decided by the court." See LR 37.1(B)(2). Most of this information is conspicuously missing. See Defendants' Memorandum at 11.

Plainly, one cannot know if a matter is at an impasse until it has been discussed, and there was no impasse reached here. For example, the plaintiffs have now produced

---

[3] Since Mr. Taffe is not admitted in this Court and had not even applied for admission pro hac vice at the time he participated in this supposed 'conference', it is difficult to see how he could have discharged counsel's responsibility under the Local Rules anyway.

Ophnet's state income tax returns; the failure to have done so previously was an
oversight, albeit one that was caused in no small part by Florida counsel's insistence that
all documents in William Hirsch's possession should be retained by William Hirsch so
that they could be produced directly in Florida in response to a subpoena rather than
passing through the hands of plaintiff's counsel.[4]  Similarly, the Lamensdorfs' attempt to
compel state income tax returns from a New Hampshire resident clearly represents a
waste of judicial and party resources that presumably would not have survived a
discovery conference.  Furthermore, the Defendants' motion includes a request for
further discovery in the form of depositions and an extension of the discovery deadline
which concluded, pursuant to a prior order of the Superior Court, on 30 May 2005.  That
aspect of the motion was <u>never</u> discussed by counsel before the motion was brought and
even the Lamendorfs do not appear to contend otherwise.[5]

Courts in this district have not hesitated to deny motions or even impose sanctions
upon movants whose certification is misleading or who otherwise fail to observe both the
letter and the spirit of the local rules.  <u>See</u>, e.g., <u>Hasboro</u>, <u>supra</u>; <u>Syrjala v. Total</u>
<u>Healthcare Solutions, Inc.</u>, 186 F.R.D. 251, 254 (D. Mass. 1999) (imposing sanctions
upon counsel for misleading LR 37.1 certification).  Indeed, since LR 37.1(A) provides
that the failure of a party to respond to a request for a discovery conference within seven
(7) days may include sanctions such as automatic allowance of the motion, it would seem
to follow that automatic <u>denial</u> of a motion is also an acceptable sanction for lawyers who

---

[4]  William Hirsch, not a party to this action, is the brother of the plaintiff John A. Hirsch
and  the C.P.A. who prepared the income tax returns for Ophnet, for John Hirsch, and for
plaintiff Ronald W. Zolla.
[5]  In addition, although the motion requests additional discovery, it has never been signed
by the party making the request, as LR 26.2(B) requires.

are too busy to hold a discovery conference when requested but who are not too busy to file motions.

In summary, the Local Rules exist to insure that parties cannot do precisely what the Lamensdorfs did here: rush to the courthouse on slender grounds (and largely pretextual grounds, at that) rather than insuring that all avenues have been exhausted before invoking judicial intervention. Accordingly, the motion should be denied out of hand.

## II.    KENNETH CRAM HAS PRODUCED *MORE* DOCUMENTS THAN THE PLAINTIFFS HAVE REQUESTED

The defendants claim that Mr. Cram has failed to produce (i) federal income tax returns for certain specified years, (ii) income tax returns for KGC Consulting, Inc. ("KGC"), the New Hampshire corporation through which he conducted business, (iii) state income tax returns for himself and KGC, and (iv) "copies of any and all documents responsive [to other document requests] where the copy bears markings or writings not present on the original or where the copies otherwise different from the original." See Defendants' Memorandum at 9. To take the topics in order:

(i)    Mr. Cram is now a resident of South Africa and he did not bring his tax returns with him to that country. He produced all of the tax returns which his accountant has in his possession, i.e., 1998 and 2000 – 2003 inclusive. Mr. Cram has requested transcripts from the IRS of the information contained in his tax returns for the years 1995,

1996, 1997, and 1999. Nothing more can reasonably be required of Mr. Cram, and he is certainly not responsible for any delays by the IRS in providing those transcripts.[6]

(ii)    As to the returns of KGC Consulting, Mr. Cram is under no obligation either based upon the defendants' document request (which they strategically do not attach to their motion) or under the Superior Court's Order to produce tax returns for KGC. The defendants never <u>asked</u> for KGC's tax returns, and KGC was not even referenced in the defendants' motion to compel. <u>See</u> "Memorandum in Support of Motion to Compel Production of Documents From Plaintiff Kenneth Cram," January 12, 2005, at 6-7 (demanding production only of Mr. Cram's returns). Nevertheless, Mr. Cram produced KGC's returns, and has even requested the IRS to provide him with transcripts for years which he does not have in his possession. There is literally nothing more Mr. Cram can do.

