UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OPHNET, INC., A Massachusetts Corporation and JOHN A. HIRSCH and RONALD W. ZOLLA, Individually and as Shareholders of ZHL, INC., A Massachusetts Corporation, and KENNETH CRAM, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-10970-DPW |
| v. | ) ) | **Oral Argument Requested** |
| MICHAEL LAMENSDORF, Individually and as a Shareholder of ZHL, INC.; MICHAEL LAMENSDORF, M.D., P.C., A Florida Professional Corporation; BAYOU JENNKAY, INC., a Florida Corporation; and KATHY LAMENSDORF, Individually and as an officer of Bayou JennKay, Inc.; and ZHL, INC., a Massachusetts Corporation, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1447

The plaintiffs in this matter respectfully submit this memorandum in support of their motion for attorneys' fees under 28 U.S.C. § 1447(c).

As described in the plaintiffs' "Motion to Remand for Lack of Subject Matter Jurisdiction," June 9, 2005, and in the memorandum of law submitted concurrently therewith, the defendants (collectively, "the Lamensdorfs") have for the *second* time attempted to remove this matter. The most recent attempt at removal occurred within weeks of this case having been assigned for trial on a date certain in the Massachusetts Superior Court. The current removal

notice asserts that the defendant ZHL was fraudulently joined, an argument that Judge Lindsay rejected when this case was first removed almost two years ago. Thus, although 28 U.S.C. § 1447(c) does not require a showing of bad faith or lack of merit to obtain an award of fees, bad faith is clearly evident here. Indeed, despite the fact-intensive nature of the fraudulent joinder inquiry, the Lamensdorfs have not even attempted to lay a record from which this Court could make the necessary findings to sustain their fraudulent joinder claim. Hence, under any conceivable standard an award of fees is justified.

## FACTS

The basic facts justifying remand are set forth in "Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction" and "Memorandum in Support of Motion to Remand," June 9, 2005 (hereafter "Remand Memo") and the exhibits attached thereto. Those materials are incorporated herein by reference. The Lamensdorfs have not submitted any affidavits or any cognizable factual material to the Court other than that contained in the Notice of Removal, May 10, 2005 and the "Affidavit of Matthew E. Miller in Support of Defendants' Notice of Removal," May 10, 2005.

## ARGUMENT

### I.    THE DEFENDANTS HAD NO REASONABLE BASIS TO REMOVE THIS CASE

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." The provision does not require bad faith or frivolousness on the part of the removing party, and has been interpreted as providing a great deal of discretion and flexibility to the Court in fashioning remedial awards. See, e.g., Suder v. Blue Circle, Inc., 116 F.3d 1351, 1352 (10th Cir. 1997); Russell v. Sprint Corp., 264 F. Supp. 2d 955, 963 (D. Kan. 2003); Pran v. Waste Mgmt.,

Inc., 290 F. Supp. 2d 1286, 1295 (M.D. Fla. 2003) (intent of § 1447(c) is to provide reimbursement to plaintiffs who have incurred expense in attacking improper removals). Cf. Gattegno v. Sprint Corp., 290 F. Supp. 2d 372 (D. Mass. 2003) (declining to award attorneys' fees where defendant had reasonable basis to remove).

Courts have not hesitated to find that untimely removal should result in an award of attorney's fees. See Service Asset Mgmt. Co. v. Hibernia Corp., 80 F. Supp 2d 626, 630 (E.D. Tex. 2000) (awarding fees where removal was attempted "over twenty-two months after the commencement of the action in state court" and a "review of the law would have revealed that removal was untimely"); Lytle v. Lytle, 982 F. Supp. 671, 674-675 (E.D. Mo. 1997) (awarding attorney's fees where "even a cursory examination of § 1446(b) should have given [the defendants] pause before seeking to remove at this late date").

Here, there appears little question that attorneys' fees are appropriate under almost any conceivable standard. The defendants first attempted to remove this case in 2002, and it was remanded back to state court after Judge Lindsay rejected the Lamensdorfs' argument that adding ZHL as a defendant constituted fraudulent joinder. See Remand Memo at 6-8. See also id., Ex. 8 at 6-7 (Lamensdorf 2002 Opposition to ZHL's Motion to Amend, arguing that ZHL had been fraudulently joined); id., Ex. 9 (July 20, 2002 Order permitting amendment and remanding to Superior Court). Nevertheless, *nowhere at all* in the Lamensdorfs' Notice of Removal do they acknowledge that their fraudulent joinder argument had previously been considered and rejected by this very Court. Indeed, both the Notice of Removal and Mr. Miller's affidavit appear written to convey the impression that the fraudulent joinder argument had only recently dawned on the Lamensdorfs. Even if Judge Lindsay's prior ruling is not fully dispositive of the Lamensdorfs' claims (as it surely is), the Lamensdorfs at least had an

obligation to inform the Court that their fraudulent joinder argument had been considered and rejected. Instead, they simply ignored the issue.

