UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPHNET, INC., a Massachusetts corporation, JOHN A. HIRSCH and RONALD W. ZOLLA, individually and as shareholders of ZHL, Inc., a Massachusetts corporation, and KENNETH CRAM, <br><br>Plaintiffs, <br><br>v. <br><br>MICHAEL LAMENSDORF, individually and as a shareholder of ZHL, Inc., MICHAEL LAMENSDORF, M.D., P.C., a Florida professional corporation; BAYOU JENNKAY,INC., a Florida corporation, KATHY LAMENSDORF, individually and as an officer of Bayou JennKay, Inc., and ZHL, INC., a Massachusetts corporation, <br><br>Defendants. | CIVIL ACTION NO. 05-10970-DPW |

## PLAINTIFFS' PROPOSED DISCOVERY SCHEDULE

The Plaintiffs in this matter herewith submit the following proposed discovery schedule pursuant to the Court's May 13, 2005 Scheduling Order. The reason for submission of a separate rather than a joint statement is addressed in the margin.[1]

---

[1] Pursuant to an agreement of the parties, the defendants were to have prepared the draft proposed joint statement on June 28, 2005. No draft was in fact submitted until late Friday morning, July 1, 2005. After counsel for the plaintiffs had the opportunity to confer with his clients, he responded on Wednesday, July 6, 2005 with specific items to be inserted in the proposed joint statement – an event which led the defendants to substantially modify their proposed joint statement. After further telephonic discussions with Mr. Tsombanides, counsel for the defendants, the undersigned attorney incorporated all of Mr. Tsombanides's comments into the proposed Joint Statement and sent them to him for approval. Mr. Tsombanides declined to give his approval on grounds that he refused to state, and did not return phone calls seeking to elicit what was wrong with the second draft. The next day, the parties exchanged the correspondence attached as Exhibit A, in which the defendants' Florida attorneys refused to participate in the filing of a joint statement. Since the joint statement is already overdue, the attorney for the plaintiffs believes that there is no reasonable choice except to file separately.

1.  **Discovery Limitations**

In February 2005, the Superior Court set a firm trial date of October 13, 2005. At the same time, the Superior Court set a firm discovery cutoff of May 30, 2005 on motion of the plaintiffs, and endorsed its order "no further extensions." The court did so after twice extending the discovery period, which ultimately lasted more than two (2) years. Thus, the plaintiffs believe that no further discovery is appropriate.

2.  **Defendants' Proposal**

As of July 6, 2005, the Lamensdorfs had submitted the following to the plaintiffs as their position on further discovery; it is reproduced verbatim on the uncertain assumption that it continues to represent the defendants' position:

Defendants propose that they be permitted to take the following discovery in Case No. 05-10970-DPW: (i) depositions of Plaintiffs, John Hirsch, Ronald Zolla, and Kenneth Cram; and (ii) deposition of William Hirsch, CPA. Defendants state that these depositions were previously scheduled in this matter but Defendants were unable to take same since Plaintiffs had not produced all the documents identified in the Superior Court's discovery Order dated February 11, 2005. As stated in Defendants' Motion for Sanctions, Defendants are still in need of items not produced pursuant to the Superior Court's Order, and thus cannot effectively take the mentioned depositions. At the same time, since removal of this matter to the District Court, Defendants have been unable to participate in any new discovery since Federal Rules of Civil Procedure preclude same prior to the initial Rule 26 conference. Defendants sought to take the depositions of Dr. Thomas Quigley and Dr. Marguerite DiGaetano, and prepared Motions for the Issuance of Letters Rogatory to be filed with the Superior Court but were unable to file same since

the matter was removed to the District Court. Defendants need to take these depositions as well, in addition to any follow-up discovery identified as a result of information learned from the documents yet to be produced, as well as from the depositions previously scheduled and which have yet to be taken.

3. **Plaintiffs' Response To Defendants' Proposed Discovery**

Plaintiffs position is that fact discovery should not be re-opened. The defendants seek a literal handful of documents out of more than 30,000 pages of documents produced. They do not explain to the Court either in this statement or in any other pleading why they did not simply go forward with the depositions which had been scheduled and seek to re-open those depositions later for the limited purpose of questioning the deponent on the few documents which had not been produced. The Superior Court's firm discovery cut-off of May 31, 2005 was entered after two full years of discovery on motion of the plaintiffs, supported by the Affidavit of Ronald Zolla attached hereto as Exhibit B. As this Joint Statement is written, Mr. Hirsch and Mr. Zolla continue to be forced to subsidize the surgery center in Sarasota from which Dr. Lamensdorf pulled his cases, and Dr. Lamensdorf and Mrs. Lamensdorf continue to refuse to contribute capital to the corporation to finance the deficit that their actions created, even though they themselves are personal guarantors on the surgery center's mortgage. Thus, the same circumstances which led the Superior Court to order a firm discovery cut-off continue to exist today, and there is no basis for this Court to vacate or modify the Superior Court's order.

