UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
|
OPHNET, INC., A Massachusetts Corporation )
and JOHN A. HIRSCH and RONALD W. ZOLLA, )
Individually and as Shareholders of )
ZHL, INC., A Massachusetts Corporation, and )
KENNETH CRAM, )
)                                    Civil Action No.
               Plaintiffs, )                05-10970-DPW
)
v. )
)
MICHAEL LAMENSDORF, Individually and )
as a Shareholder of ZHL, INC.; )
MICHAEL LAMENSDORF, M.D., P.C., )
A Florida Professional Corporation; )
BAYOU JENNKAY, INC., a Florida Corporation; )
and KATHY LAMENSDORF, Individually and )
as an officer of Bayou JennKay, Inc.; and )
ZHL, INC., a Massachusetts Corporation, )
)
               Defendants. )
_____|


**AFFIDAVIT OF EDWARD FOYE, ESQ.**
**IN SUPPORT OF PLAINTIFFS' *RENEWED* MOTION**
**FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1447(c)**


1.     I, Edward Foye, am an attorney licensed to practice law in the

Commonwealth of Massachusetts. With Attorney Christopher R. O'Hara and the firm of

Todd & Weld, I represent the plaintiffs in this matter. I make this affidavit in order to

summarize the legal work that was performed in securing remand of this case to the

Essex Superior Court and to authenticate documents evidencing the time I expended as

well as authenticating business records showing the costs incurred. I make this affidavit

of my own personal knowledge.

2.      I have a B.A. from Columbia College of Columbia University. I graduated from Boston University School of Law *cum laude* in 1992. I have served as a writer and lecturer for BAR/BRI Bar Review, have taught several classes sponsored by the Massachusetts Continuing Legal Education (MCLE) of the Massachusetts Bar Association, and in 2004 was named a Massachusetts Super Lawyer by the editors of Law and Politics and Boston Magazine. I began working at Todd & Weld as a contract attorney shortly after graduation and in early 1994 became associated with the firm full time. I am currently of counsel. My standard hourly rate is $275.00 per hour. Because Ophnet and the other plaintiffs are long-time clients of the firm, we agreed at the outset of the case to provide them with a reduced rate of $180.00 per hour for my time. The plaintiffs seek fees at the discounted rate they actually paid. I was assisted by research attorney Kristijan Zic. Mr. Zic is a *magna cum laude* graduate of Middlebury College and a 1999 graduate of Boston University Law School. As a research attorney, Mr. Zic's standard hourly rate is $150.00 per hour and he was billed out at that rate on this case.

3.      According to my timesheets, a summary of which are attached hereto as Exhibit A, I performed the following work related to obtaining remand:

A.      On May 13, 2005, shortly after the Lamensdorfs removed this case, I telephoned Mr. Miller to have our required L.R. 7.1 conference prior to bringing the motion to remand. Before and after doing so I researched the basis for remanding the petition to state court and began outlining the substance of the motion to remand. I spent 2.3 hours that day on remand matters, including (although the task is not listed on my time sheets) a careful review of the papers that the defendants filed, including the Notice of Removal and the "Affidavit of Matthew E. Miller in Support of Defendants' Notice of Removal."

B.      On June 7, 2005, I continued researching and began drafting the memorandum in support of the motion to remand. That day, I spent 7.0 hours on that task.

C.  On June 8, 2005, I spoke with Mr. Zic and at my request he spent 2.3 hours researching various subjects related to the drafting of the memorandum. That day, I spent 9.0 hours drafting the memorandum and researching various legal issues related to remand. I also began assembling the 16 exhibits which were ultimately filed with the memorandum in support of the motion to remand.

D.  The next day, June 9, 2005, I spent 4.6 hours in revising, editing, and redrafting the 20 page memorandum, as well as cite-checking and shepherdizing cases, drafting, revising and proofing the motion to remand itself, finishing assembling the exhibits and attending to the filing the motion and memorandum.

4.  I would point out that none of the foregoing time was spent on the prior motion seeking attorneys' fees, which was separately researched and drafted after the Lamensdorfs submitted their opposition to the motion to remand.

5.  To summarize, I spent 23.3 hours at $180.00 on the pleadings at issue for a total requested fee reimbursement of $4,194.00. Mr. Zic spent to 2.3 hours at $150.00 for a total of $345.00, or a total of $4,539.00.

6.  In addition, the plaintiffs seek reimbursement for computer assisted research time, which was integral to putting together the motion to remand in as brief as time as we were able to accomplish it. I attach hereto as Exhibit B Lexis bills evidencing $221.20 in charges attributable to the research listed above.

7.  Finally, I am aware that the Court made some unflattering suggestions at the hearing on the motion concerning the quality of some of the legal work performed on both sides of this case. A copy of the pleadings for which fees are sought (without the exhibits to the Memorandum, to reduce the amount of paper submitted) are therefore attached hereto as Exhibit C so that the Court may conveniently review them in determining whether the number of hours billed or the hourly fee charged was unreasonable under the circumstances.

Signed and sworn to under the pains and penalties of perjury this 22nd day of

July, 2005.

/s/    Edward Foye
Edward Foye

# EXHIBIT A

*FEES  5/1 – Curren*
*Posting*

Date: 07/20/2005

**Detail Fee Transaction File List**
TODD & WELD LLP

Page: 1

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | | Ref # |
|--------|-----------|------|-----|-----|------|--------------|--------|---|---|-------|

Client ID 3519.34 Hirsch and Zolla

| 3519.34 | 05/13/2005 | 22 | A | 1 | 180.00 | 2.60  2.3 | 468.00 | Telephone call to M. Miller re: case; revised motion to enter on land; researched basis for remand of petition to state court; began outlining response to same. | ARCH |

Date: 07/20/2005          **Detail Fee Transaction File List**        Page: 3
                                   TODD & WELD LLP

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | Ref # |
|--------|-----------|------|-----|-----|------|---------------|--------|-------|

Client ID 3519.34 Hirsch and Zolla

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | Ref # |
|--------|-----------|------|-----|-----|------|---------------|--------|-------|
| 3519.34 | 06/07/2005 | 22 | P | 1 | 180.00 | 7.50 *(7.0)* | 1350.00 | Reviewed opposition to motion to remand, declaratory judgment case and opposition to motion to award attorney's fees; drafted ~~introductory~~ material and statement of facts for memo in support of motion to remand. | 7 |
| 3519.34 | 06/08/2005 | 71 | P | 1 | 150.00 | 2.30 | 345.00 | Conference with E. Foye; researched appealability of removal order based on fraudulent joinder; law of the case; and Rule 60(b)(2) diligence requirement for finding new evidence. | 5 |
| 3519.34 | 06/08/2005 | 22 | P | 1 | 180.00 | 9.00 | 1620.00 | Drafted legal argument sections to memorandum in support of motion to remand; ~~researched same; assembled exhibits.~~ | 8 |
| 3519.34 | 06/09/2005 | 22 | P | 1 | 180.00 | 7.60 *(5.1)* | 1368.00 | Revised, edited and redrafted memo in support of motion to remand (x3); cite checked and shepardized cases; drafted motion; finished assembling exhibits; ~~attended to filing motion and memo;~~ telephone call from M. Miller re: discovery; reviewed letter from M. Miller (x2); drafted opposition to motion to compel; drafted response letter to M. Miller; drafted cross-motion to compel production and researched same. | 9 |