(iii)    The attempt to compel state income tax returns for Mr. Cram and especially for KGC Consulting is literally sanctionable. As the defendants well know (because *Mr. Cram told them at deposition*), Mr. Cram was a New Hampshire resident before moving to South Africa and KGC is a New Hampshire corporation. There ***are*** no state tax returns.

(iv)    There also are no non-identical documents which were not previously produced from Mr. Cram's files. Indeed, throughout the plaintiffs' consolidated document production, which to date has totaled nearly *40,000 pages of documents*, all such non-identical documents have regularly been produced.

Accordingly, there is nothing to be compelled from Mr. Cram.

---

[6] The defendants are well aware that Mr. Cram has filled out the necessary forms, as it is has been the subject of correspondence between counsel.

**III.    APART FROM CERTAIN TAX RETURNS WHICH WERE NOT SUBJECT TO THE COURT'S ORDER, MR. HIRSCH AND MR. ZOLLA HAVE PRODUCED ALL RESPONSIVE DOCUMENTS IN THEIR CUSTODY AND CONTROL.**

Mr. Hirsch and Mr. Zolla have already produced all documents that they have in their possession indicating income paid from Ophnet, ZHL, or any other plaintiff.  The only responsive documents that they had in their possession were the tax returns that they produced.[7]  Accordingly, they have no further responsive documents to produce.

The defendants' motion is correct, however, that Mr. Hirsch and Mr. Zolla have not produced tax returns from 1994 – 1997, nor have they produced tax returns from 2003 – 2004.  As discussed below, the former returns are not in their possession or control, and the latter are not responsive to the document requests or the Superior Court's Order.

**A.    Mr. Hirsch and Mr. Zolla Should Not Be Obliged To Execute Forms to Obtain Tax Returns That Are No Longer In Their Custody Or Control**

As the Lamensdorfs' Memorandum acknowledges, the defendants do not seek to compel directly from Mr. Hirsch and Mr. Zolla their 1994-1997 tax returns, because Mr. Hirsch and Mr. Zolla no longer have copies of them.  Rather, the defendants insist that the Superior Court's Order requires the plaintiffs to execute transcript requests to the IRS so that the information contained in the returns can be made available for production.[8]

---

[7] In addition, Ophnet has available general ledger records which detail all payments made to Mr. Hirsch or Mr. Zolla  from 1997 to the present.  If the defendants' counsel had participated in the requested discovery conference, it might have been possible to ascertain what else the defendants thought they were entitled to obtain and whether other information could have substituted in those documents.

[8] To the extent that any Ophnet federal tax returns have not been produced, this argument applies to the corporation as well.

The Lamensdorfs' motion to compel before the Superior Court did <u>not</u>, however, demand as alternative relief that if Mr. Hirsch and Mr. Zolla did not have responsive tax returns that they should be required to execute the necessary forms to obtain those returns. <u>See</u>, "Defendants' Memorandum in Support of Motion to Compel Production of Documents From Plaintiff John Hirsch," January 12, 2005, at 6-7; "Defendants' Memorandum in Support of Motion to Compel Production of Documents From Plaintiff Ronald Zolla," January 12, 2005, at 6-7. In the absence of any request for such extraordinary relief, the Lamensdorfs cannot reasonably claim that the Superior Court ordered such relief or that plaintiffs have wrongly failed to provide such forms.

The Lamensdorfs also make no principled argument why this Court should now order such forms to be executed. There is a qualified privilege for tax returns that rests in part upon encouraging taxpayer honesty, <u>Payne v. Howard</u>, 75 F.R.D. 465, 469 (D. D.C. 1977) (Scalia, D.J.), and in part rests upon discouraging potential harassment of litigants. <u>See</u> <u>Finance Comm'r of Boston v. McGrath</u>, 343 Mass. 754, 767 (1962). Here, the claimed basis for seeking tax records is completely irrelevant. <u>See</u> <u>Middlesex Savings Bank v. Johnson</u>, 777 F. Supp. 1024, 1032 (D. Mass 1991) (holding that discovery of tax returns should not be allowed where the information is "of no possible consequence"). The only relevance that the Lamensdorfs care to articulate for the tax returns is that they will supposedly show that Mr. Hirsch and Mr. Zolla overcharged the medical practice and/or ZHL (the corporation that owned an ambulatory surgery center in which the parties were shareholders). ZHL, however, did not exist until 1998. Mr. Hirsch and Mr. Zolla did not do any work for the medical practice until September 1996, and other

documents that they have produced firmly show that the practice did not pay them until 1996. Thus, the 1994 and 1995 tax returns are irrelevant under any possible view.