The Lamensdorfs' failure to acknowledge the history of this case is matched by their failure to provide any factual basis for their latest attempt to remove. Although the Lamensdorfs' opposition raises such patently factual issues as what the Lamensdorfs knew and when they knew it, the Lamensdorfs do not submit a scintilla of cognizable evidence, whether by affidavit or otherwise, which addresses their own knowledge.[1] Thus, whether based upon the defendants' attempt to hide the existence of a prior remand order, or whether based upon the failure to provide a cognizable record for the facts they assert, attorneys' fees are clearly appropriate.[2]

In addition to failing to provide the Court with any sort of a cognizable factual record, the Lamensdorfs have asserted a version of events that appears designed to test the Court's credulity. For example, the Lamensdorfs claim that one basis for removal was their supposedly recent

---

[1] For examples of the sort of factual statements that the defendants do not cite any facts to support, see Opposition Memo. at 3 ("[W]hile Defendants obtained the knowledge evidencing Plaintiffs' fraudulent joinder of ZHL in the 30 days preceding removal of this matter back to federal court . . ."); id. at 4 ("Plaintiffs' recent activity gave the defendants the subjective knowledge that Plaintiffs had no real intention of seeking a judgment or pursuing a claim in good faith against defendant ZHL."); id. at 5 ("The basis for the removal in the instant matter is pure and simple in that Plaintiffs fraudulently joined ZHL to defeat diversity jurisdiction and that Defendants recently became aware of same as a result of Plaintiffs' actions which only now evidence that Plaintiffs had no good faith intention of pursuing the claim against ZHL"); id. at 13-14 ("[T]he removal of this action is now timely and appropriate since the recent activity of the Plaintiffs only now provided the Defendants with the subjective knowledge that Plaintiffs lacked a good faith intention to seek a judgment against ZHL.")

[2] The Lamensdorfs do not dispute that it is their obligation to show by clear and convincing evidence that ZHL was fraudulently joined in order to remove the case. See Opposition Memorandum at 3 ("[C]lear and convincing evidence in this matter establishes that Plaintiffs' fraudulently joined ZHL as a party defendant.") See generally In re Massachusetts Diet Drug Lit., 338 F. Supp. 2d 198, 202 (D. Mass. 2004).

knowledge that John A. Hirsch and Ronald W. Zolla, ZHL's primary shareholders, were attempting "to sell off all of ZHL's assets which would leave ZHL without any collateral or assets with which to pay a judgment Ophnet allegedly sought from ZHL." Id. at 18. Selling a vacant surgery center for $3.8 million hardly leaves ZHL without collateral or assets, and serves only to make the assets more liquid. Moreover, the claim the defendants make in the very next sentence of their memorandum, that "Defendants obtained knowledge of the foregoing within 30 days of filing the notice of removal in this matter", is demonstrably a lie. The defendants' own attorney had knowledge of the proposed sale in October, 2004. See Exhibit A (October 2004 letter from counsel).[3]

To take another example, the Lamensdorfs claim that Ophnet's failure to move for a default against ZHL shows that Ophnet had no intention in July 2002 to pursue its claims against ZHL. Even assuming that were so – and it is not so – ZHL's answer is more than 18 months overdue. Certainly, the Lamensdorfs cannot reasonably claim that they only learned within the last 30 days that ZHL had not filed an answer or that the plaintiffs had not moved for a default judgment. There is also no significance to the fact that Ophnet has not directly sought discovery

---

[3]  The defendants' use of legal authority is also questionable at best. For example, the Lamensdorfs cite and discuss an unpublished case from the Eastern District of Pennsylvania (almost all of their supporting authority is from that District) without once informing this Court that the case at issue cuts directly against them. See Lamb ex rel. Lamb v. Lederly Labs, 1994 U.S. Dist. LEXIS 14309 (E.D. Pa) at *6 (rejecting fraudulent joinder where claims were "not frivolous or insubstantial"). Another case upon which the Lamensdorfs rely, Delaney v. Viking Freight, Inc., 41 F. Supp. 2d 672 (E.D. Tex. 1999), did not hold that the 30 day removal period "commenced when the diverse defendant discovered that a non-diverse defendant was fraudulently joined," as the Lamensdorfs would have it, but rather adopted the position that a 30-day removal period begins to run from the time defendants "can first ascertain that a party has been fraudulently joined." 41 F. Supp. 2d at 672. Thus, the Delaney court in fact used a reasonable person standard, not the subjective standard that the Lamensdorfs urge this Court to adopt. The Lamensdorfs do not even attempt to explain how they could not reasonably have ascertained until May 2005 that which they manifestly did ascertain in July, 2002.

against ZHL. As shareholders, Mr. Hirsch and Mr. Zolla have access to ZHL's records without resort to process. Moreover, as demonstrated by the verified materials submitted in connection with the Motion to Remand, the better part of three days was spent deposing Dr. and Mrs. Lamensdorf on Ophnet's management of the surgery center, on the Lamensdorf's attempts to wrest control of the surgery center, and on Dr. Lamensdorf's bad faith termination of Ophnet under the ZHL Management Agreement. Finally, the Lamensdorfs have not even attempted to show that Ophnet's claims are objectively meritless, nor could they. On that basis as well, attorneys' fees and costs are appropriate.