As to the particular discovery that the Lamensdorfs seek:

(a) As to the deposition of Kenneth Cram, Mr. Cram was deposed on March 10 and 11, 2004. *Mr. Cram traveled at his own expense to the deposition from South Africa, where he currently resides, based on the defendants' assurances that he*

*would be deposed for two days only.* The defendants concluded their examination of Mr. Cram, and the plaintiffs' attorney completed his questioning as well. To the extent that the Court does permit any additional discovery relating to Mr. Cram, it should restrict discovery to the particular documents which are the subject of the Lamensdorfs' pending discovery motion, should limit the further deposition to three (3) hours, and should require that it be conducted telephonically.

(b)  The defendants also seek to continue the depositions of the plaintiffs, John Hirsch and Ronald W. Zolla. Mr. Hirsch was deposed for a full day on December 2, 2003, and Mr. Zolla was deposed for a full day on December 3, 2003. The documents which the Lamensdorfs now seek had not been produced on December 3 either, even though they had been requested about six months before the depositions. Nevertheless, the defendants waited more than a year to move to compel the relative handful of documents they now claim are necessary. The Lamensdorfs cannot explain the relevance of these documents to the case, and certainly had no basis to cancel the deposition.[2] Accordingly, Mr. Hirsch's and Mr. Zolla's depositions should not be continued. To the extent that the Court does permit them to be continued. Questioning should be restricted to the

---

[2] If in doubt about the effect of removal on the May 30, 2005 discovery cutoff, the defendants could have asked this Court for guidance. Notably, the defendants did file a Motion Emergency Motion for a Protective Order with this Court in which they attempted to prevent a deposition from going forward in Florida, after plaintiffs' counsel was already present in that state. Thus, the defendants had ample opportunity to seek guidance and plainly were not shy about doing so when it suited their purpose.

-4-

documents which are the subject of the Lamensdorfs' motion and that questioning should be restricted to four (4) hours for each witness.[3]

(c) The defendants should not be permitted to depose William Hirsch, a third-party witness who is the accountant for Ophnet, Mr. Hirsch and Mr. Zolla. The defendants claim that they could not depose Mr. Hirsch without obtaining production of the tax returns, while the truth of the matter is that they were aware (because counsel had told them), that Mr. Hirsch <u>had</u> the tax returns they sought. The Lamensdorfs' counsel specifically demanded that Mr. Hirsch <u>not</u> provide responsive documents through the plaintiffs and their counsel, but rather insisted that those documents be produced directly by subpoena in Florida. Counsel then cancelled the previously scheduled deposition on the grounds that those very same documents had not been produced.

(d) There is no basis to permit other third-party depositions, including Dr. Thomas Quigley and Dr. Margaret (misspelled as "Marguerite" DiGaetano in the defendants' submissions). These are two Florida doctors with whom Ophnet has also had consulting contracts. These depositions plainly represent an attempt to harass Ophnet's current and former business partners. The defendants had more than <u>two years</u> in which to conduct discovery, and do not even claim that anything in the documents which are the subject of their motion to compel prevented them from noticing the depositions they claim to seek. Accordingly, that discovery also should not be allowed.

---

[3] It is possible to read the defendants' further discovery requests as <u>also</u> seeking a 30(b)(6) deposition of Ophnet, but the defendants did not at any time even notice that deposition before the close of discovery.

4.  **Plaintiffs' Proposed Schedule For Further Case Events**

   (a)   Exchange of initial disclosures: August 1, 2005

   (b)   Completion of fact discovery: Already completed

   (c)   Designation of expert(s) and disclosure by plaintiffs: August 18, 2005

   (d)   Designation of expert(s) and disclosure by defendant: August 31, 2005

   (e)   Completion of expert depositions: September 30, 2005

   (f)   Deadline for filing motions for summary judgment: November 1, 2005

   (g)   Deadline for responding to motions for summary judgment: December 1, 2005

   (h)   Hearing on summary judgment and final pre-trial conference: As early in 2006 as the Court's schedule permits.