# EXHIBIT B

Accounts
Report Date
Date Range
June 01 - June 30

7/5/2005

| CLIENT | CLIENT ID NUMBER | USER NAME | DATE | CONTRACT USE CHARGES | OUTSIDE CONTRACT | TOTAL ON-LINE | TOTAL CHARGES | FINAL CHARGES |
|---|---|---|---|---|---|---|---|---|
| 'HIRSCH / LAMENSDORF | 3519.34 | 'ZIK, CHRISTIAN | '06/08/2005 | $295.00 | $0.00 | $295.00 | $295.00 | $118.00 |
| 'HIRSCH/ LAMENSDORF | 3519.34 | 'FOYE, ED | '06/09/2005 | $69.00 | $0.00 | $69.00 | $69.00 | $27.60 |
| 'HIRSCH/ LAMENSDORF | 3519.34 | 'FOYE, ED | '06/28/2005 | $121.25 | $0.00 | $121.25 | $121.25 | $48.50 |
| 'HIRSCH/ LAMENSDORF | 3519.34 | 'FOYE, ED | '06/05/2005 | $34.25 | $0.00 | $34.25 | $34.25 | $13.70 |
| 'HIRSCH/ LAMENSDORF< | 3519.34 | 'FOYE, ED | '06/06/2005 | $147.00 | $0.00 | $147.00 | $147.00 | $58.80 |
| 'HIRSCH/LAMENSDORF | 3519.34 | 'FOYE, ED | '06/06/2005 | $12.00 | $0.00 | $12.00 | $12.00 | $4.80 |
| 'HIRSCH/LAMENSDORF | 3519.34 | 'FOYE, ED | '06/09/2005 | $177.00 | $0.00 | $177.00 | $177.00 | $70.80 |
| 'HIRSCH/LAMENSDORF | 3519.34 | 'FOYE, ED | '06/10/2005 | $301.25 | $0.00 | $301.25 | $301.25 | $120.50 |

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| OPHNET, INC., A Massachusetts Corporation and JOHN A. HIRSCH and RONALD W. ZOLLA, Individually and as Shareholders of ZHL, INC., A Massachusetts Corporation, and KENNETH CRAM,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL LAMENSDORF, Individually and as a Shareholder of ZHL, INC.; MICHAEL LAMENSDORF, M.D., P.C., A Florida Professional Corporation; BAYOU JENNKAY, INC., a Florida Corporation; and KATHY LAMENSDORF, Individually and as an officer of Bayou JennKay, Inc.; and ZHL, INC., a Massachusetts Corporation,<br><br>Defendants. | Civil Action No. 05-10970-DPW<br><br>**Hearing Requested** |

## PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION

The plaintiffs in this matter (collectively, "Ophnet") herewith move to remand

this matter to state court. In support of their motion to remand, the plaintiffs state:

1.      Among the defendants in this action is ZHL, Inc., a Massachusetts

corporation. See Exhibit A hereto. As such, ZHL is non-diverse as to the plaintiffs John

A. Hirsch and Ronald W. Zolla, who are Massachusetts residents, and non diverse as to

Ophnet, a Massachusetts corporation.

2.      The defendants (collectively, the "Lamensdorfs") do not doubt that ZHL destroys diversity, but have claimed that ZHL's presence as a defendant should be disregarded because it is has been fraudulently joined.

3.      This case must be remanded for four reasons.

4.      First, 28 U.S.C. § 1446 explicitly provides that a matter may not be removed based on diversity more than one year after commencement of the action. This action commenced in February 2002, so the Lamensdorfs missed the deadline by about 27 months. The language of § 1446(b) is absolute on its face and admits of no exceptions. The Lamensdorfs do not cite or discuss that provision in their notice of removal, but it has been interpreted in this district (and in the better reasoned cases elsewhere) to set an absolute bar to removal after one year. The rationale of the rule (the disruption to state court dockets and the judicial inefficiency which necessarily occurs when an extensively litigated case is suddenly transported to another court) applies here every bit as directly as the language of §1446(b) itself. Thus, even if all of the plaintiff's rash charges about the fraudulent joinder of ZHL are taken as true, removal will not lie.

5.      Second, the removing party must act within 30 days after receipt of a pleading that provides notice that the case has become removable. The Lamensdorfs cannot point to any such pleading, and at any rate they had previously asserted their fraudulent joinder allegations in mid-2002, on the first occasion when they removed this case. Judge Lindsay at that time rejected the contention that ZHL was being fraudulently joined. Thus, the 30 day bar of § 1446(b) also applies to require remand.

6.      Third, even if some exception to the one-year bar of § 1446(b) could be implied for fraudulent joinder, any such exception would necessarily require that the

basis for the motion to remand had been concealed from the defendants. As their own petition for remand acknowledges, however, the Lamensdorfs presented their claim of fraudulent joinder to this Court nearly three years ago. Judge Lindsay's order rejecting it is now law of the case. Furthermore, the Lamensdorfs had ample time to pursue the fraudulent joinder theory they articulated when opposing the original amendment that added ZHL. The mere fact that more evidence of that theory emerged recently (or so they say) cannot reasonably be the basis for a second removal. If it is, there is no principled reason why the disappointed remover could not remove a case for a third or fourth time based on alleged newly discovered evidence. Thus, even if it were possible in theory to create an exception to the one-year rule (and there is no basis whatsoever for it), this case would not qualify.

7.      Finally, even if this Court were to reach the merits of the Lamensdorfs' claims, it is clear that Judge Lindsay was correct. ZHL is a party to a contract with Ophnet. When Ophnet originally sued Dr. Lamensdorf for terminating the contract at issue, it was <u>Dr. Lamensdorf himself</u> (through his attorneys) who pointed out that the plaintiffs had sued the wrong party and that he had <u>not</u> signed the contract in his personal capacity. The breach of contract claim was therefore in the case from the very first day; only the defendant alleged to be liable changed. The claim that no discovery has been conducted into the claim is outrageously false; Dr. Lamensdorf was deposed for the better part of two days about the supposed mismanagement of the surgery center, about his reasons for terminating Ophnet, and about the circumstances of his doing so. Accordingly, there is no legal or factual basis to the Lamensdorfs' fraudulent removal claims.

3

8.    In further support of this motion, the plaintiffs concurrently submit a Memorandum of Law.  The attorney's signature appearing below certifies that all exhibits attached to this motion and the accompanying memorandum are true and accurate copies of what they purport on their face to be.  The Court is advised that the plaintiffs intend shortly to file a motion for attorneys' fees pursuant to 28 U.S.C. § 1447(c).

WHEREFORE, the plaintiffs herewith move that this Honorable Court:

A.    Enter an order remanding this matter back to the Superior Court for Essex County (Massachusetts);

B.    Grant whatever other or additional relief this Honorable Court deems just under the circumstances.

Respectfully submitted,

OPHNET, INC., JOHN A. HIRSCH, RONALD W. ZOLLA, and KENNETH CRAM,

By their Attorneys,

/s/  Edward Foye
J. Owen Todd (BBO # 499480)
Edward Foye (BBO #562375)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA  02109
617-720-2626

Date:  June 9, 2005

### Rule 7.1 Certificate

I, Edward Foye, herewith certify that on May 12, 2005 I requested that Matthew Miller, attorney for the defendants, agree to remand this case back to the state court.  Mr. Miller on behalf of his clients refused to do so.