The 1996 and 1997 tax returns also have nothing to do with the information that the Lamensdorfs claim to seek. If Mr. Hirsch and Mr. Zolla somehow overcharged the medical practice for its services, the medical practice is arguably entitled to get the money back.[9] The Lamensdorfs, however, never paid Mr. Hirsch or Mr. Zolla anything for management services. The entity the Lamendorfs paid was Ophnet. Presumably, the Lamendorfs did not even need those tax returns in order to know how much they paid for the management services at issue since they were the ones who paid for it. One way or the other, Mr. Hirsch's and Mr. Zolla's tax returns do not have anything to do with the matter. Accordingly, the Court should not take the intrusive and unnecessary step of requiring them to execute the forms necessary to obtain personal tax returns from the IRS.

**B.      The 2003 and 2004 Returns Were Not Requested And Are Not Relevant**

The Lamensdorfs neither quote nor attach to their motion a copy of the request which they propounded to Mr. Hirsch and Mr. Zolla. The request which they propounded stated:

> **Request No. 24.** All federal income tax returns and all schedules filed therewith for [Hirsch or Zolla] from 1994 to the present.

---

[9] And arguably not: the parties renewed the Management Contract for the medical practice in 2001, and the Lamensdorfs did not at that time or thereafter raise any issue about having been overcharged for the alleged incompetence of the services provided. The first the plaintiffs heard about their 'overcharges' was when they sued the Lamensdorfs for failing to pay for services rendered.

See "Consolidated Memorandum (i) in Opposition to Defendants' Motion to Compel

Production of Documents from John A. Hirsch, Ronald Zolla, and Kenneth Cram and (ii)

in Support of Cross-Motion for Sanctions," January 27, 2005, Exhibit A thereto

(Requests) at Request 24. The "present" in the discovery requests necessarily referred to

June, 2003, when the requests were propounded. Mr. Hirsch's and Mr. Zolla's 2003 and

2004 tax returns did not then exist. They are therefore not responsive and should not be

compelled.

The Lamensdorfs fall back on the claim that their document requests were

continuing requests that required the production of further responsive documents as those

documents came into existence. Mr. Hirsch and Mr. Zolla, however, objected to that

instruction and the defendants never raised the propriety of that objection with the

Superior Court. At that, the instruction is irrelevant. The request specifically demands

documents created up to "the present." No doubt the instructions and the requests, read

together, would require Mr. Hirsch and Mr. Zolla to provide any revised tax returns

which they filed or any notices from the IRS concerning the returns in existence up

through June, 2003, but those instructions cannot reasonably be read to expand the scope

of the "present" to the "future."

The Court should also decline to exercise its discretion to order these documents

produced. The Lamensdorfs have not made any payments to Ophnet since the

Lamensdorfs terminated the Management Agreement for the medical practice in February

2002. Apart from the conclusory insistence that the Lamendorfs need the returns to

"show liability and damages," the fact is that the returns will show nothing of relevance

as compared to the intrusive nature of the requests.[10]  Accordingly, 2003 and 2004 tax

returns have little or no probative value and should not be ordered produced.

Finally, it should be noted that the defendants had through May 2005 to request

further documents.  If they wanted the 2003 and 2004 tax returns, it would have been

simple enough to propound another document request instead of squandering scarce

judicial resources by moving to compel them.  Accordingly, this Court should find that

the 2003 and 2004 returns were not within the scope of the Superior Court's Order and

should refuse to order them produced.

### III.    OPHNET HAS PRODUCED ALL RESPONSIVE DOCUMENTS THAT COULD REASONABLY BE DEEMED TO BE WITHIN THE SCOPE OF THE SUPERIOR COURT'S ORDER

Ophnet has also produced all documents which could reasonably be deemed

subject to the Superior Court's Order.  All available federal tax returns were produced

before the Lamensdorfs filed their motion to compel, and all of Ophnet's state tax returns

from 1994 to 2002 inclusive have now been produced to them.[11]  Accordingly, there is

nothing for the Court to produce.

---

[10] Significantly, the Lamensdorfs do have Mr. Hirsch and Mr. Zolla's tax returns for 1998-2002 and so ought to be able to explain with particularity what the relevant information in the return is and why it matters to their case.  Their failure to do so confirms the pretextual nature of the request.