In short, even if the Lamensdorfs were given every benefit of every doubt, there is no question that the plaintiffs in this matter have been put to substantial cost and expense by a cynical litigation maneuver. While Dr. Lamensdorf has been performing his operations elsewhere, Mr. Hirsch and Mr. Zolla have been subsidizing the ambulatory surgery center in Sarasota at a cost to themselves of *over $20,000 per month*. See Affidavit of Ronald Zolla, February 28, 2005, attached hereto as Exhibit B. The inference is inescapable that the Lamensdorfs removed this case in an effort to postpone the trial which the Massachusetts Superior Court had previously scheduled and in a last minute effort to impede the plaintiffs' discovery. There is no injustice in requiring the Lamensdorfs to pay a small portion of the costs that the loss of the firm October trial date will impose on the plaintiffs.

## CONCLUSION

For each of the foregoing reasons, this Court should require the defendants to pay the just

costs and actual expenses, including reasonable attorneys' fees, incurred in obtaining remand of this matter to the Superior Court.

Respectfully submitted,

OPHNET, INC., JOHN A. HIRSCH,
RONALD W. ZOLLA, and KENNETH CRAM,

By their Attorneys,

/s/ Edward Foye
J. Owen Todd (BBO # 499480)
Edward Foye (BBO #562375)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
617-720-2626

Date:  July __, 2005

EXHIBIT A

# ABEL|BAND®

**ATTORNEYS AND COUNSELORS AT LAW**

Mailing Address: P.O. Box 49948, Sarasota, FL 34230-6948

240 South Pineapple Avenue
Sarasota, FL 34236
TEL 941-366-6660
FAX 941-366-3999

WWW.ABELBAND.COM

Michael S. Taaffe, Shareholder
Board Certified Business Litigation Attorney
Writer's Direct Line: (941) 364-2720
Direct E-mail: mtaaffe@abelband.com
Please refer to our file number: 8468-15

October 21, 2004

**VIA FACSIMILE & U.S. MAIL**
Edward Foye, Esq.
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA  02109

Re:   *Letter of Intent to Purchase Lantz Eye Surgery Center*

Dear Mr. Foye:

Through the courtesies of Mr. Jay Ziskind, I have now received a copy of the Letter of Intent to purchase the Lantz Surgery Center.   I am surprised ZHL has not scheduled a shareholders' meeting to discuss this offer that was made approximately one month ago.   Even though the Lamensdorfs are minority shareholders, when an offer such as this is received  there should be communication between the shareholders of ZHL to discuss the offer.

Our review of the offer and the financials of the surgery center appears to indicate there would be an excess in purchase money proceeds over the liabilities of the Corporation to be distributed to the shareholders of ZHL, Incorporated.   Due to the fact that there is a dispute as to the shareholder interests of my client, I believe it is in the best interest of the shareholders of ZHL to discuss whether to accept this offer and how this excess will be distributed in light of the pending litigation.   If it becomes necessary to enter into mediation to accomplish this sale, we are willing to do so in good faith, as we believe it may be in the best interest of Lantz Eye Surgery Center and ZHL, Incorporated.

Please contact me immediate so we may discuss this matter, as ZHL has already passed the date for the purposed signing of this Letter of Intent and it would be truly unfortunate for the majority shareholders of ZHL to lose a possible purchase for the Lantz Eye Surgery Center which would wipe out all Corporation debt, individual shareholders' liability and net a profit for the surgery center that is currently not operational and is losing money on a monthly basis.

SARASOTA, FLORIDA   |   VENICE, FLORIDA   |   DENVER, COLORADO

**ABEL, BAND, RUSSELL, COLLIER, PITCHFORD & GORDON, CHARTERED**

730596v.1

Edward Foye, Esq.
October 21, 2004
Page 2

Your attention to this matter is greatly appreciated.