   (i)   Trial: As early in 2006 as the Court's schedule permits.

5.  **Certification of Counsel and Parties**

Certification by the parties and counsel pursuant to Local Rule 16.1(D)(3) shall be filed separately.

> Respectfully submitted,
>
> OPHNET, INC., JOHN A. HIRSCH,
> RONALD W. ZOLLA, and KENNETH CRAM
>
> By their Attorneys,
>
> /s/ Edward Foye
> J. Owen Todd (BBO # 499480)
> Edward Foye (BBO #562375)
> TODD & WELD LLP
> 28 State Street, 31st Floor
> Boston, MA  02109
> 617-720-2626

Dated: July 8, 2005

# Exhibit A



# ABEL|BAND®
## ATTORNEYS AND COUNSELORS AT LAW

Mailing Address: P.O. Box 49948, Sarasota, FL 34230-6948

240 South Pineapple Avenue
Sarasota, FL 34236
TEL 941-366-6660
FAX 941-366-3999

WWW.ABELBAND.COM

Joseph A. Tsombanidis
Writer's Direct Line: (941) 364-2717
Direct E-mail: jtsombanidis@abelband.com
Please refer to our file number: 8468-5

## FACSIMILE COVER PAGE

**Date:** July 7, 2005

**Person being called:** Edward Foye, Esq.

**Number called:** 617-227-5777

**City/State called:** Boston, MA

**Document being sent:** Correspondence

**Number of pages (including this page):** 3

**Comments:** cc: Ian McLoughlin, Esq. – 617-832-7000

THIS FACSIMILE CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEE(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT OUR MAIN OFFICE ADDRESS VIA U.S. MAIL. THANK YOU.

SARASOTA, FLORIDA | VENICE, FLORIDA | DENVER, COLORADO

**ABEL, BAND, RUSSELL, COLLIER, PITCHFORD & GORDON, CHARTERED**

773045v.1

# ABEL BAND®

**ATTORNEYS AND COUNSELORS AT LAW**

Mailing Address: P.O. Box 49948, Sarasota, FL 34230-6948

240 South Pineapple Avenue
Sarasota, Fl. 34236
TEL 941-366-6660
FAX 941-366-3999

WWW.ABELBAND.COM

Michael S. Taaffe
Board Certified Business Litigation Attorney
Writer's Direct Line: (941) 364-2720
Direct E-mail: mtaaffe@abelband.com
Please refer to our file number: 8468-5

July 7, 2005

**BY FACSIMILE**

Edward Foye, Esq.
Todd & Weld, LLP
28 State Street, 31st Floor
Boston, MA 02109

Re: *Hirsch, et al., v. Lamensdorf, et al.;* Civil Action No. 05-10902-DPW
*Ophnet, Inc., et al., v. Lamensdorf, et al.;* Civil Action No. 05-10970-DPW

Dear Mr. Foye:

As you are aware, the purpose of the parties' proposed pre-trial schedules is to advise the Judge of the parties' best estimates of the amounts of time they will need to accomplish specified pre-trial steps. With respect to the Joint Statement containing said schedule as contemplated by Local Rule 16.1(d), you are aware that we have been unable to reach an agreement on a proposed pre-trial schedule. While the parties have proposed different deadlines for a pre-trial schedule, including the filing of motions, the Plaintiffs' proposed Joint Statement includes arguments which exceed the scope of Local Rule 16.1 and its stated purpose. Plaintiffs' proposed discovery plan includes misstatements and arguments that are unrelated to the purpose of the Joint Statement and should not be included therein. While the parties were unable to agree on a pre-trial schedule, the Plaintiffs' recommended proposal contains language that should be presented to the Court in the form of a motion or memorandum, rather than be included in a Joint Statement to the Court which should propose best estimates of the amounts of time the parties need to accomplish specified pre-trial steps.

Accordingly, since you mentioned that you will file a separate Statement due to the fact that we were unable to agree on the contents of a Joint Statement, we will likewise file a separate Statement with the Court and will advise the Court of a discovery plan scheduling the time and length for all discovery events and a proposed schedule for the filing of motions. Any argument

SARASOTA, FLORIDA | VENICE, FLORIDA | DENVER, COLORADO

**ABEL, BAND, RUSSELL, COLLIER, PITCHFORD & GORDON, CHARTERED**

773264v.1

Edward Foye, Esq.
July 7, 2005
Page 2

beyond the nature of the differences in the pre-trial schedules should be submitted in a separate filing.