/s/ Edward Foye
Edward Foye

4

# EXHIBIT A

# TO PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURSIDICTION



# The Commonwealth of Massachusetts
## William Francis Galvin

Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512
Telephone: (617) 727-9640

---

*ZHL, INCORPORATED* **Summary Screen**

? Help with this form

---

[ Request a Certificate ]

The exact name of the Domestic Profit Corporation: <u>ZHL, INCORPORATED</u>

Entity Type: <u>Domestic Profit Corporation</u>

Identification Number: <u>043443526</u>

Old Federal Employer Identification Number (Old FEIN): <u>000637340</u>

Date of Organization in Massachusetts: <u>11/24/1998</u>

Current Fiscal Month / Day: <u>12 / 31</u>          Previous Fiscal Month / Day: <u>00 / 00</u>

**The location of its principal office in Massachusetts:**
No. and Street: <u>17 HAWKES ST.</u>
City or Town: <u>MARBLEHEAD</u>     State: <u>MA</u>     Zip: <u>01945</u>     Country: <u>USA</u>

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street: <u>2821 PROCTOR RD</u>
City or Town: <u>SARASOTA</u>     State: <u>FL</u>     Zip: <u>34231</u>     Country: <u>USA</u>

**The name and address of the Registered Agent:**
Name: <u>JOHN A. HIRSCH, PH.D.</u>
No. and Street: <u>17 HAWKES STREET</u>
City or Town: <u>MARBLEHEAD</u>     State: <u>MA</u>     Zip: <u>01945</u>     Country: <u>USA</u>

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration of Term |
|---|---|---|---|
| PRESIDENT | JOHN A. HIRSCH PH.D. | 20 SCHOONER RIDGE,<br>MARBLEHEAD, MA 01945 USA | |
| TREASURER | ANUSIA HIRSCH | 20 SCHOONER RIDGE,<br>MARBLEHEAD, MA 01945 USA | |

| SECRETARY | JOHN A. HIRSCH | 17 HAWKES ST., MARBLEHEAD, MA USA | |
| DIRECTOR | JOHN A. HIRSCH PH.D. | 20 SCHOONER RIDGE, MARBLEHEAD, MA 01945 USA | indefinite |

**business entity stock is publicly traded:** ___

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Par Value Per Share Enter **0** if no Par | Total Authorized by Articles of Organization or Amendments | | Total Issued and Outstanding |
| | | *Num of Shares* | *Total Par Value* | *Num of Shares* |
| CWP | $1.00000 | 1,200 | $1,200.00 | 0 |
| CNP | $1.00000 | 1,000 | $1,000.00 | 966 |

___ Consent    ___ Manufacturer    ___ Confidential Data    ___ Does Not Require Annual Report

**X** Partnership    ___ Resident Agent    **X** For Profit    ___ Merger Allowed

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application for Reinstatement
Application For Revival

[ View Filings ]    [ New Search ]

**Comments**

© 2001 - 2005 Commonwealth of Massachusetts
All Rights Reserved

Help

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

<table>
<tr><td>
OPHNET, INC., A Massachusetts Corporation<br>
and JOHN A. HIRSCH and RONALD W. ZOLLA,<br>
Individually and as Shareholders of<br>
ZHL, INC., A Massachusetts Corporation, and<br>
KENNETH CRAM,<br><br>
                Plaintiffs,<br><br>
v.<br><br>
MICHAEL LAMENSDORF, Individually and<br>
as a Shareholder of ZHL, INC.;<br>
MICHAEL LAMENSDORF, M.D., P.C.,<br>
A Florida Professional Corporation;<br>
BAYOU JENNKAY, INC., a Florida Corporation;<br>
and KATHY LAMENSDORF, Individually and<br>
as an officer of Bayou JennKay, Inc.; and<br>
ZHL, INC., a Massachusetts Corporation,<br><br>
                Defendants.
</td><td>
Civil Action No.<br>
05-10970-DPW
</td></tr>
</table>

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

The defendants in this matter (collectively, "the Lamensdorfs") have, *for the second time*, removed this case to the federal court. The last time they removed, they claimed that the defendant ZHL, Inc. (a Massachusetts corporation that is non-diverse as to the Massachusetts plaintiffs) was being fraudulently joined as a party plaintiff. Judge Lindsay rejected the argument, permitted the amendment that named ZHL as a defendant, and remanded the case to state court.

They're back. Nearly three years after Judge Lindsay's decision, the Lamensdorfs claimed to have discovered through recently unearthed evidence that ZHL was fraudulently joined. That evidence appears to consist of a letter tendering the defense of the claim against

ZHL to Dr. Michael Lamensdorf ("Dr. Lamensdorf"), the minority shareholder responsible for ZHL's breach of the contract. Unsurprisingly (at least to those who know the Lamensdorfs), the latest removal took place less than three weeks before discovery was due to close and about two months after the Massachusetts Superior Court set a firm trial date of October 2005.

The case must be remanded again for four reasons.

First, 28 U.S.C. § 1446 explicitly provides that a matter may not be removed based on diversity more than one year after commencement of the action. This action commenced in February 2002, so the Lamensdorfs missed the deadline by about 27 months. The language of § 1446(b) is absolute on its face and admits of no exceptions. Thus, even if all of the plaintiff's rash charges about the fraudulent joinder of ZHL are taken as true, removal still will not lie.

Second, the removing party must act within 30 days after receipt of a pleading that provides notice that the case has become removable. The Lamensdorfs cannot point to any such pleading, and at any rate they had already asserted their fraudulent joinder allegations. Thus, the 30 day bar of § 1446(b) also requires remand.

Third, even if some exception to the one-year bar of § 1446(b) could be implied, the Lamensdorfs presented their claim of fraudulent joinder to this Court nearly three years ago, and Judge Lindsay rejected it. That order is now law of the case. Furthermore, the Lamensdorfs had one full year to pursue the fraudulent joinder theory they articulated when opposing the original amendment that added ZHL. The mere fact that more evidence of that theory emerged recently (or so they say) cannot reasonably be the basis for a second removal. If it is, there is no principled reason why the disappointed remover could not remove a case for a third or fourth time based on alleged newly discovered evidence. Thus, even if it were possible in theory to

2

create an exception to the one-year rule (and there is no basis whatsoever for it), this case would not qualify.

Finally, even if this Court were to reach the merits of the Lamensdorfs' claims, it is clear that Judge Lindsay was correct ZHL was not fraudulently joined. ZHL is a party to a management contract with Ophnet. ZHL, acting by and through Dr. Lamensdorf, breached the contract by wrongfully terminating it. When Ophnet originally sued Dr. Lamensdorf for breach, it was <u>Dr. Lamensdorf himself</u> (through his attorneys) who pointed out that the plaintiffs had sued the wrong party and that he had <u>not</u> signed the management contract in his personal capacity. The breach of contract claim was therefore in the case from the very first day; only the defendant alleged to be liable changed. The claim that no discovery has been conducted into the claim is outrageously false; Dr. Lamensdorf was deposed for the better part of <u>two days</u> about the supposed mismanagement of the surgery center, about his reasons for terminating Ophnet, and about the circumstances of his doing so. Accordingly, there is no legal or factual basis to the Lamensdorfs' fraudulent removal claims.