[11] The delay in production was the result of instructions given by the Lamensdorfs Florida lawyers.  Specifically, that attorney informed counsel for the plaintiffs he wanted to depose William Hirsch at his offices in Tampa and wanted to subpoena documents directly from Mr. William Hirsch. (William Hirsch is the Florida CPA who does Ophnet's, Mr. Hirsch's and Mr. Zolla's tax returns.)  Florida counsel was particularly insistent that any documents which Mr. Hirsch had be produced directly on subpoena and not through plaintiffs' counsel.  The further delay in producing state tax returns was the result an oversight by William Hirsch in not sending the documents to plaintiffs' counsel and an oversight by plaintiffs' counsel in not noticing that they had not been sent.  At any rate, they have all now been produced.

The defendants, also seek "[a]ny and all documents that indicate any income paid to Hirsch from Ophnet, ZHL, or any other Plaintiff," but Mr. Hirsch and Mr. Zolla do not believe that any such documents exist other than what they have produced.[12]  Ophnet has in fact produced (the Lamensdorfs' representations notwithstanding) invoices which were rendered to the practice, payment records relating to those invoices, records showing loans that Ophnet made to the Lamensdorfs' medical practice, and other such information.  It has previously produced a copy of its general ledger which sets forth all payments made to Kenneth Cram and KGC, and concurrent with the filing of this Opposition it has produced excerpts from its general ledger showing all payments made to Mr. Hirsch and Mr. Zolla.  Other information about payments made to the plaintiffs are reflected in the tax returns which they have produced.

Finally, Ophnet <u>has</u> produced all documents that it believes supports its contention that it has helped hundreds of ophthalmology practices around the country.  The Lamensdorfs claim that there were <u>no</u> documents provided "other than Patient Questionnaires provided on March 25, 2005."  Memorandum at 7.  Those, however, are the documents that Ophnet regards as supporting its contention.  The Lamensdorfs are free to disagree, but having left it up to Ophnet to decide which documents support the contention and which do not, the Lamensdorfs cannot reasonably complain about the

---

[12] Because the defendants' counsel will not honor their obligations under L.R. 37.1 to conduct the discovery conference, the plaintiffs could not even ascertain precisely what documents the Lamensdorfs supposed might exist so that a reasonable accommodation may be made.  Not until 4:50 p.m. on the day this opposition was did the defendants' Florida lawyer suggest that general ledger information might suffice.

documents Ophnet chose to produce.[13]  Thus, there are no further documents which should be ordered produced.

## IV.    THE SUPERIOR COURT'S ORDER SETTING AN END TO DISCOVERY ON MAY 30, 2005 SHOULD NOT BE VACATED

The defendants devote several pages of their memorandum to an extended exposition of why they should be permitted to depose William Hirsch, who prepared many of the tax returns at issue.  They then request a *generalized* extension of the discovery deadline to take further depositions, apparently the depositions of anyone they want.

As a threshold matter, the Massachusetts Superior Court set a *firm* discovery deadline of May 30, 2005, having twice before extended discovery on the defendants' motion.  The Order setting the May 30, 2005, discovery cutoff plainly stated that "no further continuances" would be granted.  The Superior Court's order is therefore law of the case, and it can be vacated only for "special circumstances."  Ellis v. United States, 313 F.3d 636, 646 (1st Cir. 2002).

Here, the defendants have been on notice since March 3 that they had to complete discovery by May 30.  There are no circumstances that justify setting aside that order, which was entered on the plaintiffs' motion against the strenuous exceptions of the defendants.  If the Lamendorfs seriously believed that they were missing important documents they could have deposed their witnesses with some of the more than 30,000 pages of documents that were produced.  They could have sought at deposition to ascertain where the rest of the documents were so that a further motion could have been

---

[13] Obviously, Ophnet cannot seek to introduce any unproduced documents at trial to support that contention, but an order to that effect is one for the trial judge to make and not one that should be made at this time.

14

brought on an appropriate record. They could have done any number of things to comply with the May 30 discovery deadline. Indeed, the defendants complain that "since the removal [to this Court], Defendant [sic] was unable to schedule the deposition of William Hirsch due to the discovery guidelines set forth in Federal Court." The plaintiffs have no idea what the Lamensdorfs are talking about, but if the defendants thought there were discovery guidelines in this Court that prevented Mr. Hirsch's deposition, the defendants could and should have brought an appropriate timely motion. The defendants, however, cannot reasonably complain about the effect of discovery guidelines in the forum that they themselves chose. And having failed to do anything to pursue such discovery, they cannot now reasonably complain that discovery has expired.