Respectfully submitted,

ABEL, BAND, RUSSELL, COLLIER,
PITCHFORD & GORDON, CHARTERED

Michael S. Taaffe, Shareholder

MST:mbh

cc:    Dr. Michael Lamensdorf

730596v.1

EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. B 2 0419

|  |  |
|---|---|
| OPHNET, INC., A Massachusetts Corporation and JOHN A. HIRSCH and RONALD W. ZOLLA, Individually and as Shareholders of ZHL, INC., A Massachusetts Corporation, and KENNETH CRAM,<br><br>     Plaintiffs,<br><br>v.<br><br>MICHAEL LAMENSDORF, Individually and as a Shareholder of ZHL, INC.; MICHAEL LAMENSDORF, M.D., P.C., A Florida Professional Corporation; BAYOU JENNKAY, INC., a Florida Corporation; KATHY LAMENSDORF, Individually and as an officer of Bayou JennKay, Inc.; and ZHL, INC., a Massachusetts Corporation,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF RONALD W. ZOLLA

  1.  I, Ronald W. Zolla, am one of the plaintiffs in this matter. With my fellow plaintiff John Hirsch, I am also a shareholder in the plaintiff Ophnet, Inc. and with Mr. Hirsch and with Dr. and Mrs. Lamensdorf I am a shareholder in ZHL, Inc., a Massachusetts corporation which owns an ambulatory surgery center ("ASC") in Sarasota, Florida. I make this affidavit of my own personal knowledge.

  2.  For nearly two years, Mr. Hirsch and I worked with the Lamensdorfs in the construction of the ASC. Throughout that time, Dr. Lamensdorf was involved with

the construction process, and even helped establish the design of the operating rooms and associated clinical areas.

3.    After the ASC opened, Dr. Lamensdorf attempted to renegotiate the financial arrangement between Mr. Hirsch and I on the one hand and he and his wife on the other. In particular, Dr. Lamensdorf began sending letters in which he insisted (for example) that Mr. Hirsch and I sell him our share of the ASC for $1.00 (one-dollar). On such letter is attached hereto as Exhibit A. Mr. Hirsch and I at that time (and even more so today) had a substantial financial investment in the ASC. As of early 2002, however, Dr. Lamensdorf was the only source of patients and therefore the only source of revenue for the ASC.

4.    In May, 2002, Dr. Lamensdorf finally carried through on his prior threats to pull his patients from the ASC. Since that time, Mr. Hirsch and I have attempted to attract other physicians to the facility with varying degrees of success.

5.    At present, the ASC is not being used for surgery, although it remains accredited by the state of Florida for that purpose.

6.    At present, the ASC has expenses that I believe average over $25,000 per month. I do not presently have before me the exact amount which Mr. Hirsch and I have loaned to the corporation that owns the ASC, but it is well into the hundreds of thousands of dollars. These expenses include costs related to maintaining the facility's accreditation (including salaries) and, primarily, costs related to the physical upkeep of the building, including the mortgage. The mortgage is by far the largest component of the ASC's expenses, and the bank which holds the mortgage also holds personal guarantees on the debt from Mr. Hirsch, Dr. Lamensdorf, Mrs. Lamensdorf and me. Significantly more

2

than a million dollars is currently owed on the mortgage, and the exposure is therefore substantial.

7.    Nevertheless, Dr. Lamensdorf has refused despite Mr. Hirsch's and my requests to join with us in loaning funds to the ASC in order to defray these very substantial expenses.

8.    Mr. Hirsch and I believe that our difficulty in attracting new surgeons is in no small part related to this lawsuit. At least one doctor told me other doctors did not want to bring their cases to the ASC due to the ongoing litigation and their fear of becoming embroiled in it.

Signed and sworn under the pains and penalties of perjury, this 28 day of February, 2005.

_____    2/28/05
Ronald W. Zolla

To the owners of ZHL:

With the admission of Mr. Price last night, it is obvious that drastic steps need to be taken. The Lantz has proven to be a mighty rock that destroys all. Ken is certainly trying, but he has almost nothing to work with.

Frankly, I am tired of expressing concerns and writing letters that are never answered. The only way that I see this changing, is if I own a majority of ZHL. Therefore, I propose that I purchase an additional 33.33% for $1.00. We will then be able to proceed rapidly towards resolving the myriad problems at the Lantz. Please respond by Friday at noon so that we can start as soon as possible.

Michael

Since I wrote this letter this morning at 8:00am, I have spent 30 minutes talking with a post op patient who sees 20/20 without correction, but will not let me operate on her other eye because of anesthesia concerns.

Obviously, things need to change now. If my suggestion is unacceptable, the only alternative that is apparent would be to cancel the surgery and for Ophthnet to compensate MLMD $100,000/mo so that bills can be paid despite the loss of surgery revenue. Sarasota is a small town. The word is spreading.

I look forward to your response by noon Friday so that appropriate steps can be taken in a timely manner.



EXHIBIT
85
M. Lamensdorf 1/25/05