Thank you for your attention to the foregoing. Should you have any questions or concerns, please feel free to contact me.

Sincerely,

ABEL, BAND, RUSSELL, COLLIER,
PITCHFORD & GORDON, CHARTERED

Michael S. Taaffe

MST:gkv

cc: Ian McLoughlin, Esq., Foley Hoag, LLP

773264v.1

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

EDWARD FOYE

TELEPHONE: (617) 720-2626
FACSIMILE:  (617) 227-5777
www.toddweld.com

July 7, 2005

**BY FAX**

Michael S. Taaffe, Esq.
Abel, Band, Russell, Collier, Pitchford & Gordon
240 South Pineapple Avenue
Sarasota, FL  34236

    Re:    **Ophnet, Inc., et al. v. Lamensdorf, et al.**
            Civil Action No. 05-10970-DPW

            **Hirsch, et al. v. Lamensdorf**
            Civil Action No. 05-10902-DPW

Dear Mr. Taaffe:

    I received your facsimile letter at 4:30 this afternoon informing me for the first time that you refuse to submit a Joint Statement to the Court, despite the Court's order to do so.

    The proposed Joint Statements that Mr. Tsombanides and I negotiated clearly labels the defendants' submissions and the plaintiffs' submissions.  The Joint Statement in the 10970 case in fact accurately reflects each and every correction Mr. Tsombanides provided to me before abruptly withdrawing his assent.

    To the extent that you find the plaintiffs' submissions unacceptable, you are certainly at liberty to say so in the Joint Statement.  In fact, argument is typically made in Joint Statements in this district:  each side argues for its own proposed discovery schedule.  If there is something inappropriate about my submissions, that is a matter for Judge Woodlock and not for you.

Michael S. Taaffe, Esq.
July 7, 2005
Page 2

    Since you appear no more ready to cooperate in this process than you were at this time yesterday, however, obviously there is nothing I can do but to protect my clients' rights by filing my own proposed discovery schedule.

Yours very truly,

Edward Foye

EF/jml
cc:  John A. Hirsch
      Ronald W. Zolla
      Ian J. McLoughlin, Esq. (By Fax)

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO                    0574
CONNECTION TEL                      919413663999
SUBADDRESS
CONNECTION ID
ST. TIME                    07/07 17:44
USAGE T                     01'48
PGS. SENT                       3
RESULT                      OK
```

# TODD & WELD LLP

Attorneys at Law
28 State Street, 31st Floor
Boston, Massachusetts 02109

Telephone: (617) 720-2626
Facsimile: (617) 227-5777

**TELECOPY TRANSMITTAL SHEET**

**EDWARD FOYE**

No. of Pages Sent: ~~3~~ (including this page) 3

Date:       July 7, 2005

To:         Michael S. Taaffe, Esq.

Fax No.:    **941-366-3999**

From:       Edward Foye, Esq.

**Re:**     **Hirsch/Lamensdorf**

If you do not receive all of the pages, or if any part is illegible, please call Joanie Lineman at 617-720-2626.

THIS TRANSMITTAL IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMITTAL IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE TRANSMITTAL TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF

```
*********************
***  TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0575
CONNECTION TEL                    916178327000
SUBADDRESS
CONNECTION ID
ST. TIME              07/07 17:46
USAGE T               01'19
PGS. SENT             3
RESULT                OK
```

# TODD & WELD LLP

Attorneys at Law
28 State Street, 31st Floor
Boston, Massachusetts 02109

Telephone: (617) 720-2626
Facsimile: (617) 227-5777

*EDWARD FOYE*

## TELECOPY TRANSMITTAL SHEET

No. of Pages Sent: ~~2~~ (including this page) *3*

Date:       July 7, 2005

To:         Ian J. McLoughlin, Esq.

Fax No.:    **617-832-7000**

From:       Edward Foye, Esq.

**Re:**     **Hirsch/Lamensdorf**

If you do not receive all of the pages, or if any part is illegible, please call Joanie Lineman at (617) 720-2626.

THIS TRANSMITTAL IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMITTAL IS NOT THE

Exhibit B

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. B 2 0419

OPHNET, INC., A Massachusetts Corporation )
and JOHN A. HIRSCH and RONALD W. ZOLLA, )
Individually and as Shareholders of )
ZHL, INC., A Massachusetts Corporation, and )
KENNETH CRAM, )
)
                Plaintiffs, )
)
v. )
)
MICHAEL LAMENSDORF, Individually and )
as a Shareholder of ZHL, INC.; )
MICHAEL LAMENSDORF, M.D., P.C., )
A Florida Professional Corporation; )
BAYOU JENNKAY, INC., a Florida Corporation; )
KATHY LAMENSDORF, Individually and )
as an officer of Bayou JennKay, Inc.; and )
ZHL, INC., a Massachusetts Corporation, )
)
                Defendants. )
)

## AFFIDAVIT OF RONALD W. ZOLLA

1. I, Ronald W. Zolla, am one of the plaintiffs in this matter. With my fellow plaintiff John Hirsch, I am also a shareholder in the plaintiff Ophnet, Inc. and with Mr. Hirsch and with Dr. and Mrs. Lamensdorf I am a shareholder in ZHL, Inc., a Massachusetts corporation which owns an ambulatory surgery center ("ASC") in Sarasota, Florida. I make this affidavit of my own personal knowledge.

2. For nearly two years, Mr. Hirsch and I worked with the Lamensdorfs in the construction of the ASC. Throughout that time, Dr. Lamensdorf was involved with

the construction process, and even helped establish the design of the operating rooms and associated clinical areas.

3. After the ASC opened, Dr. Lamensdorf attempted to renegotiate the financial arrangement between Mr. Hirsch and I on the one hand and he and his wife on the other. In particular, Dr. Lamensdorf began sending letters in which he insisted (for example) that Mr. Hirsch and I sell him our share of the ASC for $1.00 (one-dollar). On such letter is attached hereto as Exhibit A. Mr. Hirsch and I at that time (and even more so today) had a substantial financial investment in the ASC. As of early 2002, however, Dr. Lamensdorf was the only source of patients and therefore the only source of revenue for the ASC.

4. In May, 2002, Dr. Lamensdorf finally carried through on his prior threats to pull his patients from the ASC. Since that time, Mr. Hirsch and I have attempted to attract other physicians to the facility with varying degrees of success.

5. At present, the ASC is not being used for surgery, although it remains accredited by the state of Florida for that purpose.

6. At present, the ASC has expenses that I believe average over $25,000 per month. I do not presently have before me the exact amount which Mr. Hirsch and I have loaned to the corporation that owns the ASC, but it is well into the hundreds of thousands of dollars. These expenses include costs related to maintaining the facility's accreditation (including salaries) and, primarily, costs related to the physical upkeep of the building, including the mortgage. The mortgage is by far the largest component of the ASC's expenses, and the bank which holds the mortgage also holds personal guarantees on the debt from Mr. Hirsch, Dr. Lamensdorf, Mrs. Lamensdorf and me. Significantly more

2

than a million dollars is currently owed on the mortgage, and the exposure is therefore substantial.

7. Nevertheless, Dr. Lamensdorf has refused despite Mr. Hirsch's and my requests to join with us in loaning funds to the ASC in order to defray these very substantial expenses.

8. Mr. Hirsch and I believe that our difficulty in attracting new surgeons is in no small part related to this lawsuit. At least one doctor told me other doctors did not want to bring their cases to the ASC due to the ongoing litigation and their fear of becoming embroiled in it.

Signed and sworn under the pains and penalties of perjury, this 28 day of February, 2005.

_____  2/28/05
Ronald W. Zolla

3

To the owners of ZHL:

With the admission of Mr. Price last night, it is obvious that drastic steps need to be taken. The Lantz has proven to be a mighty rock that destroys all. Ken is certainly trying, but he has almost nothing to work with.

Frankly, I am tired of expressing concerns and writing letters that are never answered. The only way that I see this changing, is if I own a majority of ZHL. Therefore, I propose that I purchase an additional 33.33% for $1.00. We will then be able to proceed rapidly towards resolving the myriad problems at the Lantz. Please respond by Friday at noon so that we can start as soon as possible.

Michael

Since I wrote this letter this morning at 8:00am, I have spent 30 minutes talking with a post op patient who sees 20/20 without correction, but will not let me operate on her other eye because of anesthesia concerns.

Obviously, things need to change now. If my suggestion is unacceptable, the only alternative that is apparent would be to cancel the surgery and for Ophthnel to compensate ML.MD $100,000/mo so that bills can be paid despite the loss of surgery revenue. Sarasota is a small town. The word is spreading.

I look forward to your response by noon Friday so that appropriate steps can be taken in a timely manner.



EXHIBIT
85
M.Lamensdorf 1/25/05

02/07/02 THU 12:20 [TX/RX NO 5222] ☒001