## FACTS

A. The Original Complaint

This case began on or about March 5, 2002 when the plaintiffs Ophnet, Inc. ("Ophnet"), John A. Hirsch ("Mr. Hirsch") and Ronald W. Zolla ("Mr. Zolla") filed suit against Dr. Michael Lamensdorf ("Dr. Lamensdorf") and his wife Kathy ("Mrs. Lamensdorf"), both individually and in their capacities as shareholders of ZHL. <u>See</u> "Complaint," March 4, 2002, attached (without exhibits) as <u>Exhibit 1</u> hereto.[1] Also named as a defendant was Dr. Lamensdorf's medical practice, Michael Lamensdorf, M.D., P.C. ("the practice"). The proofs of service filed with the

---

[1] The exhibits to the Complaint were voluminous and are therefore omitted, but can be provided to the Court on request.

Superior Court showed that the Sarasota County Sheriff effected service of the Complaint in hand on March 7, 2002. [2]

The Complaint recited essentially the following facts. Mr. Hirsch and Mr. Zolla are management consultants who for over 20 years have specialized exclusively in the management of ophthalmology practices. Ex. 1 at ¶ 9. In 1995, Ophnet, a company which Mr. Hirsch and Mr. Zolla own and operate, entered into a contract with Dr. Lamensdorf and the practice to provide management and strategic planning services. Id. at ¶ 10. Ophnet agreed to work for a reduced rate compared to its standard hourly charges, but under the management agreement with the practice would potentially earn bonus income based upon the practice's Net Income (a defined term). Id. at ¶ 11. The formula for determining bonus income was complex and precise, but in substance the Lamensdorfs kept the first $269,000 in profits and they split the rest with Ophnet 50/50. Id. Ophnet also was entitled to certain deferred income based upon increases in practice profits. Id. at ¶¶ 12-13.

With Ophnet's assistance, Dr. Lamensdorf's practice grew and prospered. Id. at ¶ 14. Cataract surgeries – by far the most profitable procedure for an ophthalmology practice – increased by approximately 400% between 1995 and 2002. Id. Accordingly, in 1998, the parties jointly agreed to build an ambulatory surgery center ("ASC") which would specialize in eye surgeries. Id. at ¶ 15. To that end, they formed ZHL, Inc., a Massachusetts corporation in which Dr. Lamensdorf, Mrs. Lamensdorf, Mr. Hirsch and Mr. Zolla were the shareholders. Id.

---

[2] It is expected that the Lamensdorfs will comply with L.R. 81.1 and file certified copies of the Essex Superior Court pleadings at about the time that this Motion to Remand is filed. Accordingly, the plaintiffs freely reference Superior Court pleadings without attaching them if they are of marginal significance. The plaintiffs will provide the Court with copies of any relevant documents which the Lamensdorfs do not in fact file at the Court's request.

Because Ophnet had experience in the construction and operation of ambulatory surgery centers, ZHL effective January 15, 1999 entered into a Management Agreement (hereafter, "the ZHL Management Agreement") with Ophnet whereby Ophnet would oversee the construction of and provide management services to the ASC. Ex. 1 at ¶ 16. A true and accurate copy of the ZHL Management Agreement which was Exhibit 5 to the complaint, is attached hereto as Exhibit 2. Ophnet was required to provide several different types of management services to the ASC. These included strategic management and marketing services, such as assistance in preparing non-medical policies and procedures. Ex. 2 at § 4 (c), pp. 9-10. Under § 4(d), captioned "Operational Phase," Ophnet was required, *inter alia*, to monitor the day-to-day operations of the ASC. Ex. 1 at ¶ 15; Ex. 2 at pgs. 9-11. Operational services under § 4(d) could be terminated by Dr. Lamensdorf upon 120 days' written notice to Ophnet of the perceived deficiencies plus a 30 day cure period. Ex. 1 at ¶ 17; Ex. 2 at § 11, p. 15. By contrast, Ophnet's duties under § 4(c) could be terminated only by majority vote of ZHL's shareholders. Ex. 1 at ¶ 17; Ex. 2 at § 11, p. 15.

During the construction phase of the ASC, Dr. and Mrs. Lamensdorf each falsely claimed that they did not have sufficient funds to make capital contributions to ZHL necessary for the construction and operation of the ASC. Ex. 1 at ¶ 18. Accordingly, Mr. Hirsch and Mr. Zolla each individually loaned ZHL $400,000 (a sum, parenthetically, that by 2005 had risen to well over $1.2 million). Id. The Complaint recited that although the ASC had opened for business, the Lamensdorfs were still not making their required capital contributions but that they were interfering with non-medical aspects of the management of the ASC. Id. at ¶ 19. On January 16, 2002, Dr. Lamensdorf purported to terminate Ophnet's management contracts both for the medical practice and for the ASC. Id. A true and accurate copy of the termination letters and

related correspondence was attached to the complaint at Exhibit 7, and are attached hereto as
Exhibit 3.

The Complaint thereafter stated five counts relating to the medical practice, including the
failure to pay bonus income and the failure to pay Ophnet's deferred income. Ex. 1 at ¶¶ 21-37.
The other counts related to the ASC. Count VII stated a claim for fraudulent inducement against
the Lamensdorfs relating to the loans which Mr. Hirsch and Mr. Zolla had provided to the ASC,
and Count VIII stated claims for breach of fiduciary duty relating to the Lamensdorfs' actions as
shareholders of ZHL. For present purposes, however, the critical count was Count VI, relating to
breach of the ZHL Management Agreement, including allegations that Dr. Lamensdorf had
purported to terminate the contract in bad faith and that he had failed to provide the required
notice and cure period before doing so. Id. at ¶ 39.

B. The First Removal to Federal Court

On March 27, 2002, the defendants filed a "Notice of Removal." Concurrently, the
defendants moved to compel arbitration based on certain alternative dispute resolution clauses in
certain of the contracts.