As to William Hirsch, the defendants' request for his deposition is completely unjustified. The documents that they complain were not produced so that they could depose Mr. Hirsch were in Mr. Hirsch's custody and control all along, and the defendants knew it. At least since this case has been in federal court, the defendants had available nationwide service of process available to compel Mr. Hirsch to produce the very documents they now complain that they could not depose him without and that they now seek to obtain through judicial intervention. Thus, there are no exceptional circumstances to justify extending discovery to permit his deposition.

As to the deposition of the plaintiffs, the request is even less justified than Mr. Hirsch's deposition. The defendants have already been deposed, Mr. Cram for two days and Mr. Hirsch and Mr. Zolla for one day each. Pursuant to L.R. 26.2, any request "for additional discovery events, extension of deadlines, for the completion of discovery or for postponement of the trial must be signed by the attorney *and the party* making the

request." As previously discussed, no L.R. 37.1 discovery conference was ever held, no signature of any party appears on the Lamensdorfs' motion, and the motion should not be considered.

Finally, to the extent that the Court is at all sympathetic to the Lamensdorfs' request, and it should not be, any and all further depositions should be restricted to the information contained in documents which were the subject of the Superior Court's February 11, 2005 order.

## CONCLUSION

For each of the foregoing reasons this Court should:

1.    Find that the Lamensdorfs' discovery motion does not comply with requirements of L.R. 7.1(a), 26.2(B) and (C) and 37.1(A) and (B); and refused to entertain it; or, if the Court reaches the merits;

2.    Should, as to the documents, find that all responsive documents necessary to be produced have been produced; and

3.    Should as to the requested extension of the discovery deadline, find that the Superior Court's Order setting an end to discovery on May 30, 2005 is law of the case and that the defendants have not shown sufficient extraordinary circumstances to warrant reversal of it, or, in the alternative

4.    Should, if any further discovery is ordered, mandate which individuals in particular may be deposed and set strict limits upon the amount of time which the defendants may depose them and the topics which may be raised at the deposition, limiting the latter to issues raised by the

16

documents which were subject to the Superior Court's order of February

11, 2005.

> Respectfully submitted,
>
> OPHNET, INC., JOHN A. HIRSCH,
> RONALD W. ZOLLA, and KENNETH
> CRAM,
>
> By their Attorneys,
>
> /s/ Edward Foye
> J. Owen Todd (BBO # 499480)
> Edward Foye (BBO #562375)
> TODD & WELD LLP
> 28 State Street, 31st Floor
> Boston, MA 02109
> 617-720-2626

Date:  June 10, 2005

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

EDWARD FOYE

TELEPHONE: (617) 720-2626
FACSIMILE:   (617) 227-5777
www.toddweld.com

May 31, 2005

**VIA FAX**

Matthew E. Miller, Esq.
Foley, Hoag LLP
155 Seaport Boulevard
Boston, MA  02210

Re:    **Ophnet, Inc., et al v. Michael Lamensdorf, et al.**
       **U.S.D.C. No. 1:05-10970-DPW**

Dear Mr. Miller:

I have received the Motion for Sanctions which you apparently filed on Friday.  I did not ever discuss with you or anyone else the motion or the substance of it telephonically or otherwise.  Accordingly, the Rule 37(a)(2)(B) and L.R. 37.1(B) certifications appear to be incorrect.

I would appreciate an explanation.