Following removal, the defendants (after some procedural wrangling relating to the
plaintiffs' compliance or lack of compliance with L.R. 15.1), moved to file a Second Amended
Complaint.[3] The Second Amended Complaint included a somewhat expanded fact statement
against Dr. Lamensdorf and his medical practice, including the allegations that Dr. Lamensdorf
had systematically understated the practice's profits (and therefore Ophnet's bonus income) by

---

[3] On or about March 20, 2002, the complaint had been amended as a matter of right while it was still
pending in the state court. The amendments added a new party plaintiff, Kenneth Cram, and added two
additional counts relating to the business affairs of the Lamenscram Partnership, an entity in which Mr.
Cram was a partner which had been formed to hold certain hard assets of the medical practice, and to seek
a declaratory judgment on certain restraints on competition contained in the ZHL Shareholder Agreement.
See "Amended Complaint", March 20, 2002 at ¶¶ 5, 50-58.

taking a salary more than $100,000 in excess of his contractually allotted $269,000 per year, and paying his wife's corporation, Bayou JenKay, Inc. exorbitant sums for clerical and "strategic consulting" services thereby further artificially depressing the practice's profits. See Exhibit 4.[4]

For present purposes, the amendment that mattered was the one that named ZHL as a party defendant. In the original complaint, Count VI stated a claim against Dr. Lamensdorf for breach of the ZHL Management Agreement due to his wrongful termination of Ophnet as manager of the ASC. Ex. 1 at ¶¶ 38-40. As the defendants themselves observed in their "Memorandum of Law in Support of Their Motion to Compel Arbitration," Exhibit 5 hereto, "Dr. Lamensdorf did not sign the ZHL Management Agreement personally, he signed it in his capacity as Chairman of the Board of ZHL." Id. at 10. The evident assertion was that as a party who signed on behalf of a disclosed principal, Dr. Lamensdorf could not be held liable for ZHL's breach of contract, and so the proper party to sue was ZHL itself. Ophnet therefore sought to leave to sue ZHL. Concurrently, the plaintiffs moved to remand, since ZHL's joinder would destroy diversity. See Exhibit 6, Renewed Motion for Remand for Lack of Subject Matter Jurisdiction, and Exhibit 7, Plaintiffs' Consolidated Memorandum of Law in Support of the motions, both dated May 22, 2002.[5]

The Lamensdorfs promptly filed an opposition to the motion to amend and the motion to remand. Exhibit 8. Among other things, the defendants argued that the "equities" weighed in favor of refusing to join ZHL as a party defendant because Mr. Hirsch and Mr. Zolla "as

---

[4] Exhibit 4 is the Amended and Corrected Motion to Amend with the corrected Second Amended Complaint that was eventually filed on May 22, 2002. It was this motion that Judge Lindsay ultimately granted, and the Second Amended Complaint attached to it (also reproduced without exhibits) is currently the operative one in this case.

[5] Exhibit A to the Consolidated Memorandum was the ZHL Management Agreement, attached hereto as Ex. 2.

controlling interest holders in ZHL will presumably be appointing counsel and making all of the representation decision [sic] concerning the defense of ZHL." Ex. 8 at 5.[6] The Lamensdorfs' Opposition also argued that ZHL had been fraudulently joined insofar as it was under Mr. Hirsch and Mr. Zolla's control. Id. at 6-7.

On July 20, 2002, Judge Lindsay issued an order on the motion to amend and to remand. Exhibit 9. He found that ZHL "appears to be an indispensable party. Accordingly, the motion to amend that corporation as a defendant is allowed. Because the addition of ZHL destroys this court's subject matter jurisdiction, this case is REMANDED to Essex Superior Court (Massachusetts)." Id.

C. The Current Removal Petition

The defendants filed their current notice of removal on May 10, 2005. As of that date, the Middlesex Superior Court on the plaintiffs' motion had scheduled a firm discovery cutoff of May 30, 2005 and a firm trial date of October 13, 2005. See Exhibit 10. Between July 20, 2002 and May 2005, counsel's court file index showed over 150 motions, orders, pleadings, and other discovery events. See Exhibit 11.

**ARGUMENT**

I.    **THE DEFENDANTS FAILED TO REMOVE THIS CASE WITHIN ONE YEAR OF ITS FILING, AND IT CANNOT BE REMOVED NOW**

Even if this Court were to credit the Lamensdorfs' unsupported claim that ZHL was fraudulently joined to defeat diversity, this case would still need to be remanded. 28 U.S.C. § 1446(b) provides, in pertinent part, that "a case may not be removed on the basis of jurisdiction

---

[6] The defendants added: "Defendants have never indicated that ZHL should be a party to this suit as Defendants recognized that all parties in interest are in fact already represented in this action. In their Motion to Compel Arbitration Defendants simply point out that Dr. Lamensdorf as an individual cannot be held liable for beach of a contract that he did not sign individually." Id. at 5.

conferred by § 1332 of this title more than one year after commencement of the action." In this district, it has been held based upon the plain language of the statute and its legislative history that § 1446(b) is "clear and unambiguous" and that the "one-year bar is absolute." Santiago v. Barre Nat., Inc., 795 F. Supp. 508, 510 (D. Mass. 1992). Since Santiago, the majority of the courts to have considered the issue agree that there are no exceptions to that rule. See, e.g., Foiles v. Merrill Nat.'l Laboratories, 730 F. Supp. 108 (N.D. Ill. 1989) ("plain language" of statute "reads as a blanket prohibition on removal of diversity case more than one year after commencement of the action"); Rezendez v. Dow Corning Corp., 717 F. Supp. 1435 (E.D. Cal. 1989) ("Congress has clearly expressed its intent in the plain language of [the statute] that a diversity case which has been before a state court for more than one year should stay there").

Neither the legislative history nor the language of § 1446(b) has changed since Santiago was decided. Indeed, if anything, the basis for its holding has become stronger since Caterpillar, Inc. v. Lewis, 519 U.S. 61 (1996). The issue presented in Caterpillar was whether the district court had jurisdiction to enter judgment where it had erroneously denied the plaintiff's motion to remand but where the non-diverse party settled out of the case, thereby restoring diversity at the time judgment entered. In its analysis, the Caterpillar court stated that "[n]o case may be removed from state to federal court based on diversity of citizenship 'more than one year after commencement of the action.'" 519 U.S. at 68-69 (quoting § 1446(b); emphasis supplied). Just as the language of § 1446(b) is absolute, "the Supreme Court's language in Caterpillar is absolute, allowing no exclusions." Barnett v. Sylacauga Autoplex, 973 F. Supp. 1358, 1362 (N.D. Ala. 1997). See also Lovern v. GMC, 121 F.3d 160, 163 (4th Cir. 1997) ("in diversity cases, the statute explicitly . . . erect[s] an absolute bar to a removal of cases in which jurisdiction is premised on 28 U.S.C. § 1332 more than one year after commencement of the action.")

The <u>Santiago</u> court's reading of § 1446(b)'s legislative history has also found wide

acceptance.  As the Eleventh Circuit has put it:

> the Commentary to the 1988 Revisions of 28 U.S.C. § 1446(b) shows that Congress knew
> when it passed the one year bar o removal that some plaintiffs would attempt to defeat
> diversity by fraudulently (and temporarily) joining a non-diverse party.  In that case, as
> long as there is some possibility that a non-diverse joined party could be liable in the
> action, there is no federal jurisdiction.  But, under section 1446(b), if, after one year, the
> plaintiff dismisses the non-diverse defendant, the defendant cannot remove.  So, a
> plaintiff could defeat jurisdiction by joining a non-diverse party and dismissing him after
> the deadline.  Congress has recognized and accepted that, in some circumstances,
> plaintiff can and will intentionally avoid federal jurisdiction.