Yours very truly,

Edward Foye

EF/jml
cc:    Mr. John A. Hirsch
       Mr. Ronald W. Zolla

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO              0101
CONNECTION TEL              916178327000
SUBADDRESS
CONNECTION ID
ST. TIME              05/31 16:06
USAGE T               00'58
PGS. SENT                 2
RESULT                OK
```

# TODD & WELD LLP

Attorneys at Law
28 State Street, 31st Floor
Boston, Massachusetts 02109

Telephone: (617) 720-2626
Facsimile: (617) 227-5777

*EDWARD FOYE*

## TELECOPY TRANSMITTAL SHEET

No. of Pages Sent:   (including this page)    2

Date:          May 31, 2005

To:            Matthew E. Miller, Esq.

Fax No.:       **617-832-7000**

From:          Edward Foye, Esq.

Re:            Hirsch/Lamensdorf

If you do not receive all of the pages, or if any part is illegible, please call Joanie Lineman at (617) 720-2626.

THIS TRANSMITTAL IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMITTAL IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

Matthew E. Miller
Boston Office
617) 832-3041
mmiller@foleyhoag.com

June 1, 2005

**By Fax and U.S. Mail**

Edward Foye, Esq.
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109

    Re:    <u>Ophnet et al. v. Lamensdorf et al., Civ. A. No. 10970-DPW</u>

Dear Mr. Foye:

    I have received your letter dated May 31, 2005, regarding the Motion for Sanctions filed by defendants in the above-referenced matter. I do not understand your assertion that you did not discuss the Motion or its substance "telephonically or otherwise" with defendants' counsel. At Mark Briefman's deposition on May 20, 2005, you and Michael Taaffe of Abel Band discussed plaintiffs' failure to produce the court ordered documents, at which time you indicated that plaintiffs would not be producing the documents in question. Mr. Taaffe followed up with a letter dated May 23, 2005, describing in detail the manner in which plaintiffs' production to date has been deficient and confirming that "[s]hould [defendants] fail to receive [plaintiffs'] response within [24 hours], we will file the necessary motion with the Federal Court in the District of Massachusetts." You confirmed plaintiffs' continuing refusal to produce the documents by letter dated May 24, 2005, addressed to Mr. Taaffe, wherein you wrote that defendants "are of course welcome to file a motion to compel."

    I note the aforementioned conversation and correspondence go into far greater detail as to the substance of the present Motion than any interaction between counsel prior to plaintiffs' filing their Motion to Remand. Plaintiffs filed their remand motion without discussing in the least its substance with defendants, including the suggestion of sanctionable conduct on the part of defendants' counsel due to a clerical error which omitted ZHL, Inc. from the caption in the Notice of Removal. Your subsequent acceptance of the explanation for the clerical error and assent to the Motion to Correct were appreciated. What would have been more beneficial to the Court in avoiding confusion, however, would have been for plaintiffs to discuss the substance of their motion with defendants prior to filing pursuant to Local Rule 7,1(A)(2). I also note that plaintiffs have filed a Motion for Attorneys' Fees in connection with their remand motion, along with a certification pursuant to Local Rule 7.1(A)(2) that we discussed the Motion for Attorneys' Fees on May 13, 2005. I have no recollection nor record of any discussion regarding that motion, yet plaintiffs have filed their certification all the same.

Edward Foye, Esq.
June 1, 2005
Page 2

These and other recent dealings suggest that you are not truly confused as to the filing or substance of the present Motion for Sanctions, but are seeking to obfuscate and distract from the real issue at hand: plaintiffs' continued refusal to provide discovery as ordered by the court. Or are you now suggesting that plaintiffs have changed their position, yet again, and are willing to produce the documents? If so, exactly when are plaintiffs planning to produce the documents, and what assurance can you offer that such production will actually be made?

While we are on the subject of discovery, I note that plaintiffs have purported to serve several third party subpoenas which require the production and inspection of documents on June 14, 2005. What justification do plaintiffs offer in seeking to conduct discovery after the May 30, 2005 deadline imposed by the state court and prior to the Fed.R.Civ.P. 26 discovery conference set for this case on June 21, 2005?

Very truly yours,

Matthew E. Miller

MEM
cc:    Michael Taaffe, Esq.

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

EDWARD FOYE

TELEPHONE: (617) 720-2626
FACSIMILE:   (617) 227-5777
www.toddweld.com

June 2, 2005

**VIA FAX**

Matthew E. Miller, Esq.
Foley, Hoag LLP
155 Seaport Boulevard
Boston, MA  02210

    Re:    **Ophnet, Inc., et al v. Michael Lamensdorf, et al.**
            **U.S.D.C. No. 1:05-10970-DPW**

Dear Mr. Miller:

I have received your letter of June 1, 2005. I will address the collateral issues that you raise in it under separate cover. To follow up on our conversation yesterday, however, I would repeat in writing that Mr. Taaffe and I did not discuss the motion for sanctions (or the substance of that motion) at Mr. Briefman's deposition. Mr. Taaffe threw an insulting remark over his shoulder as he was leaving the deposition room about the alleged failure to produce all of the documents which the Superior Court supposedly required my clients to produce, and he refused to discuss the matter when I followed him out of the room. For that matter, he refused to stop walking when I followed him out of the room. That is hardly the discussion that L.R. 7.1 requires.

As to Mr. Taaffe's follow-up letter, a letter is not a discussion. As a matter of fact, while my clients contend and believe that they have produced all responsive documents as ordered by the Court, they are willing to discuss producing other documents which might have the effect of providing your clients with the information they seek and which could very well moot your motion. Among other things, Ophnet maintains a general ledger and I assume it could provide you with particular dates and amounts of checks provided to Mr. Hirsch and Mr. Zolla, even though I cannot at present provide you with the checks themselves. Assuming that you could articulate some reasonable basis for seeking the information and would be willing to forego the motion to compel at least on that subject, Ophnet would certainly have considered producing this information to you.

I reiterate that you have placed on the record a certification under L.R. 7.1(a)(2) which is false, whether intentionally or otherwise, and in my view you have an obligation to correct the record and withdraw the motion. Although I am willing to discuss the status of the

Matthew Miller, Esq.
Page 2
June 2, 2005

document production now or at any time, a discussion after a motion is filed does not comport with either the letter or the spirit of the rule.  If you do not withdraw the motion, I intend to bring my concerns directly to the Court.

Yours very truly,

Edward Foye

EF/jml
cc:    Mr. John A. Hirsch
       Mr. Ronald W. Zolla

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0133
CONNECTION TEL·           916178327000
SUBADDRESS
CONNECTION ID
ST. TIME             06/02 15:41
USAGE T              01'34
PGS. SENT                3
RESULT               OK
```