<u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1097, n. 12 (11th Cir. 1994).  The great majority of the

courts to have considered the issues firmly agree:  there are no loopholes in § 1446(b).  <u>See</u>, <u>e.g.</u>,

<u>Beisel v. Aid Ass'n for Lutherans</u>, 843 F. Supp. 616 (C.D. Cal. 1994) (plaintiff added non-

diverse defendant to defeat removal; second removal following state court dismissal of non-

diverse defendant rejected as untimely under one-year rule); <u>Baylor v. District of Columbia</u>, 838

F. Supp. 7 (D.D.C. 1993) (no removal more than one year after commencement of action);

<u>Hedges v. Hedges Gauging Service, Inc.</u>, 837 F. Supp. 753 (M.D. La. 1993) (same, observing

that it is Congress' responsibility, not the court's, to rewrite the removal statute to eliminate

abuses or create exceptions); <u>Rashid v. Schenck Const. Co., Inc.</u>, 843 F. Supp. 1081, 1088 (S.D.

W.Va. 1993) (§ 1446(b) "serves the interest of comity between state and federal courts" and is

absolute); <u>Auto Transportes Gacela S.A. De C. V. v. Border Freight Distrib. & Warehouse, Inc.</u>,

792 F. Supp. 1471 (S.D. Tex. 1992) (§ 1446(b) barred removal by third-party defendant added

more than a year after the commencement of state court action).

The cases which permit equitable tolling or imply other exceptions to the absolute

language of § 1446(b) are singularly unpersuasive.  <u>See</u>, <u>e.g.</u>, <u>Tedford v. Warner-Lambert Co.</u>,

327 F.3d 423, 426 (5th Cir. 2003) (providing that parties' conduct, in limited instances, may

warrant equitable tolling of the one year limit); <u>Hardy v. Ajax Magnathermic Corp.</u>, 122 F. Supp.

2d 757, 759-761 (W.D. Ky. 2000). The <u>Hardy</u> court, for example, did not discuss at all the many

cases holding that § 1446(b) was an absolute bar to removal after a year. The <u>Tedford</u> court

relied primarily on (i) its previous ruling that the time limits in § 1446(a) were subject to

equitable tolling, and its reluctance to depart from that rule in connection with § 1446(b); and (ii)

upon its reading the legislative history.

As to the latter point, <u>Tedford's</u> reading emphasized the statement in the House Report

that Congress intended only to "reduce the opportunity for removal after substantial progress has

been made in state court" such that the provision was intended to effect only "a modest

curtailment in access to diversity jurisdiction." 327 F.3d at 426 n. 3, 427 & n. 9. <u>Tedford</u>,

however, looks at the language of the legislative history from the wrong perspective. Few

indeed will be the cases that the one year bar will apply to; the thirty day bar contained in

§ 1446(a) disposes of the great majority of the decided cases, as a glance at the annotations in the

United States Code Service will confirm. The fact that Congress knew that the one-year bar of

§ 1446 would apply in a relatively small number of cases does not, however, mean that the bar

was intended to be something other than absolute in those relatively few cases it reached.

The <u>Tedford</u> court also ignored the substantial differences between the language of

§ 1446(a) and that of § 1446(b). The language of the latter provision is absolute. <u>See</u> <u>Jones</u>

<u>Mgmt. Servs., LLC v. KES, Inc.</u>, 296 F. Supp. 2d 892, 894 (E.D. Tenn. 2003) ("The statute says

what it says. Any attempt to read into the statute an 'equitable' exception amounts to judicial

legerdemain."). The <u>Tedford</u> court also did not discuss or even cite to <u>Caterpillar</u>, a case that

confirms the absolute nature of the one-year bar.[7]

---

[7] To the extent that the Fifth Circuit invoked policy considerations, it simply consulted the wrong policy.
The statement that "Congress may have intended to limit diversity jurisdiction, but it did not intend to

11

In short, the cases since <u>Santiago</u> have correctly perceived that the one-year limit established by § 1446(b) is strict and unyielding. The rule provides certainty to litigants, informs prospective removing defendants who believe that fraudulent joinder has taken place that they have 365 days in which to diligently pursue that claim, and ensures that cases (like this one) that have been in litigation for three years and have firm trial dates scheduled are not suddenly whisked away to federal court so that trial can be further delayed. Accordingly, under the one-year absolute bar erected by § 1446(b), this case must be remanded to the state court.

## II.    THE DEFENDANTS CANNOT SHOW THAT THEY REMOVED THIS CASE IN THIRTY DAYS WITHIN THE RECEIPT OF A PAPER SHOWING THAT IT HAS BECOME REMOVABLE.

Even if the Defendants can surmount the one-year bar of § 1446(b), the provision contains a second requirement as well: the notice of removal must be filed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." The 'paper' the defendants apparently rely on is a letter that Mr. Hirsch sent to Mr. Lamensdorf in early May, 2005 in which Mr. Hirsch states that as far as he is concerned ZHL has no valid defense to Ophnet's claims. See Affidavit of Matthew E. Miller in Support of Defendants' Notice of Removal, May 10, 2005 at Ex. D.

---

allow plaintiffs to circumvent it altogether" is simply a non-sequitur. <u>See</u> 327 F.3d at 427. Nobody supposes that the intention was to allow plaintiffs to circumvent a federal forum *altogether*. Rather, as the Eleventh Circuit recognized, the rule accepts that some arguably unjust results must be tolerated in the service of ease of application and clarity. As a general matter, in the interest of comity and judicial efficiency the removal statutes are to be strictly construed. <u>See</u> <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941); <u>American Home Assurance Co. v. Insular Underwriters Corp.</u>, 494 F.2d 317, 319 (1st Cir. 1974). In light of the fact that federal removal jurisdiction is statutory in nature and to be strictly construed, if there is any doubt at all about whether equitable tolling was intended, the appropriate policy consideration is that all doubts should be resolved *against* diversity removal jurisdiction. <u>See, e.g.</u>, <u>Caudill v. Ford Motor Co.</u>, 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003).

Under the 30 day rule, a removing defendant bears the burden of showing what "paper" alerted him to the possibility of removal. See Longden v. Phillip Morris, Inc., 2003 U.S. Dist. LEXIS 14427 (D. N.H. August 19, 2003) at *3-*5. Courts have recognized, however, that the "*other* paper" referenced in § 1446(b) is not necessarily *any* paper. See Mill-Bern Assocs. v. Dallas Semiconductor Corp. 69 F. Supp. 2d 240, 241 (D. Mass. 1999). Thus, the removing defendant "must show not only that the content of the [paper relied upon] made the case removable, but also that the [paper] was the kind of 'other paper' that may renew an otherwise expired right of removal." Id. at 241. If the May 5, 2005 Hirsch letter fails either prong of this test the case must be remanded, and it in fact fails both prongs.

First, there is nothing in the Hirsch letter which supports removal. Certainly there is nothing about a statement by an officer of a plaintiff that he regards the plaintiff's claims as meritorious that could serve to "inform" anyone of anything. Of course Ophnet thinks its claims are meritorious. Tendering (or retendering) ZHL's defense to Dr. Lamensdorf also belies rather than supports the Lamensdorfs' desired inference that the case Ophnet brought against ZHL was a sham. If the case were a sham, the last thing Mr. Hirsch would want would be for Dr. Lamensdorf to assume ZHL's defense. Thus, nothing about the paper supports the inference that the Lamensdorfs seek to draw, and their claim is mere pretext.