# TODD & WELD LLP

Attorneys at Law
28 State Street, 31st Floor
Boston, Massachusetts 02109

Telephone: (617) 720-2626
Facsimile: (617) 227-5777

*EDWARD FOYE*

## TELECOPY TRANSMITTAL SHEET

No. of Pages Sent:    (including this page) 3

Date:          June 2, 2005

To:            Matthew E. Miller, Esq.

Fax No.:       **617-832-7000**

From:          Edward Foye, Esq.

Re:            Hirsch/Lamensdorf

If you do not receive all of the pages, or if any part is illegible, please call Joanie Lineman at (617) 720-2626.

THIS TRANSMITTAL IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMITTAL IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE TRANSMITTAL TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

EDWARD FOYE

TELEPHONE: (617) 720-2626
FACSIMILE:    (617) 227-5777
www.toddweld.com

June 3, 2005

**VIA FAX**
Matthew E. Miller, Esq.
Foley, Hoag LLP
155 Seaport Boulevard
Boston, MA  02210

Re:   **Ophnet, Inc., et al v. Michael Lamensdorf, et al.**
      **U.S.D.C. No. 1:05-10970-DPW**

Dear Mr. Miller:

This will confirm the substance of our discussions yesterday and today.  You informed me that Mr. Taaffe and Mr. Tsombanides were traveling and could not be part of a telephone call to discuss the motion to compel or the certification contained on it until the middle of next week.  You have indicated that only Mr. Taaffe has authority to act with regard to the motion.

I do not find that acceptable.  The discussion should have been had before the motion was filed, and the fact that Mr. Taaffe is unwilling to put aside 15 or 20 minutes for a telephone conversation to discuss resolution of these matters is categorically unacceptable.  It will take a great deal more than 15 or 20 minutes of judicial time to decide these issues, and his unwillingness to address them promptly and forthrightly represents a measurable departure from standards of professional courtesy as well as contrary both to the letter and the spirit of the pertinent local rules.

As I also reiterated, there appears to be no choice but to file the appropriate materials with the Court to inform it that the certification is misleading.  I regret that Mr. Taaffe has put you in this position.

Yours very truly,

Edward Foye

EF/jml
cc:   Mr. John A. Hirsch
      Mr. Ronald W. Zolla

```
********************
***   TX REPORT   ***
********************


TRANSMISSION OK

TX/RX NO              0152
CONNECTION TEL                 916178327000
SUBADDRESS
CONNECTION ID
ST. TIME             06/03 16:53
USAGE T              01'06
PGS. SENT               2
RESULT               OK
```

# TODD & WELD LLP

Attorneys at Law
28 State Street, 31st Floor
Boston, Massachusetts 02109

Telephone: (617) 720-2626
Facsimile: (617) 227-5777

*EDWARD FOYE*

## TELECOPY TRANSMITTAL SHEET

No. of Pages Sent:    (including this page)

Date:              June 3, 2005

To:                Matthew E. Miller, Esq.