Second, there is little question that while the phrase "other paper" has at times been broadly read, a letter is not the sort of document that the statute contemplates. See Mill-Bern, at 242-243. "The words 'other paper' are part of the series: 'amended pleading, motion, order or other paper.' Following as they do three specific terms, the general words 'other paper' should be understood to describe something that shares some common characteristic or quality with the other terms in the series." Id. Hence, the better view of the language is that only legal pleadings,

13

perhaps in the extended sense of that term, constitute a 'paper' that can revive a lapsed right of removal. An affidavit qualifies as an 'other paper'; a deposition transcript might or might not; a letter certainly does not. See Mill-Bern at 243. Although there is contrary authority (as discussed in Judge O'Toole's opinion in Mill-Bern), it appears clear that in this district at least that those cases have correctly been rejected. Accordingly, this case must be remanded.

## III.    EVEN IF EQUITABLE TOLLING EXISTS FOR § 1446(b)'S ABSOLUTE ONE-YEAR BAR, THIS CASE IS UNSUITABLE FOR APPLICATION OF ANY SUCH EXCEPTION

Even if this Court were to recognize as a theoretical matter the possibility of implying exceptions to the absolute one-year bar of § 1446(b), there is no basis for applying that exception to the case at hand.[8] Quite apart from the fact that there is no evidence of forum manipulation (a matter addressed in Part IV below), the fact is that the defendants asserted almost *three years ago* that ZHL's joinder was fraudulent. Between July 2002 and now, however, the Lamensdorfs apparently did *nothing* that they care to articulate to investigate that claim, and if they did do anything they certainly did not see fit to actually remove the case within the one year bar. Judge Lindsay's order permitting amendment and remand over the defendants' objections constitutes the law of the case. See Ellis v. United States, 313 F.3d 636, 647 (1st Cir. 2002) ("A party should be allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay."). As such, the defendants bear the heavy burden to show that there are "special circumstances" that would justify revisiting that order. Id. at 646.

---

[8] It should be noted in passing that ZHL, a defendant in this matter, did not join in the petition for removal, and that alone is arguably fatal to its claim. See, e.g., Price v. Messer, 872 F. Supp. 317, 321 (S.D.W. Va. 1995). Since Dr. Lamensdorf has been tendered the defense of ZHL, he has every right to cause it to join in the petition, and the failure to do so, without more, requires that the case be remanded. But see Coughlin v. Nationwide Mut. Ins. Co., 776 F. Supp. 626, 629 n.4 (fraudulently joined defendant need not join in removal petition).

In determining whether newly discovered evidence may form the basis for an equitable tolling of § 1446(b)'s time limits, a defendant who has previously raised the fraudulent joinder issue should, by analogy to Fed. R. Civ. P. 59 and 60(b)(2), be held at least to an obligation of due diligence. See, e.g., Karak v. Bursaw Oil Corp., 288 F.3d 15, 18-20 (1st Cir. 2002). Having already argued to Judge Lindsay that the Court should not permit amendment because Mr. Hirsch and Mr. Zolla were in control of ZHL, the defendants are plainly are in no position now to say that newly discovered evidence informed them of that alleged fact.[9]

In short, as one court observed in invoking the absolute bar of § 1446(b), the Lamensdorfs "knew the one-year clock was ticking, yet [they] failed to take action. There is no good reason for a federal court to 'create' removal jurisdiction outside the one-year period when the issue could have been addressed before the deadline set by Congress." Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1328 (N.D. Ok. 2003). Accordingly, even if this Court were to find that a defendant may under appropriate circumstances invoke equitable tolling under § 1446(b), this case does not present an identifiable occasion for doing so.

## IV.    THE LAMENSDORFS CANNOT SHOW BY CLEAR AND CONVINCING EVIDENCE THAT ZHL WAS FRAUDULENTLY JOINED TO DEFEAT DIVERSITY.

Even if this Court were inclined to hold that equitable tolling is possible under § 1446(b) and even if it were inclined to revisit the ground that Judge Lindsay previously traversed, the Lamensdorfs cannot show fraudulent joinder. "A defendant who seeks to remove a case from the state court, asserting fraudulent joinder of a defendant, has the burden to prove by clear and

---

[9]  In many of the cases that have recognized equitable tolling, the defining characteristic is the plaintiff's concealing from the defendant the true nature of the claim by joining a straw or otherwise misleading the defendants about their *bona fides* in naming certain defendants. See, e.g., Kite v. Richard Wolf Medical Instruments Corp., 761 F. Supp. 597, 600 (S.D. Ind. 1989), where the joining of the defendant was a sham and possibly a collusive sham. See also Longden v. Philip Morris, Inc., 2003 U.S. Dist. LEXIS 14427 at *10-11 (D.N.H. August 19, 2003) (listing cases). Obviously, these cases have no applicability here, since the Lamensdorfs cannot claim that they were mislead.

convincing evidence either that there has been an outright fraud committed in the plaintiff's

pleadings or that there is no reasonable basis in law and fact for the plaintiff's claim against the

putative fraudulently joined defendant." In re Massachusetts Diet Drug Lit., 338 F. Supp. 2d

198, 202 (D. Mass. 2004). "The burden of establishing that joinder is fraudulent is on the party

seeking removal to federal court, and the burden is a heavy one." Fabiano Shoe Co., Inc. v.

Black Diamond Equip., Ltd., 41 F. Supp. 2d 70, 71 (D. Mass. 1999). All factual and legal

ambiguities must be resolved in the plaintiff's favor, and any doubts about jurisdiction should be

resolved against removal. Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4-6 (D.

Mass. 2001); In re Mass. Diet Drug Lit. at 202.

Substantively, "The linchpin of the fraudulent joinder analysis is whether the joinder of

the non-diverse party has a reasonable basis in law and fact." Mills at 4. See also Carey v.

Board of Governors of the Kernwood Country Club, 337 F. Supp. 2d 339, 341 n. 1 (D. Mass.

2004). An objectively valid basis for joining the defendant in the complaint renders the

plaintiff's subjective motivations largely irrelevant. Mills at 6; In re Mass. Diet Drug Lit. at 202.

The functional test is whether the alleged claim could survive a 12(b)(6) motion to dismiss. See,

e.g., Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1319 (9th Cir. 1998).

Here, the claim against ZHL not only can survive a motion to dismiss; it has, in essence,

already done so. The defendants have no colorable evidence, much less clear and convincing

evidence, that ZHL was amended into the case to defeat federal jurisdiction.[10] Ophnet brought a

claim for breach of the ZHL Management Agreement on the very first day the suit was filed.

See Ex. 1 at ¶¶ 38-40. *Defendants themselves* pointed out that ZHL was an indispensable party

---

[10] The assertion itself verges on the absurd. Since ZHL is a Massachusetts corporation with a principal place of business in Florida, it destroys diversity whichever side of the "v." it is on. If all they had wanted to do was to destroy diversity, Mr. Hirsch and Mr. Zolla could simply have caused ZHL to sue the Lamensdorfs.

by pointing out, correctly, that Dr. Lamensdorf signed the ZHL Management Agreement in his

representative capacity as Chairman of ZHL's Board. See Ex. 5 at 10. As a party who signed on

behalf of a disclosed principal, Dr. Lamensdorf presumptively cannot be held liable for ZHL's

breach of the contract. See McCarthy v. Azure, 22 F.3d 351, 360-361 (1st Cir. 1994); Liberty

Communications, Inc. v. MCI Telecommunications Corp., 733 So.2d 571 (Fla. App. 1999),

mandamus den., 743 So.2d 509; Restatement 2d of Agency, § 320.[11] A party to a contract is also

the archetypical Rule 19 indispensable party. See Hensohn v. Levin, 79 F.R.D. 441, 443 (D.