Fax No.:           **617-832-7000**

From:              Edward Foye, Esq.

Re:                Hirsch/Lamensdorf

If you do not receive all of the pages, or if any part is illegible, please call Joanie
Lineman at (617) 720-2626.

THIS TRANSMITTAL IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS
ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT
FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMITTAL IS NOT THE
INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE
TRANSMITTAL TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE



# FOLEY
# HOAG LLP
### ATTORNEYS AT LAW



Matthew E. Miller
Boston Office
617) 832-3041
mmiller@foleyhoag.com

June 3, 2005

**By Fax and U.S. Mail**

Edward Foye, Esq.
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109

    Re:    <u>Ophnet et al. v. Lamensdorf et al., Civ. A. No. 10970-DPW</u>

Dear Mr. Foye:

    I am in receipt of your letter dated today, June 3, 2005, in which you purport to confirm the substance of our discussions. I find your unwillingness to schedule a conversation between yourself and Mr. Taaffe next week to be, as you put it, "a measurable departure from standards of professional courtesy." Your refusal is particularly vexing given that you have identified no basis for any exigency behind your current intention to "file the appropriate materials with the Court" regarding the Rule 37 and L.R. 37.1 certification.

    Your refusal to accommodate a fellow attorney's schedule without justification makes it all the more clear that plaintiffs are not compelled to dispute the certification out of principle. Furthermore, there appears to be no practical or reasoned basis for your assertion that the certification is "misleading," given that (1) there was a conversation regarding plaintiffs' failure to produce documents at the deposition of Mark Briefman on May 20, 2005, (2) Mr. Taaffe's letter to you dated May 23, 2005 confirms that the conversation took place and notifies plaintiffs of defendants' intent to file the necessary motion with the Court, (3) your response letter to Mr. Taaffe does not dispute that the conversation took place, and invites defendants to file the motion, and (4) you have stated to me during our recent conversations that plaintiffs plan to continue to refuse to produce the documents at issue and oppose the Motion for Sanctions, calling into question what further conversation could do to resolve the current issues. Rather, it appears that plaintiffs are intent on distracting the Court's attention from their failure to conduct discovery in good faith and respond to a court order issued five months ago requiring the production of documents to which defendants are entitled.

    Very truly yours,

Matthew E. Miller

cc:  Michael Taaffe, Esq.



## FOLEY HOAG LLP
ATTORNEYS AT LAW

Matthew E. Miller
Boston Office
617) 832-3041
mmiller@foleyhoag.com

June 9, 2005

**By Facsimile and U.S. Mail**

Edward Foye, Esq.
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109

      Re:    <u>Ophnet et al. v. Lamensdorf et al., Civ. A. No. 10970-DPW</u>

Dear Mr. Foye:

      I am writing to confirm our discussion over the telephone this morning. As we discussed, defendants will be filing today a motion for extension of time to file certified copies of the state court record.

      You also indicated that you expected to have a discussion with Michael Taaffe regarding the documents we discussed last week. As I stated during our conversation, in light of your letter and voice mail to me stating that you found our proposal for a discussion "unacceptable," I did not believe, nor did Mr. Taaffe believe, that you were interested in having the discussion. I am currently looking into Mr. Taaffe's availability and will get back to you to try and schedule the conference as soon as possible.

      Finally, during our discussion you also stated that you would like to discuss with Mr. Taaffe the substance of a motion to compel you plan to file concerning the most recent document request submitted to Mrs. Lamensdorf. I suspect that the parties will be able to address both matters during the above-mentioned conference.

      Very truly yours,

Matthew E. Miller

MEM
cc:   Michael Taaffe, Esq.



## FOLEY
## HOAG LLP
### ATTORNEYS AT LAW

Matthew E. Miller
Boston Office
617) 832-3041
mmiller@foleyhoag.com

June 9, 2005

**By Facsimile and U.S. Mail**

Edward Foye, Esq.
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109

Re:    Ophnet et al. v. Lamensdorf et al., Civ. A. No. 10970-DPW

Dear Mr. Foye:

Further to my letter to you dated today and transmitted via facsimile to you this morning, I am told that Mr. Taaffe is available to have a telephone conference tomorrow morning at 10:45 a.m.  Mr. Taaffe is at a meeting outside of the office on another matter for the remainder of this afternoon, and will be in court early tomorrow morning.

Please advise as to whether this time will fit your schedule.

Very truly yours,

Matthew E. Miller

MEM
cc:    Michael Taaffe, Esq.