Mass 1978) (holding that corporate party to contract was indispensable where suit only named

individual officer who signed contract and ordering diversity-destroying joinder). There is

nothing even remotely tainted about repleading a cause of action which the defendants

themselves have pointed out must be repleaded if it is to be maintained.

There is also no question that ZHL is not merely a sham defendant. Contrast Poulos v.

Naas Food, Inc., 959 F.2d 69, 73 (7th Cir. 1992) (holding that fraudulent joinder may be found

where plaintiff has "no chance of recovering damages" against non-diverse defendant). The

ZHL Management Agreement was signed by sophisticated commercial parties who were

embarking on a multi-million dollar business venture. The contract specified Ophnet's duties

with some precision, and set forth in detail the procedures that Dr. Lamensdorf was required to

follow in order to terminate that part of the contract which he had the power to terminate.

Nevertheless, Dr. Lamensdorf purported to terminate both § 4(c) *and* § 4 (d), only one of which

---

[11] The ZHL Management Agreement contains a clause stating "this Agreement shall be construed in accordance with and governed by the laws of Florida." Ex. 2 at ¶ 13(c). Florida holds as a matter of substantive law that a party to a contract must be named in a suit upon it. "A person whose rights and interests are to be affected by a decree [and whose] actions with reference to the subject matter of litigation are to be controlled by a decree is a necessary party to the action and the trial court cannot proceed without that person." Blue Dolphin Fiberglass Pools of Florida, Inc. v. Swim Industs. Corp., 597 So.2d 808, 809 (Fla. App. 1992).

he in fact had the power to terminate, and the correspondence itself shows that he never provided

the required notice or cure period. See Ex. 3; infra at 20. Under § 4(d), Ophnet could (and

would) have earned up to $50,000 per year for its services. See Ex. 2 at § 7(a)(2). Under § 4(c),

the damages are $30,000 per year. See Ex. 2, § 7(a)(3) at p. 12. Damages in the three years

since Dr. Lamensdorf's termination took effect therefore exceed $200,000, and as much as one-

third of that will in essence come from the Lamensdorfs' pockets.

The Lamensdorfs' claim that ZHL has been fraudulently joined because no discovery has

been conducted into the claim against it is both irrelevant and untrue. The Lamensdorfs'

correspondence speaks for itself. At that, Dr. Lamensdorf and Mrs. Lamensdorf have been

deposed extensively about Ophnet's management of the ASC, its perceived 'incompetence' and

his reasons for his terminating the contract. See Exhibit 12 (excerpts and exhibits from M.

Lamensdorf Deposition Day 2); Exhibit 13 (excerpts and exhibits from M. Lamensdorf

Deposition Day 3); Exhibit 14 excerpts and exhibits from K. Lamensdorf Day 3). The exhibits

which show that he acted in bad faith in terminating Ophnet have been marked and discussed as

well, including one in which where Dr. Lamensdorf transparently attempts to fire Ophnet in

order to maneuver his wife's supposed "management company," Bayou JennKay, into the

management of the surgery center:

> John, Ron & Ken,
> The Lantz will not survive under current management. The following changes will
> therefore occur:
> 1. Effective 8:00 am 2 January 2002, Bayou Jenkay [sic] is in charge. Under the
>    supervision of BJI, Ophthnet [sic] will provide services as directed.
> 2. By 10:00 am 2 January 2002, BJI will be compensated $50,000. If the project is
>    satisfactorily completed by 28 February 2002, BJI will receive a bonus of $10,000.
>    Starting 1 March 2002, BJI will be placed on retainer of $5000 payable by 10:00 am
>    the first of each month. Expenses and labor will be payable at that time.
> 3. The Lamensdorfs are beneficial owners of 75% of ZHL. These shares are considered
>    to be paid in full and will not be further assessable. [sic]

18

Lamensdorf Ex. 66, incorporated in Ex. 12 hereto.[12]  It is hornbook law that a power of

termination must be exercised (like any other power under a contract) in good faith.  The

extensive discovery conducted shows that Dr. Lamensdorf's grasping was the antithesis of good

faith and fair dealing.

Finally, the defendants attempt to deflect this Court's attention from the substance of the

claim by attacking Mr. Hirsch and Mr. Zolla (and their attorneys) for standing on both sides of

the case.  No doubt when close corporations do business with related close corporations there is

the potential for conflicting loyalties, but there is nothing which is in itself legally or morally

suspect about that circumstance.  The Lamensdorfs themselves prove the point.  They have

recently brought a lawsuit *against ZHL* in the State of Florida.  See Exhibit 15, hereto,

constituting an excerpt from the Florida complaint.  They have done so after bringing derivative

claims *on ZHL's behalf* in this lawsuit.  See excerpts from the Lamensdorfs' Answer and

Counterclaims to the Second Amended Complaint, attached hereto as Exhibit 16, at Count I

("Breach of ZHL Management Agreement") ¶¶ 28-34.  See also id. at ¶ 29 ("Defendants . . .

bring this action as shareholders of ZHL, on behalf of ZHL."); id. at Second Affirmative

Defense, p. 11 "Plaintiffs first breached the parties' Management Agreement for ZHL . . . and

such breach was material.").  The same lawyers in the Florida case represented the Lamensdorfs

when this case was in the Superior Court and they seek admission *pro hac vice* to this Court.

The Lamensdorfs' moral outrage is therefore as misplaced as it is irrelevant.

In summary, there was a reasonable basis to join ZHL at the time it was joined and there

is a reasonable basis to keep it in the case.  At a minimum, the Lamensdorfs' scant evidence

---

[12]  See also id., Ex. 63 at 2 ("Kathy has told me that Bayou Jenkay[sic] can have the [ASC] running effectively by the end of March.  That would truly be a miracle . . .. She is only asking what Ken is receiving, $75.00/hour, a real bargain.").  Dr. Lamensdorf has also made clear why he regarded Ophnet as incompetent managers.  See Ex. 12 at 278 ("They wouldn't hire the people I suggested.  They wouldn't institute the reforms I suggested.  They wouldn't do any of the things that I suggested").

cannot conceivably support a finding by clear and convincing proof that ZHL was fraudulently joined. Thus, even if this Court were to recognize some form of equitable toiling to the absolute one-year bar of § 1446(b), there would be no basis to apply that exception here. Accordingly, this Court should find that it has no subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 and should remand the matter back to the Essex Superior Court.

Respectfully submitted,

OPHNET, INC., JOHN A. HIRSCH,
RONALD W. ZOLLA, and KENNETH CRAM,

By their Attorneys,

/s/ Edward Foye_____
J. Owen Todd (BBO # 499480)
Edward Foye (BBO #562375)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Date: June 9, 2005          617-720-2626