UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPHNET, INC., a Massachusetts corporation, JOHN A. HIRSCH and RONALD W. ZOLLA, individually and as shareholders of ZHL, Inc., a Massachusetts corporation, and KENNETH CRAM, <br><br>        Plaintiffs, <br><br>       v. <br><br> MICHAEL LAMENSDORF, individually and as a shareholder of ZHL, Inc., MICHAEL LAMENSDORF, M.D., P.C., a Florida professional corporation; BAYOU JENNKAY, INC., a Florida corporation, KATHY LAMENSDORF, individually and as an officer of Bayou JennKay, Inc., and ZHL, INC., a Massachusetts corporation, <br><br>       Defendants. | CIVIL ACTION NO. 05-10970-DPW |

**OPPOSITION TO PLAINTIFFS' *RENEWED* MOTION FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1447(c)**

Plaintiffs' Renewed Motion for Attorneys Fees' Pursuant to 28 U.S.C. § 1447(c) ("Renewed Motion") is fundamentally flawed. Plaintiffs' contention that they are entitled to attorneys' fees because there was "no reasonable basis" for removal is simply false. First, several Circuits have held that the one year time limit for diversity actions in 28 U.S.C. § 1447(b) does not apply to cases where, as here, the action was originally subject to federal court jurisdiction. Second, plaintiffs have it wrong when they contend that defendants' arguments in favor of federal jurisdiction have been considered and decided by Judge Lindsay. Third, plaintiffs' counsel's own statements made to the Court at the July 12, 2005 hearing belie plaintiffs' assertion that defendants' lacked sufficient evidence to support removal. In addition, the Court should refuse plaintiffs' request because plaintiffs' counsels' conduct in this and

related cases does not merit an award of fees. Furthermore, such an award would countenance the gamesmanship plaintiffs' have employed in manipulating the locale and forum of this litigation and the related declaratory judgment matter. This Court should therefore deny Plaintiffs' Renewed Motion for Attorneys Fees Pursuant to 28 U.S.C. § 1447(c).

## INTRODUCTION

In March, 2002, plaintiffs Hirsch, Zolla and Ophnet brought this action in Massachusetts Superior Court, Essex County, against the Lamensdorfs and Dr. Lamensdorf's medical practice. Plaintiffs later amended their complaint to add Cram as a plaintiff. All plaintiffs were residents of Massachusetts, all defendants residents of Florida, and the amount in controversy exceeded $75,000. Defendants timely removed on the basis of the federal court's diversity jurisdiction. See Ophnet, Inc. et al. v. Lamensdorf et al., Civ. A. No. 02-CV-10570-RCL. After removal, plaintiffs sought to add ZHL, Inc., a Massachusetts corporation, as a defendant in order to defeat complete diversity. Hirsch and Zolla, president and vice-president of ZHL, respectively, elected to have their company, Ophnet, sue ZHL for breach of a management agreement. Plaintiffs claimed that ZHL was an "indispensable party" to the suit because Ophnet suffered damages that were "substantial indeed from [ZHL's] wrongful termination of [the] agreement." Based on plaintiffs' representations, Judge Lindsay remanded the action to state court for lack of complete diversity.

In May, 2005, defendants removed this action back to federal court based on plaintiffs' recent actions which defendants reasonably believed indicated that ZHL was fraudulently joined solely to defeat diversity. See Ophnet et al. v. Lamensdorf et al., C.A. No. 10970-DPW ("Ophnet action"). For instance, Hirsch and Zolla recently served the Lamensdorfs with a declaratory judgment complaint, on behalf of *and* with ZHL as plaintiff, seeking to divest ZHL

of all its assets and pocket the proceeds.  At the same time, plaintiffs failed to take any affirmative steps in the Ophnet action to obtain a judgment *against* ZHL in state court. Specifically, plaintiffs: (1) failed to serve ZHL's registered agent in Massachusetts, plaintiff Hirsch, with the complaint (presumably since he would suing himself as majority shareholder); (2) failed to ever cause ZHL to answer the complaint; and (3) failed to pursue a default judgment against ZHL, even after stating in correspondence to defendants that plaintiffs "did not think ZHL had any meritorious defenses to Ophnet's claims."  <u>See</u> Letter from Hirsch dated May 5, 2005, attached as Exhibit D to Defendants' Notice of Removal.

Defendants also removed the declaratory judgment action based on the federal court's diversity jurisdiction.  <u>See</u> <u>Hirsch et al. v. Lamensdorf et al.</u>, C.A. No. 05-10902-DPW.  The Court, on July 12, 2005, remanded both the Ophnet action and declaratory judgment action to state court.  Plaintiffs submitted motions for attorneys' fees in connection with both the Ophnet action and declaratory judgment action without the required supporting material.  The Court denied plaintiffs' motions but gave plaintiffs the opportunity to resubmit their request for fees. Perhaps heeding, at least in part, the Court's suggestion to exercise "prudence," Plaintiffs have chosen not to file a "renewed" motion for attorneys' fees in connection with the declaratory judgment action they stealthily and prematurely filed.  <u>See</u> Transcript of July 12, 2005 Hearing ("Hearing Trans.") at 34, attached hereto at Exhibit A.  Plaintiffs have, however, pressed their claim for attorneys' fees in obtaining remand of the Ophnet action.

## ARGUMENT

I.    **An Award of Attorneys Fees is Inappropriate as Defendants Had a Reasonable Basis for Removal**

On granting a motion for remand, a federal court may, at its discretion, order the defendant to pay the plaintiff his "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Courts have wide discretion in determining whether to award attorneys' fees pursuant to 28 U.S.C. § 1447(c). District courts in the First Circuit have determined that where a reasonable basis exists for removal, an award of attorneys fees is improper. See Gattegno v. Sprint Corp., 297 F.Supp. 2.d 372, 378 (D. Mass 2003) (rejecting plaintiffs' request for attorneys' fees where "defendants had a reasonable basis for removing this case."); FLEXcon Co., Inc. v. Ramirez Commercial Arts, Inc., 190 F.Supp. 2d 185, 187 (D. Mass. 2002) (rejecting plaintiffs' request for fees where "[t]here is no evidence in this record . . . that the defendant sought removal in bad faith or for oppressive reasons."); Tremblay v. Phillip Morris, Inc., 231 F.Supp. 2d 411, 419 (D. N.H. 2002) (denying plaintiffs' request for attorneys fees where defendant "had a good faith basis for seeking removal[.]"); Santiago v. Barr National, Inc., 795 F.Supp. 508, 513 (D. Mass. 1992) (denying plaintiffs' request for attorneys fees as defendants attempt at removal was "colorable").

Plaintiffs contention that 28 U.S.C. § 1447(c) "does not require bad faith or frivolousness on the part of the removing party" to award attorneys' fees is unsupported by any case law from courts within the First Circuit. Rather, opinions issued in this Circuit have routinely denied requests for fees where there was a reasonable basis for removal. See e.g. Gattegno, 297 F.Supp. 2.d at 378. Additionally, courts in other jurisdictions have also similarly denied such requests for attorneys' fees. See US Airways, Inc. v. PMA Capital Ins. Co., 340 F. Supp. 2d 699, 710 (E.D.

Va. 2004) (denying request for attorneys fees, stating where "a cursory examination would not clearly have revealed a lack of jurisdiction . . . a fee award is unwarranted."); American Inmate Phone Sys. v. U.S. Sprint, 787 F.Supp. 852, 859 (N.D.Ill.1992) (denying plaintiffs' request for fees pursuant to § 1447(c) where there "is no indication that [defendant] acted in bad faith.").

    A.    <u>A Wide Body of Case Law Supports Defendants' Belief that Removal Was Timely</u>

Plaintiffs claim that an award of fees is appropriate because defendants, in their view, had no basis for asserting that removal was timely.  Plaintiffs point to the one year limitation in 28 U.S.C. § 1446(b), which states in relevant part:

> *If the case stated by the initial pleading is not removable*, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is or has become removable, *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.*

28 U.S.C. § 1446(b) (emphasis added).  Two lines of cases hold that the one year limitation in § 1446(b) does not apply to bar removal in the present case.  The first holds that § 1446(b) addresses only those cases that are not removable as "stated by the initial pleading[.]"  Four Circuits have considered the statutory language and held that the one year limitation is inapplicable to cases that were originally removable to federal court.  See Brown v. Tokio Marine & Fire Ins. Co., 284 F.3d 871, 873 (8th Cir. 2002); Johnson v. Heublein Inc., 227 F.3d 236, 241 (5th Cir. 2000); Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999); Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-17 (9th Cir. 1998).  Thus, these courts hold that defendants seeking to remove cases that were originally removable to federal court do not need to comply with the one year limitation set forth in § 1446(b).  See also Maine

Employers Mutual Ins. Co. v. Yates Ins. Co., 52 F. Supp. 2d 135, 139 (D. Me. 1999) ("the one-year-from-commencement time limitation for the removal of diversity cases [applies] only to actions that are not removable as they are stated in their initial pleadings.").

The cases plaintiffs cite at p. 3 of their Memorandum in Support of Plaintiffs' Renewed Motion for Attorneys Fees Pursuant to 28 U.S.C. 1447(c) ("Pls. Mem." or "Plaintiffs' Memorandum") are inapposite, as they do not involve actions that were removable at the time the suit was commenced. See Service Asset Mgmt. Co. v. Hibernia Corp., 80 F.Supp. 2d 626, 627 (E.D. Tex. 2000) (noting case could not be removed when plaintiff first filed its claim because of lack of diversity); Lytle v. Lytle, 982 F.Supp. 671 (E.D. Mo. 1997) (expressly finding that the one year limitation applied because the case was not removable as initially filed). Unlike the cases relied upon by plaintiffs, the present action as originally filed was removable to federal court. Plaintiffs' subsequently obtained a remand upon their joinder of non-diverse defendant ZHL. Applying the analysis noted in the cases from other Circuits above, the one year limitation for removal of diversity cases is inapplicable to the present case. To defendants' knowledge, the First Circuit has not yet addressed this issue. See Santiago, 795 F.Supp. at 513 (denying plaintiffs' request for fees and noting "[defendant] is correct in pointing out that the First Circuit has not had the occasion to interpret the new one-year limitation of § 1446(b).").[1]

The second line of cases holds that the one year limitation of § 1446(b) is tolled where a plaintiff fraudulently joins a party to defeat diversity, even if the action was not removable as initially filed.. See e.g. Tedford v. Warner-Lambert Co., 327 F.3d 423, 428-29 (5th Cir. 2003)

---

[1] While this court, in Santiago, had occasion to consider the 1 year limitation in 1446(b), that case was also distinguishable given that the suit was not subject to removal when originally commenced. See Santiago, 795 F.Supp. at 510 n.3 ("Here, there was incomplete diversity of the parties until the dismissal and settlement of the defendants other than Barre National.").

("where a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one-year limit in § 1446(b) be extended."); Hardy v. Ajax Magnathermic Corp., 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000) (one year limitation does not bar removal if plaintiffs fraudulently joined defendants); Kite v. Richard Wolf Medical Instruments Corp., 761 F. Supp. 597, 601 (S.D. Ind. 1989) (finding exception to one year limitation in 1446(b) where plaintiff destroyed diversity by adding non-diverse defendant and required remand, only to agree with non-diverse defendant to dismiss the case, stating "[if] the Court were to grant remands in cases such as this, the effect would be to encourage plaintiffs to manipulate the removal process[.]"). Defendants, therefore, had a reasonable basis to remove this action more than one year after it was commenced, and plaintiffs' request for attorneys' fees should be denied.

Plaintiffs' argument that defendant lacked "sufficient evidence to make out a case for fraudulent joinder" is belied by plaintiffs' own counsel's statements made to the Court at the July 12, 2005 hearing. Despite consistently maintaining that ZHL was an indispensable party that must be joined for plaintiffs to collect their "substantial" damages, plaintiffs' counsel *now* concedes that instead of joining ZHL and requiring remand, plaintiffs could have achieved their objective through non-judicial means. See Hearing Trans., Ex. A, at 16, (plaintiffs' counsel stating that plaintiffs did not need to amend their complaint to add ZHL as a defendant in this matter, noting that Hirsch and Zolla "could have accomplished the goals that this lawsuit seeks . . . by the corporate equivalent of brute force."). In other words, joinder of ZHL as a defendant in 2002 was unnecessary, and done solely to break diversity and require remand to state court. Nevertheless plaintiffs did join ZHL and Judge Lindsay remanded the original action to the Superior Court due to lack of complete diversity.

B.     Defendants' Basis for Removal was Distinct from That Originally Argued Before Judge Lindsay

Plaintiffs argue that removal was without basis because the arguments advanced by defendants were already considered and rejected by Judge Lindsay when the case was originally remanded to state court. Plaintiffs' argument, however, completely misses the mark. Defendants reasonably based their recent removal of this case on plaintiffs' recent actions evidencing their lack of good faith intention to prosecute an action against ZHL. These facts have only recently come to light, *after Judge Lindsay originally remanded the case*. Indeed, defendants contend that Judge Lindsay based his decision in part on a belief that plaintiffs intended to prosecute their action against ZHL in good faith, and that plaintiffs' recent actions have only now revealed that they never had any such intention. See Notice of Removal at ¶5 ("As Plaintiffs professed their intention to pursue their claim against ZHL to recover their 'substantial' damages, this Court allowed plaintiffs to amend their complaint to add ZHL as a defendant, and remanded the action to state court for lack of complete diversity."). Defendants reasonably believed that plaintiffs' recent actions evidenced their lack of good faith intention to pursue the claim against ZHL in direct contradiction to what plaintiffs represented when first securing remand. Thus, to suggest that Judge Lindsay has already decided the issue is, therefore, simply untrue.

Furthermore, plaintiffs' suggestion that defendants' have attempted to conceal Judge Lindsay's basis for remand of this action in 2002 is incorrect as evidenced by defendants' reference to the prior action before Judge Lindsay in their Notice of Removal and Civil Action Cover Sheet filed in this case. See Notice of Removal at ¶2 (discussing the original removal of this action and citing Ophnet, Inc. et al. v. Lamensdorf et al., Civ. A. No. 02-CV-10570-RCL).

No attempt was made on the part of defendants to conceal Judge Lindsay's prior opinion. To the contrary, defendants expressly argued that plaintiffs' assertions made to Judge Lindsay regarding their intention to prosecute a claim against ZHL were false as evidenced by plaintiffs' recent activities. Likewise, plaintiffs incorrectly imply that defendants were seeking to avoid appearing before Judge Lindsay because he had already ruled on the matter. First, Judge Lindsay has not already considered the issue at hand because defendants' fraudulent joinder argument was based on actions only recently taken by plaintiffs *after* the case was originally remanded by Judge Lindsay. Second, such a suggestion is belied by the references to this action while it was before Judge Lindsay in defendants' Notice of Removal and Civil Action Cover Sheet. <u>See</u> Civil Action Cover Sheet, attached hereto at Exhibit B.

    C.    <u>Awarding Attorneys' Fees Would Reward Plaintiffs' Gamesmanship</u>

The Court has wide discretion in considering a request for attorneys' fees, and would be justified in refusing plaintiffs' request for fees so as to avoid rewarding the gamesmanship employed by plaintiffs and their counsel in this matter. Plaintiffs' counsels' conduct of this case and the related declaratory judgment action does not merit an award of fees. As was made evident at the hearing before the Court on July 12, 2005, plaintiffs have taken some extraordinary, to say the least, steps to preserve their desired forum and locale for this litigation. For instance, plaintiffs joined ZHL as a defendant in this action, yet did not serve ZHL's registered agent for service in Massachusetts, plaintiff John A. Hirsch. Plaintiffs have yet to offer any credible explanation as to why they did not serve Hirsch with the complaint, and defendants agree with the Court's assessment at the July 12, 2005 hearing: "[I]t's a little bit like Pogo, like seeing the enemy and he is us. We have John Hirsch bringing an action against ZHL. John Hirsch is the registered agent in Massachusetts . . . So, you're suing yourself." <u>See</u>

-9-

Hearing Trans., Ex. A at 15. Likewise, in their Renewed Motion plaintiffs offer no explanation as to why they have failed to seek a default judgment against ZHL, a party who's "answer is more than 18 months overdue." <u>See</u> Pls. Mem. at 5.

Plaintiffs also filed their declaratory judgment complaint before the action was ripe as a "placeholder" action so that they could manipulate the location of that dispute. <u>See</u> Hearing Trans., Ex. A at 6-10, 13. Moreover, in the five months between the filing of their declaratory judgment complaint and their eventual service upon the Lamensdorfs, counsel for the parties met on numerous occasions, had several conversations over the phone, and exchanged a profuse amount of written correspondence, yet counsel for plaintiffs failed to ever inform defendants or their counsel of the filed declaratory judgment action. <u>See</u> Hearing Trans., Ex. A at 5. In addition, plaintiffs' counsel have had yet another opportunity to explain the glaring conflict of interest that arises from their simultaneously representation of ZHL in the declaratory judgment action, and prosecution of another related action against ZHL, yet counsel has offered no such explanation in their Renewed Motion.

Plaintiffs' and their counsels' activities described above formed, in part, the basis for defendants' belief that removal was appropriate. <u>See</u> <u>Hardy</u>, 122 F. Supp. 2d at 760-61 (W.D. Ky. 2000) (in-state defendant fraudulently joined when plaintiff had no facts to support a claim, failed to respond to case management order, and did not oppose defendant's motion for summary judgment); <u>Kite</u>, 761 F. Supp. at 601 (S.D. Ind. 1989) (one year limit does not apply where defendant removed, plaintiff added in-state defendant six months later and obtained remand, only to dismiss that defendant by agreement three years later). Granting plaintiffs' fees for their efforts in securing remand in this case will countenance such behavior.

-10-

Finally, plaintiffs  suggest to the Court that notwithstanding their improper conduct in general, their work in drafting the remand briefing merits an award of fees.  Even if the Court were to heed plaintiffs' request to ignore their conduct overall, plaintiffs' remand briefing does not save the day, as it contains the same personal rancor directed at defendants that has unfortunately become a mainstay of plaintiffs' court submissions.  Plaintiffs attempt to insult defendants personally at page 2 of their Memorandum in Support of Motion to Remand, attached at Exhibit C to the Affidavit of Edward Foye, Esq., stating "[u]nsurprisingly (*at least to those who know the Lamensdorfs*) the latest removal took place less than three weeks before discovery was due to close[.]" (emphasis added).  While the Lamensdorfs have refused, and will continue to refuse to dignify such comments with response, they certainly take issue with plaintiffs' suggestion that such work merits a fee award.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c) should be denied.

Respectfully submitted,

MICHAEL LAMENSDORF, MICHAEL LAMENSDORF, M.D., P.C., BAYOU JENNKAY, INC., and KATHY LAMENSDORF

By their attorneys,


_(s) Matthew E. Miller_
Brandon F. White, BBO# 525020
Matthew E. Miller, BBO# 655544
FOLEY HOAG, LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: August 2, 2005

OF COUNSEL:
ABEL, BAND, RUSSELL, COLLIER, PITCHFORD & GORDON, CHARTERED
Michael S. Taaffe (Fla. Bar No. 490318)
Admitted _pro hac vice_
240 South Pineapple Avenue
Sarasota, Florida 34230-6948
(941) 366-6660
(941) 366-3999 (fax)

-12-

```
 1                  UNITED STATES DISTRICT COURT
 2                   DISTRICT OF MASSACHUSETTS
 3     * * * * * * * * * * * * * * * * * *
                                         *
 4     JOHN A. HIRSCH                    *
                         Plaintiff       *
 5                                       *
           VERSUS                        *      CA-05-10902-DPW
 6                                       *
       MICHAEL LAMENSDORF                *
 7     KATHY LAMENSDORF                  *
                         Defendants      *
 8     * * * * * * * * * * * * * * * * * *
                                         *
 9     OPHNET, INC., JOHN A. HIRSCH,     *
          RONALD W. ZOLLA, KENNETH       *
10        CRAM                           *
                         Plaintiffs      *
11                                       *
           VERSUS                        *      CA-05-10970-DPW
12                                       *
       MICHAEL LAMENSDORF                *
13       BAYOU JENNKAY, INC.,            *
         KATHY LAMENSDORF                *
14                       Defendants      *
                                         *
15     * * * * * * * * * * * * * * * * * *
16          BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
17            UNITED STATES DISTRICT COURT JUDGE
18                  HEARING - JULY 12, 2005
19     APPEARANCES:
20          EDWARD FOYE, ESQ., Todd & Weld, LLP,
            28 State Street, 31st Floor, Boston,
21          Massachusetts  02109, on behalf of the
            Plaintiffs
22
            MICHAEL S. TAAFFE, ESQ., Abel, Ban, Russell,
23          Collier, Pitchford & Gordon, 240 South
            Pineapple Avenue, Post Office Box 49948,
24          Sarasota, Florida  34230-6948, on behalf of
            Defendants
25
```

Page 2

```
 1   APPEARANCES (CONTINUED):

 2        MATTHEW E. MILLER, ESQ., Foley, Hoag, LLP,

          155 Seaport Boulevard, Boston, Massachusetts

 3        02135, on behalf of the Defendants

 4

 5

 6

 7

 8

 9

10

11                              Courtroom No.  1 - 3rd Floor

                                1 Courthouse Way

12                              Boston, Massachusetts 02210

                                3:15 P.M. - 3:55 P.M.

13

14

15

16

17

18

19

20        Pamela R. Owens - Official Court Reporter

             John Joseph Moakley District Courthouse

21              1 Courthouse Way - Suite 3200

                  Boston, Massachusetts  02210

22

23     Method of Reporting:  Computer-Aided Transcription

24

25
```

Page 3

1      CA-05-10902-DPW & CA-05-10970-DPW
2            JULY 12, 2005
3         THE CLERK: Would counsel please identify
4    themselves?
5         MR. FOYE: Edward Foye, Your Honor, for the
6    plaintiffs on both actions.
7         MR. MILLER: Matthew Miller, Your Honor,
8    representing the defendants, Michael Lamensdorf,
9    Kathy Lamensdorf, and Dr. Lamensdorf's medical practice
10   and Bayou Jennkay, Incorporated. And with me is Michael
11   Taaffe of the firm Abel, Ban from Sarasota, Florida.
12   Mr. Taaffe is admitted pro hac to practice in the
13   Ophnet case. Today we filed a motion for admission
14   pro hac vice in the declaratory judgment action as well.
15        THE COURT: Well, let me ask you a question
16   that perhaps I know the answer to already. Has the
17   conduct of this litigation been like this all along?
18   This is one of the most embarrassing cases I have seen
19   -- of cases I have seen on both sides.
20        MR. TAAFFE: Your Honor, I would agree with
21   you. And that's why we're here. We really need the
22   Court's assistance. We need a Magistrate involved in
23   this case. We need someone to run rough shod over this
24   case and need to get it tried. That's why we're here.
25   That's why we come back to Federal Court, Your Honor.

Page 4

1         THE COURT: Come back to Federal Court, but
2    not to Judge Lindsay.
3         MR. TAAFFE: Because we have an order from
4    Judge Lindsay presented in this case back in February.
5    It's been ignored, an order on discovery ordering --
6         THE COURT: Not Judge Lindsay. I assume it's
7    a state court order.
8         MR. TAAFFE: State court, yes.
9         THE COURT: No. I'm talking about Judge
10   Lindsay who had sent this litigation out on a motion to
11   remand.
12        MR. TAAFFE: Why it's back here, Your Honor?
13        THE COURT: Yes, before me. Why did you
14   decide to --
15        MR. TAAFFE: I don't know why this court
16   rotated onto it, Your Honor. All I know is the reason
17   it's back here is because in the last month, ZHL has
18   sued the Lamensdorfs in a separate action. Instead of
19   amending their already state action, they filed a new
20   action and sued the Lamensdorfs for a dec. action that
21   created diversity. We found out because of that, that
22   they represented ZHL, the plaintiff in one case. ZHL is
23   not even represented in the other case.
24        THE COURT: What is going on here?
25        MR. TAAFFE: We were a party in this case --

Page 5

1         THE COURT: And you filed --
2         MR. TAAFFE: -- that is not even represented.
3         THE COURT: And you filed a case in Florida,
4    right?
5         MR. TAAFFE: Correct. I mean, that's the
6    problem. You know, we filed a case in -- well, what
7    happened is we filed a case in Florida because we didn't
8    know there was a second case filed in Massachusetts.
9    He filed it and never told us, never served us. It was
10   dismissed. Then all of a sudden, we find out when he
11   serves our clients. And we have been in depositions
12   with him for months. He never told us about it. That's
13   why we filed it in Florida because that's where the
14   property is. That's where we think it's going to be
15   sold. That's where we think the proceeds may go out of
16   the country. We have one of the plaintiffs in this case
17   who is in South Africa, Kenneth Cram. We're really
18   concerned about four million dollars will leave this
19   jurisdiction and we'll never see it again.
20        THE COURT: This is ragtime.
21        MR. TAAFFE: It is. You're right, Your Honor.
22        THE COURT: I mean, that recitation is
23   ragtime. But most of the rest of this is ragtime.
24        So, let's go through this step by step.
25        Why didn't you make timely service?

Page 6

1         MR. FOYE: I'm sorry, Your Honor?
2         THE COURT: Why didn't you make timely
3    service?
4         MR. FOYE: We began the process of serving,
5    Your Honor, roughly three days after the letter of
6    intent was signed. I sued in state court as a
7    placeholder because I knew that the Lamensdorfs would
8    probably do it in federal -- in court down in Florida.
9         THE COURT: But why didn't you serve them?
10   You didn't serve them in a timely fashion.
11        MR. FOYE: We did not -- we did serve in a
12   timely fashion, Your Honor, based on our reading of the
13   state court law.
14        THE COURT: Why did it take you more than 90
15   days to do it?
16        MR. FOYE: It took more than 90 days because
17   that's how long it took to sign the letter of intent.
18   The letter of intent was signed, I believe, April 6th,
19   2005. And at that point, there was a deal that made
20   service of process make sense. Until then, there were
21   just conversations about the deal.
22        THE COURT: Then why did you file the lawsuit
23   if it didn't make sense to make service of process?
24        MR. FOYE: Because we were concerned that
25   Florida law is such that if we were the first filed in

3 (Pages 3 to 6)

Page 7

1  Massachusetts, Florida would likely defer to us. If we
2  were not the first filed in Massachusetts, it was an
3  open question whether we could have two lawsuits going
4  on in two states --
5      THE COURT: You do now.
6      MR. FOYE: -- on parallel tracks.
7      THE COURT: You do now.
8      MR. FOYE: But we don't now, Your Honor. The
9  lawsuit in Florida has been stayed.
10     THE COURT: It's stayed, but you've got now
11 three lawsuits going on in this. And I don't understand
12 for the life of me why you wouldn't tell them if that's
13 what you're going to do, except gamesmanship, which
14 seems to be the modus operandi for both parties.
15     MR. FOYE: I regret Your Honor's
16 characterization of the case.
17     THE COURT: I regret having to just look
18 through this file. But I don't for the life of me
19 understand how you thought that you got to jump ahead in
20 line if you weren't prepared to serve. And that appears
21 to be what the case is: That you filed a placeholder
22 lawsuit; didn't tell them that you had filed this
23 lawsuit; let yourself get booted out in the state court;
24 and you had to come back in and get the Judge to
25 reconsider. That's just -- unconscionable is probably

Page 8

1  too strong a term. But it's -- as I believe I said the
2  last time you were here where I had to deal with
3  depositions, this is beneath the dignity of practicing
4  lawyers, the kind of stuff that's going on here.
5  I thought -- you know, I actually gave my law clerks a
6  dramatic reading of the joint statement. It is unreal.
7      So, the short of it is you didn't because you
8  didn't feel like it.
9      MR. FOYE: Well, no, Your Honor. We did not
10 do it because until there was a ripe -- I shouldn't say
11 ripe because --
12     THE COURT: No, you shouldn't because that
13 means that you had improperly filed a declaratory
14 judgment action.
15     MR. FOYE: -- there was a belief on the part
16 of my clients that this deal would come to fruition
17 sooner than it did and that the letter of intent would
18 be signed sooner than it did.
19     THE COURT: It's either ripe or it isn't.
20 And filing a declaratory judgment action submits to
21 the equity concerns of the Court with respect to
22 anticipation. And the idea that you get to be first in
23 line because you've filed a meaningless lawsuit strikes
24 me as questionable.
25     MR. FOYE: I'm not quite so certain that it

Page 9

1  was even meaningless at that point, Your Honor. Dr.
2  Lamensdorf had known about the fact --
3      THE COURT: If it wasn't meaningless, then why
4  didn't you serve them?
5      MR. FOYE: Because we didn't want --
6      THE COURT: You've got a different meaning,
7  right?
8      MR. FOYE: You've seen what one lawsuit
9  brought about, Your Honor. And my clients were
10 reluctant to embark on a second lawsuit unless it was
11 absolutely necessary.
12     THE COURT: Have you ever heard about client
13 management? I assume that this is countenanced by the
14 parties. In fact, the parties apparently enjoy this
15 kind of activity as an avocation to pay lawyers to make
16 fools of themselves. But at some point, lawyers have to
17 exercise some degree of control lest they cease to be
18 professionals and become mere hired hands.
19     The purpose is to get this resolved as
20 promptly as possible. And this proliferation of
21 ancillary litigation is, it seems to me, an immense
22 waste of time.
23     MR. FOYE: At the time my clients came to me,
24 -- if I may just briefly in response, Your Honor -- I
25 did not think that it was unreasonable for them to want

Page 10

1  to have this matter heard in Massachusetts. I did not
2  think it was unreasonable --
3      THE COURT: So, why didn't you move to amend
4  the complaint?
5      MR. FOYE: Why didn't I what?
6      THE COURT: Why didn't you move to amend the
7  complaint in the underlying case that has been pending?
8      MR. FOYE: Because at that point I had a firm
9  trial -- or I was coming up on getting a firm trial
10 date, Your Honor, and I did not want it delayed by
11 another year or more of discovery. And I believe that
12 -- I was certainly at risk for that.
13     The other reason I did not is because I wanted
14 to bring the issue of the sale of the surgery center
15 to a discrete head to make Dr. Lamensdorf state in a
16 pleading whether he agreed with the sale of this center
17 or whether he did not agree with the sale of the center,
18 something he would not --
19     THE COURT: Which is going to have to go
20 forward more quickly? Which is going to require
21 judicial action first if we're talking about sequencing?
22     MR. FOYE: Well, at the time we were in state
23 court, Your Honor. And I believe that it was very
24 likely that the Judges in Essex, and particularly in the
25 B session up in Newburyport, which is not a particularly

4 (Pages 7 to 10)

Page 11

1 busy session. And I believe that the Judges up there
2 and that the court up there could and would have made
3 time to hear this on an expedited basis.
4      THE COURT: Hear this? You mean the
5 declaratory judgment?
6      MR. FOYE: I mean the dec. action. Yes, Your
7 Honor.
8      THE COURT: Okay.
9      MR. FOYE: If it came to that. If it came to
10 that -- and it might never have come to that.
11      THE COURT: Why wouldn't it?
12      MR. FOYE: Because if we don't have a deal to
13 sell the surgery center -- my clients don't have a deal
14 to sell the surgery center, there is no point in finding
15 out whether Dr. Lamensdorf approves, disapproves or what
16 his opinion is. And we certainly don't need a Court to
17 ratify or not ratify it.
18      THE COURT: I don't understand what you've
19 just said. If your concern is to get this deal done and
20 protect yourself on it, that's why you brought a
21 declaratory judgment action, that's why they brought
22 their declaratory judgment action, which frankly is as
23 questionable, more so since they decided to bring it in
24 another state, how could you not assume that that was
25 going to be the first thing that was dealt with by the

Page 12

1 Court? That's the thing that requires immediate
2 response.
3      MR. FOYE: When Your Honor says that was going
4 to be the first --
5      THE COURT: The declaratory judgment action.
6      MR. FOYE: The declaratory judgment. I did
7 believe that would be the case, Your Honor.
8      THE COURT: Okay. So, why didn't you amend
9 the complaint -- that's easy enough to do -- to ask for
10 some sort of expedited treatment on the amended
11 complaint rather than proliferating this stuff?
12      MR. FOYE: Well, Your Honor, if was, in fact
13 -- I think it's worth recollecting both of these cases
14 were filed in the same session. They would have gone
15 before the same Judge. And I suspect that at some
16 point, they may, in fact, have been consolidated. But
17 the reason it was filed as a separate action was because
18 of the -- I'm now at the point of repeating myself. But
19 it was because of the possibility that it would go
20 forward and the possibility that it would not go
21 forward, that the surgery center might sell and that the
22 surgery center might not. Races to the courthouse are
23 not -- I will agree with you -- actions which enhance
24 the dignity of the profession. But they are real, they
25 happen, they matter. And whether -- if we were down in

Page 13

1 Florida, if they had filed first in Florida, I don't
2 think the Florida judge would have stayed the case. I
3 don't think, based on my reading of Florida law, that
4 the Judge there could have stayed the case. And we
5 would then have two active cases being litigated in two
6 separate states.
7      THE COURT: It is no more persuasive when you
8 say it again than it was the first time and, in fact, it
9 gets worse that this was some sort of preemptive
10 activity to twist her tail. I just -- I simply do not
11 understand it.
12      Now let me turn to the question of why you
13 haven't moved to default ZHL.
14      MR. FOYE: Because ZHL, we've tendered -- I
15 believe we have tendered a long time ago -- the defense
16 of ZHL and Dr. Lamensdorf. And we would like him to
17 assume the defense of ZHL. My clients would. And to
18 the extent that he does not choose to assume the defense
19 of ZHL, that's certainly his business. But my clients
20 do not want to be in the position of moving for a
21 default. In the first place, they prefer not to have a
22 default judgment. They prefer to have a judgment on the
23 merits.
24      THE COURT: They're the ones suing ZHL.
25      MR. FOYE: That's correct, Your Honor.

Page 14

1      THE COURT: They don't want a default judgment
2 from an adverse party?
3      MR. FOYE: No, Your Honor, not if they can
4 have a judgment on the merits.
5      THE COURT: Why?
6      MR. FOYE: Because of the issue of whether
7 that can then be used against Dr. Lamensdorf in a
8 subsequent proceeding for indemnification.
9      THE COURT: Why?
10      MR. FOYE: A judgment on the merits, if Dr.
11 Lamensdorf will bind -- will bind Dr. Lamensdorf if he
12 has had the opportunity to litigate it in a manner, I
13 think, very possibly it would not bind Lamensdorf if it
14 were simply a procedural default.
15      THE COURT: Who accepts service for ZHL?
16      MR. FOYE: He was served by the Florida
17 Sheriff, Your Honor.
18      THE COURT: As the defendant in the case?
19      MR. FOYE: Dr. Lamensdorf was served with the
20 papers. Yes.
21      THE COURT: Who's the resident agent -- Mr.
22 Hirsch?
23      MR. FOYE: Resident agent for ZHL in Florida
24 is currently William Hirsch, the CPA. I don't know
25 whether he was the registered agent for -- but he may be

5 (Pages 11 to 14)

Page 15

1 the registered agent for Ophnet. I'm not sure since it
2 has a presence in Florida that it necessarily needs a
3 registered agent. It is -- there's a business down
4 there.
5       THE COURT: The registered agent, according to
6 the motion to submit additional materials --
7       MR. FOYE: May I get some water, Your Honor?
8       THE COURT: Yes.
9       MR. FOYE: Thank you.
10       THE COURT: -- is John A. Hirsch.
11       MR. FOYE: He would be the resident agent in
12 Massachusetts.
13       THE COURT: Right. Why wouldn't you serve him
14 in Massachusetts? A Massachusetts case, why did you
15 use the Florida Sheriff?
16       MR. FOYE: Because Dr. Lamensdorf as Chairman
17 of the Board of ZHL and as the person to whom the
18 defense was being tendered, we wanted to ensure that
19 Dr. Lamensdorf had notice. The validity of that service
20 hasn't been challenged in a year and a half in the state
21 court, I don't believe.
22       THE COURT: It's not a matter of validity.
23 It's a question of -- it's a little bit like Pogo, like
24 seeing the enemy and he is us. We have John Hirsch
25 bringing an action against ZHL. John Hirsch is the

Page 16

1 registered agent in Massachusetts according to the
2 documents that you've just provided me with. So, you're
3 suing yourself.
4       MR. FOYE: Mr. Hirsch is suing the corporation
5 of which he is a witness or --
6       THE COURT: So this is a derivative action?
7       MR. FOYE: This is not a derivative action,
8 Your Honor. This is one corporation that Mr. Hirsch
9 owns a 49 or 51 percent of suing another corporation
10 that Mr. Hirsch at that time owned a third of.
11       THE COURT: And was the registered agent for?
12       MR. FOYE: Yes, Your Honor. Mr. Hirsch and
13 Mr. Zolla, I might add, Your Honor, perhaps could have
14 accomplished the goals that the lawsuit seeks, which is
15 a declaration that ZHL breached its management contract
16 with Ophnet as a result of Dr. Lamensdorf's actions just
17 by the corporate equivalent of brute force. They have a
18 shareholder's meeting. They agree that Dr. Lamensdorf
19 breached the agreement. They agree that ZHL breached
20 the agreement. And they then cause ZHL to pay Ophnet
21 its damages. They did not want to do that. They wanted
22 to do this through judicial process.
23       THE COURT: But the most remarkable judicial
24 process and the most remarkable attitudes toward
25 judicial process that I've seen in some time with this

Page 17

1 kind of squalling, nibbling at each other's ankles
2 evident in your joint and -- may I say -- several
3 statement, including the whining about argument.
4 Someone has to give up at some point. But there
5 shouldn't be argument. You ought to know better. They
6 ought to know better than to go into this remarkable
7 separate joint statement that really seems to be
8 directed to a sand box as a form of a judicial
9 proceeding.
10       Now, the odd aspect of this is I don't see any
11 reason to permit this case to be removed in the fashion
12 that it was removed. It appears that this is a
13 corporate entity that's principally doing business, to
14 the degree that it does business in Florida, and it
15 ought to be back in the state court as a result. That's
16 where this thing should be resolved.
17       MR. TAAFFE: May I state our position on that,
18 Your Honor?
19       THE COURT: Sure, because you know that I will
20 be entertaining attorney's fees here.
21       MR. TAAFFE: I understand that, Your Honor.
22       THE COURT: And you know that I am astonished
23 that you would forum shop for another Judge of this
24 court having been rebuffed three years ago. So, yes,
25 I'd like to hear it if you've got anything more to say

Page 18

1 than was submitted in your papers.
2       MR. TAAFFE: First of all, Your Honor, I'm not
3 aware of us having forum shopped. We filed the action
4 here and we were assigned a Judge. I was not aware --
5       THE COURT: Look, anybody with half a brain
6 goes into the Clerk's Office and says, "Judge Lindsay
7 ruled on this before." Whether it falls within the
8 relatedness rule or not, it is worse than wrong. It's
9 stupid to bring it to some other Judge in the hope that
10 we'll just pretend that Judge Lindsay isn't two floors
11 up.
12       MR. TAAFFE: And that was clearly my mistake
13 or local counsel's mistake. I apologize. That was not
14 the intent. It clearly was not the intent.
15       MR. MILLER: Your Honor, if I could just --
16 the civil action sheet for, I believe, the Ophnet case,
17 does list the prior case before Judge Lindsay as a
18 related case. I'm fairly sure that that is the case.
19       THE COURT: Okay. It lists me and Judge
20 Lindsay here. But didn't you think you should go back
21 to Judge Lindsay since he had ruled on the merits of
22 this?
23       MR. MILLER: Your Honor --
24       THE COURT: Did it occur to you that this was
25 duplicative, that it was in a sense -- a very real sense

HIRSCH V LAMENSDORF>

Page 19

1  -- an invitation to me to decide that Judge Lindsay had
2  gotten it all wrong when he remanded?
3        MR. TAAFFE: Your Honor, if I may respond
4  since -- he did the filing, but the merits are on my
5  responsibility.
6        On the merits in this, Your Honor, the reason
7  we believe the issue is different than -- and I don't
8  know why it's not before Judge Lindsay. I have no idea
9  why it wasn't. We didn't know if she or he -- excuse me
10 -- was still sitting or what the problem was. We didn't
11 ask for you. We didn't ask for anyone. It just got
12 assigned randomly, I believe. I don't know why. I'm
13 not familiar with the way it gets assigned.
14       THE COURT: It's pretty easy to see. Our
15 relatedness rule says after two years, it's no longer
16 related if you do it on this basis. But that's, as I
17 said, worse than wrong. It's stupid.
18       MR. TAAFFE: We should have brought a motion
19 asking for it to be specifically assigned to Judge
20 Lindsay.
21       THE COURT: Well -- and brought to his
22 attention.
23       MR. TAAFFE: You're absolutely right, Your
24 Honor.
25       THE COURT: It's foolish.

Page 20

1        MR. TAAFFE: But it's a different issue now
2  than it was before him in that, number one, when the
3  case was filed and Ophnet sued ZHL, they clearly joined
4  ZHL in their -- it was actually their second amended
5  complaint to get it remanded back to state court.
6        THE COURT: And he did it?
7        MR. TAAFFE: Right. And guess what? You know
8  why he hasn't joined -- do you know why he didn't amend
9  in that action in state court? Because it would be ZHL
10 represented by the same firm suing ZHL represented by
11 the same firm. He has a conflict, a clear conflict.
12 He's corporate counsel for ZHL. The firm is corporate
13 counsel for ZHL. He sues ZHL and then he files a
14 separate cause of action.
15       THE COURT: So, why isn't that a matter for
16 the state court? You don't get to remove because there
17 is a conflict of interest.
18       MR. TAAFFE: Because what we found out, Your
19 Honor, is that when they filed a separate lawsuit,
20 that's when I said -- and I'm going to be honest, Your
21 Honor -- that we needed a Federal Judge or a Magistrate
22 to deal with this. Obviously, if a state court did not
23 resolve the issue when they filed a separate lawsuit,
24 sat on it, didn't file it or didn't serve it, didn't
25 tell us anything about it --

Page 21

1        THE COURT: Don't give me the stuff about the
2  Massachusetts State Courts not being competent to handle
3  this sort of thing.
4        MR. TAAFFE: I did not say they were
5  incompetent, Your Honor. I would never say that.
6        THE COURT: They are not, and particularly the
7  Essex sessions.
8        MR. TAAFFE: Your Honor, the issue is
9  different now. They have now in this situation shown
10 that they have no intent on proceeding against ZHL.
11 They have taken -- they didn't do any paper discovery to
12 ZHL.
13       THE COURT: So what?
14       MR. TAAFFE: They didn't depose anybody with
15 ZHL.
16       THE COURT: So what?
17       MR. TAAFFE: They did not move for --
18       THE COURT: ZHL is going to be better off.
19 Now, who should represent ZHL here? Who is ZHL? Is it
20 your client?
21       MR. TAAFFE: No. We're not -- they're
22 unrepresented in this case right now. Nobody represents
23 them.
24       THE COURT: Who would represent ZHL?
25       MR. TAAFFE: I would assume their corporate

Page 22

1  counsel, but they are not. And they did not --
2        THE COURT: Who would be able to make the
3  determinations in this case with respect to ZHL?
4        MR. TAAFFE: The majority shareholders by John
5  Hirsch.
6        THE COURT: Okay. So now we're talking about
7  the cramdown that he was talking about. If they are in
8  a position to make those kinds of determinations --
9        MR. TAAFFE: Correct.
10       THE COURT: -- we don't even need litigation
11 about it or we don't have litigation until after this
12 transaction is completed.
13       MR. TAAFFE: You're absolutely correct. In an
14 affidavit or a letter submitted by Hirsch, he says they
15 have no meritorious defense. If that's the case, if he
16 believes ZHL owes money to their other corporation,
17 Ophnet, he should pay them that and then let the Court
18 decide whether that was appropriate or not at a later
19 date. And it's only money. That's what we're here
20 about. It can be undone if it was inappropriate. They
21 haven't done that. They have brought a cause of action.
22       THE COURT: But so did you.
23       MR. TAAFFE: Excuse me?
24       THE COURT: You brought a declaratory judgment
25 action in Florida.

JULY 12, 2005>

Page 23

1  MR. TAAFFE: Right. The reason we brought the
2  declaratory judgment action in Florida is it is our
3  belief the Massachusetts court does not have in rem
4  jurisdiction over the property in Florida. They cannot
5  stop the sale. They cannot take the proceeds and hold
6  it in trust.
7  THE COURT: In rem?
8  MR. TAAFFE: Yes. The property that was
9  located in Florida, the Florida court can effect the
10  title to it. In other words, what we're asking the
11  Court to do is allow the sale; if the sale goes forward,
12  take the funds and hold it in constructive trust until
13  the state court in Massachusetts determines what to do
14  with it.
15  THE COURT: And why can't a Massachusetts
16  court take constructive trust funds? We're not talking
17  about title. We're talking about money. As you said,
18  it is only money. And a Massachusetts court can do
19  that, too.
20  MR. TAAFFE: Because what will happen -- and
21  we're fearful it might happen in this case -- is that
22  ZHL will sell its interest through a third party
23  unbeknownst to us. I mean, they didn't even send us
24  copies of the letter of intent when they got letters of
25  intent to purchase it. They haven't involved us in

Page 24

1  negotiation. They haven't had a shareholder's meeting
2  about the sale of the property, nothing. Okay. We're
3  afraid that they will sell it in the middle of the
4  night. We would not know about it. They would take the
5  funds and put it outside the country or disburse it to
6  entities that aren't part of this litigation.
7  THE COURT: Okay. So, litigate it in
8  Massachusetts where you've been litigating it before.
9  MR. TAAFFE: I still do not believe that a
10  Massachusetts court has in rem jurisdiction over a piece
11  of property in Florida.
12  THE COURT: A piece of property that's reduced
13  to dollars?
14  MR. TAAFFE: It's not reduced to dollars yet,
15  Your Honor.
16  THE COURT: Well, but your concern is when it
17  -- you're not expecting them to cut this portion of
18  Sarasota off from the state of Florida and float it out
19  to the Bahamas, are you? You are concerned about the
20  money involved.
21  MR. TAAFFE: Right.
22  THE COURT: And money is something that they
23  can control through their control of the corporation.
24  MR. TAAFFE: The other part of it is the point
25  of receiver to force the sale if they refuse to go

Page 25

1  forward with the sale so we get it to a money dollar
2  amount. So the state court wouldn't have the ability to
3  force a sale on a piece of property in the State of
4  Florida.
5  THE COURT: If it has personal jurisdiction
6  over the principals involved, it couldn't do that and
7  you think a Federal Court could?
8  MR. TAAFFE: The owner of the property, ZHL,
9  the owner of that --
10  THE COURT: A Massachusetts court --
11  MR. TAAFFE: And unrepresented in
12  Massachusetts, Your Honor. Nobody represents them.
13  THE COURT: You say they're unrepresented in
14  Massachusetts.
15  MR. TAAFFE: Correct, in that state action.
16  THE COURT: Okay. And you say it's because
17  they have a conflict and you may well be right about
18  that. But that's fairly easy to deal with. And it's
19  easy to deal with by minority shareholders because
20  Massachusetts has a very hospitable law to protect the
21  rights of minority shareholders being closely held
22  corporations. All of that can be done in Massachusetts.
23  But this wheeling and dealing is just frankly, except
24  that people seem to enjoy this sort of thing --
25  MR. TAAFFE: Your Honor, if you step back and

Page 26

1  you look at this and you say there's a lot of trees
2  being killed or a lot of time wasted, a lot of funds
3  being spent on positioning and so forth, that isn't
4  getting us closer to trying the case and finding out
5  who's right or wrong here and what to do about the asset
6  in question.
7  THE COURT: Well, but the other case was
8  overstating it to say that it had a firm trial date.
9  But the case had been put on a trial list by Judge Welsh
10  or at least over his signature.
11  MR. TAAFFE: Yes. And there had been an order
12  entered on February 11th compelling certain documents to
13  us and then thereafter set on a trial date on March 8th.
14  Those documents have still not fully been complied with.
15  THE COURT: Well, don't you think that the
16  Superior Court motion judge in Essex County is going to
17  be pleased to deal with that?
18  MR. TAAFFE: We already have a court order. I
19  don't know -- other than asking for sanctions -- what
20  else we can do.
21  THE COURT: Well, what do you think I'm going
22  to do? I mean, the idea is that a Federal Judge sitting
23  in Massachusetts in this kind of case is different from
24  a State Court Judge sitting in Massachusetts and it is
25  not the case. You don't get anything more from me than

8 (Pages 23 to 26)

Page 27

1  you get from a Massachusetts State Judge.
2      MR. TAAFFE:  And Your Honor, you're probably
3  absolutely right.  But the impression of other state
4  clients -- and it's been repeated to them by the
5  principals in this case -- is that they are going to get
6  a home boy in a local small town court in a state court
7  in Massachusetts.  That's been told to them by the
8  principals in this case.
9      THE COURT:  We're not talking about Niceville,
10 Florida here.  We're talking --
11     MR. TAAFFE:  You're right.
12     THE COURT:  We're talking about Newburyport.
13     MR. TAAFFE:  Right.  The same court that when
14 they filed the action and moved to amend it after they
15 had served it and having --
16     THE COURT:  It happens all the time.  I would
17 have done the same thing.  First, I would have made fun
18 of them before not filing on time, which I think is bush
19 league.
20     MR. TAAFFE:  Right.
21     THE COURT:  On the other hand, the purpose of
22 all of this is to get to the merits.
23     MR. TAAFFE:  Correct.
24     THE COURT:  And, so, they belatedly come in.
25 I would let them have another chance.  That's what he

Page 28

1  did.  That's no big surprise.  It's probably what I
2  would -- not probably.  It's what I would do under these
3  circumstances.  We take 120 days, not 90 days to do it.
4  But I simply do not understand now what clearly to me is
5  a case that belongs in state court because of the lack
6  of real diversity among the main parties, who are
7  properly parties in this case -- your argument is they
8  ought not to be represented.
9      MR. TAAFFE:  No.  The argument, Your Honor,
10 is ZHL -- if you look at the original pleadings in this
11 case, ZHL, Inc. says in more than three or four places
12 that they are a Massachusetts corporation with their
13 principal place of business in Massachusetts.
14     THE COURT:  They do it in a variety of
15 different ways, but the clear --
16     MR. TAAFFE:  And not just --
17     THE COURT:  Just a moment.
18     MR. TAAFFE:  I'm sorry.
19     THE COURT:  Clearly, the documentation -- and
20 the Secretary of State identifies this as a business
21 that does principally work -- I forget the language of
22 it --
23     MR. FOYE:  They wholly transact business.
24     THE COURT:  Right.
25     MR. TAAFFE:  Then why didn't they represent

Page 29

1  that in the pleadings when they asked to remand this
2  case?
3      THE COURT:  I don't know.  You know, frankly --
4      MR. TAAFFE:  I mean, that's the point that
5  Judge Lindsay remanded it on the diversity back to state
6  court on the representation that it was the principal
7  place of business was Massachusetts.
8      THE COURT:  Right, and this is wholly
9  consistent with it.  The filings that they make with the
10 Commonwealth of Massachusetts -- and that's what's going
11 on.  I mean, it may or may not be on life support and
12 with these part-time hospice workers getting paid by the
13 plaintiffs.  But in point of fact, that's his principal
14 place of business if it has any place of business at
15 all.
16     MR. TAAFFE:  Well, that's interesting.  Last
17 week when they came to court in state court in Florida,
18 they didn't say that.  They said just the opposite, that
19 the principal place of business is in Massachusetts.
20 They filed documents that showed principal place of
21 business was in Massachusetts.
22     THE COURT:  Where is that?
23     MR. TAAFFE:  It's in their affidavit of Hirsch
24 that was filed in that case.
25     THE COURT:  Where is that?  I don't have it.

Page 30

1      MR. TAAFFE:  I understand that.  I understand
2  it's not before you.  But that's the kind of thing --
3  you know, when they want it to be a state court case in
4  Massachusetts, they say its principal place of business
5  is in Massachusetts.  When they want it to be Florida or
6  they want diversity, they say it's in Florida.
7      THE COURT:  But what happened in the state
8  court is he stayed it --
9      MR. TAAFFE:  Correct.
10     THE COURT:  -- which, it seems to me, to be
11 the imminently intelligent thing to do.
12     MR. TAAFFE:  Correct.  There's a lis pendens
13 filed.  It accomplishes our purpose of protecting the
14 sale of the property without the court knowing about
15 it.  That was our primary purpose.  In other words, we
16 didn't want the property being sold in Florida without
17 a court --
18     THE COURT:  And you still have a lis pendens,
19 right?
20     MR. TAAFFE:  Correct.  So they can't do
21 anything with the property until the state court -- so
22 we're okay.  We're right there.  I mean, I'm okay with
23 that decision.  Because it accomplishes that in the
24 middle of the night, they can't sell this property, do a
25 quick claim deed, and the state court in Massachusetts

Page 31

1  knows nothing about it.
2      THE COURT: Okay. So you're protected --
3      MR. TAAFFE: Right.
4      THE COURT: -- to the degree that you need to
5  be protected by that?
6      MR. TAAFFE: Correct.
7      THE COURT: I'm not sure you do. But to the
8  degree that you need something like that, you've got it.
9      MR. TAAFFE: And they can reopen it if they
10  want to sell or anything else. Correct.
11      THE COURT: Right. So you haven't had a
12  dismissal of the case?
13      MR. TAAFFE: No.
14      THE COURT: And now we're talking about who
15  is it who's supposed to be dealing with this in
16  Massachusetts.
17      MR. TAAFFE: Yes, Your Honor. And to be
18  perfectly honest with you, to have -- and my clients do
19  and I have much more confidence and I don't say this
20  with any disrespect to the state courts -- to have a
21  Federal Court with the time of a Magistrate involved in
22  dealing with these issues --
23      THE COURT: But you don't get it until you
24  meet the jurisdictional requirements. And this has had
25  -- you have had one bite of the apple on that.

Page 32

1      MR. TAAFFE: Yes, Your Honor.
2      THE COURT: That was the one that was tendered
3  to you by Judge Lindsay.
4      MR. TAAFFE: Correct.
5      THE COURT: And you were unsuccessful.
6      It seems to me that all of this stuff ought
7  properly to be dealt with by the Court that has had
8  jurisdiction over it for some time. To the degree that
9  you have got concerns about the failure to comply with
10  an order of the Court, that Court, although if I
11  properly had jurisdiction, I could deal with it. But
12  it's that court. And you ask what that court can do and
13  hold them in contempt and really put the fire to them.
14  But I deal with a very specific sort of question. And
15  the very specific sort of question for me is do we have
16  properly asserted federal jurisdiction? And I don't
17  believe we do in this case because I believe that ZHL
18  has a principal place of business as its principal
19  place of business in Florida. And various
20  characterizations, to the contrary notwithstanding,
21  including characterizations made by their present
22  counsel, doesn't overcome that.
23      MR. TAAFFE: I guess that begs the question,
24  Your Honor, then why to begin with did they not file
25  this action in Florida?

Page 33

1      THE COURT: I'm not sure that -- I'm not
2  sure that -- well, I'm pretty sure I do understand
3  why they didn't file it in Florida. But this is all
4  gamesmanship. I can assure you, I think, that there is
5  a fair hearing to be had in the Massachusetts State
6  Courts. It is a very sophisticated state court system.
7  And I'm simply unfamiliar with real as opposed to
8  anxiety ridden concerns about the fairness of the
9  Massachusetts state courts. All of these issues can be
10  pressed there.
11      MR. TAAFFE: I understand that, Your Honor.
12  But I think in the underpinnings of why we have a
13  diversity rule in the Federal Courts is that there
14  would be --
15      THE COURT: In 1789 that was the case and
16  maybe for some time and maybe even in pockets of this
17  country. I didn't mean to in any way demean Niceville.
18  Having litigated in the Northern District of Florida
19  myself as a Massachusetts lawyer, I found that I got a
20  fair hearing.
21      MR. TAAFFE: Were you before Judge Turner?
22      THE COURT: I was before Judge Vincent. So
23  it's a Federal Court, I suppose, that I had to say --
24      MR. TAAFFE: He represented Gideon, that case,
25  an interesting guy.

Page 34

1      THE COURT: Right. But the short of it is
2  this case belongs there.
3      Now, I'm going to remand both of the cases to
4  the Essex County Superior Court, both of the cases
5  pending to the Essex County Superior Court. I will
6  consider as more or less a test of prudence the question
7  of whether or not to seek attorney's fees here and
8  support them. I say a question of prudence because you
9  may get just what all of this dust-stirring deserves in
10  terms of a fair fee. But you're entitled to ask.
11      MR. TAAFFE: Both sides, Your Honor?
12      THE COURT: No. It's been remanded.
13      MR. TAAFFE: Will you consolidate before
14  remanding?
15      THE COURT: No. I'm not going to take any
16  action on this in any way because I do not have
17  jurisdiction as far as I'm concerned over this. I'm
18  simply going to remand. The parties can take such steps
19  as they want. In order to make a proper motion for
20  attorney's fees here, it has to be supported by time
21  charges and so on. And, so, I'm denying the motion for
22  attorney's fees. It's bare bones right now. If you
23  want to file something or any of the parties want to
24  file something in the backwash of this case, then
25  you'll do it in 10 days.

HIRSCH V LAMENSDORF>

Page 35

1    MR. TAAFFE:  Would Your Honor entertain
2  argument of why they should not be able to work out
3  something?
4    THE COURT:  Oh, absolutely.
5    MR. TAAFFE:  Thank you.  In light of the
6  pleading history in this case.
7    THE COURT:  Pardon me?
8    MR. TAAFFE:  In light of the pleading history
9  on both sides in this case.
10    THE COURT:  Yes.  But they are entitled to
11  ask.
12    MR. TAAFFE:  Okay.
13    THE COURT:  If they did.  I'm not going to
14  give it to them on the basis of simply asking.  They're
15  going to have to support it.  And I will exercise my
16  judgment about whether or not all of this was worth what
17  I've been exposed to.
18    MR. TAAFFE:  Thank you for your time, Your
19  Honor.  I appreciate it.
20    THE COURT:  Mr. Foye?
21    MR. FOYE:  Nothing more, Your Honor.
22    THE COURT:  All right.  So this will go back.
23  And let me just suggest that you've pressed the case in
24  that fashion --
25    MR. TAAFFE:  I will, Your Honor.

Page 36

1    THE COURT:  -- and the Essex Superior Court
2  which, as I said, I expect to be fully responsive to any
3  well-founded complaints.
4    MR. TAAFFE:  I probably will get the
5  transcript transcribed for my clients regarding your
6  confidence in the state court and maybe that will help
7  their mindset.
8    THE COURT:  Well, I hope so.  In any event --
9    MR. FOYE:  I would ask, Your Honor, a question
10  which could potentially save my client some attorney's
11  fees and the process of preparing a fee request.  Your
12  Honor has undoubtedly crossed this bridge a few times.
13  Is it the Court's general -- is it the Court's prior
14  findings or rulings that 1447(c) encompasses all of the
15  fees incurred while the case was in the Federal Court or
16  rather those fees specifically intended and actually
17  extended in obtaining a remand?
18    THE COURT:  As I said, prudence was one of the
19  touchstones here.  The prudence of a hog at the trough
20  is a little bit different from prudence of someone who
21  gets what they want and would like to simply leave
22  nothing but their smile.  Make whatever request you
23  make.  I will give you what you're entitled to.  Some
24  people think that there are times when you don't ask for
25  something because then you learn what the Judge thinks

Page 37

1  you're entitled to.  But you'll make own judgment about
2  it and I will rule on it.  I think I've been fairly
3  clear on what I think of the value of the legal services
4  generally that have been deposited in the record of this
5  court.  And it may occur to you that I don't think very
6  highly of them.  But you'll certainly make your own
7  judgments about what you want to do.  But if I ever see
8  something like this again and it is properly within my
9  jurisdiction, let me tell you I will not take a laissez-
10  faire approach.  This simply is unacceptable conduct,
11  litigation conduct by parties who are members of the
12  Bar.  And it ought to stop now to get to the bottom of
13  this and promptly in an appropriate jurisdiction rather
14  than wasting your time, as I said, proliferating cases,
15  including the stealth filing of a ripe, but not too ripe
16  declaratory judgment action.  It just makes me want to
17  think about what sanctions I might impose if it were my
18  case.  But it's not.
19    So, you have got ten days to decide whether
20  it's the prudent thing to do and, if so, how much to ask
21  for and what support.  Okay.
22    MR. FOYE:  Thank you, Your Honor.
23    MR. TAAFFE:  Thank you, Your Honor.
24    MR. MILLER:  Thank you, Your Honor.
25    THE COURT:  Thank you.  We'll be in recess.

Page 38

1    RECESSED AT 3:55 P.M.
2
3    C E R T I F I C A T E
4
5    I, PAMELA R. OWENS, Official Court Reporter,
6  U. S. District Court, do hereby certify that the
7  foregoing is a true and correct transcription of the
8  proceedings taken down by me in machine shorthand and
9  transcribed by same.

11 (Pages 35 to 38)

| A | | | | |
|---|---|---|---|---|

**A**

**Abel** 1:22 3:11
**ability** 25:2
**able** 22:2 35:2
**absolutely** 9:11 19:23 22:13 27:3 35:4
**accepts** 14:15
**accomplished** 16:14
**accomplishes** 30:13,23
**action** 3:6 12:23 16:16 4:20 8:14,20 10:21 11:6,21,22 12:5,17 15:25 16:6,7 18:3,16 20:9,14 22:21,25 23:2 25:15 27:14 32:25 34:16 37:16
**actions** 3:6 12:23 16:16
**active** 13:5
**activity** 9:15 13:10
**add** 16:13
**additional** 15:6
**admission** 3:13
**admitted** 3:12
**adverse** 14:2
**affidavit** 22:14 29:23
**afraid** 24:3
**Africa** 5:17
**agent** 14:21,23,25 15:1 15:3,5,11 16:1,11
**ago** 13:15 17:24
**agree** 3:20 10:17 12:23 16:18,19
**agreed** 10:16
**agreement** 16:19,20
**ahead** 7:19
**allow** 23:11
**amend** 10:3,6 12:8 20:8 27:14
**amended** 12:10 20:4
**amending** 4:19
**amount** 25:2
**ancillary** 9:21
**ankles** 17:1
**answer** 3:16
**anticipation** 8:22
**anxiety** 33:8
**anybody** 18:5 21:14
**apologize** 18:13
**apparently** 9:14
**APPEARANCES** 1:19 2:1
**appears** 7:20 17:12
**apple** 31:25
**appreciate** 35:19
**approach** 37:10
**appropriate** 22:18 37:13
**approves** 11:15

**April** 6:18
**argument** 17:3,5 28:7,9 35:2
**asked** 29:1
**asking** 19:19 23:10 26:19 35:14
**aspect** 17:10
**asserted** 32:16
**asset** 26:5
**assigned** 18:4 19:12,13 19:19
**assistance** 3:22
**assume** 4:6 9:13 11:24 13:17,18 21:25
**assure** 33:4
**astonished** 17:22
**attention** 19:22
**attitudes** 16:24
**attorney's** 17:20 34:7 34:20,22 36:10
**Avenue** 1:23
**avocation** 9:15
**aware** 18:3,4

**B**

**B** 10:25
**back** 3:25 4:1,4,12,17 7:24 17:15 18:20 20:5 25:25 29:5 35:22
**backwash** 34:24
**Bahamas** 24:19
**Ban** 1:22 3:11
**Bar** 37:12
**bare** 34:22
**based** 6:12 13:3
**basis** 11:3 19:16 35:14
**Bayou** 1:13 3:10
**began** 6:4
**begs** 32:23
**behalf** 1:21,24 2:3
**belatedly** 27:24
**belief** 8:15 23:3
**believe** 6:18 8:1 10:11 10:23 11:1 12:7 13:15 15:21 18:16 19:7,12 24:9 32:17,17
**believes** 22:16
**belongs** 28:5 34:2
**beneath** 8:3
**better** 17:5,6 21:18
**big** 28:1
**bind** 14:11,11,13
**bit** 15:23 36:20
**bite** 31:25
**Board** 15:17
**bones** 34:22
**booted** 7:23

**Boston** 1:20 2:2,12,21
**bottom** 37:12
**Boulevard** 2:2
**box** 1:23 17:8
**boy** 27:6
**brain** 18:5
**breached** 16:15,19,19
**bridge** 36:12
**briefly** 9:24
**bring** 10:14 11:23 18:9
**bringing** 15:25
**brought** 9:9 11:20,21 19:18,21 22:21,24 23:1
**brute** 16:17
**bush** 27:18
**business** 13:19 15:3 17:13,14 28:13,20,23 29:7,14,14,19,21 30:4 32:18,19
**busy** 11:1

**C**

**C** 38:3,3
**case** 3:13,23,24 4:4,22 4:23,25 5:3,6,7,8,16 7:16,21 10:7 12:7 13:2,4 14:18 15:14 17:11 18:16,17,18,18 20:3 21:22 22:3,15 23:21 26:4,7,9,23,25 27:5,8 28:5,7,11 29:2 29:24 30:3 31:12 32:17 33:15,24 34:2 34:24 35:6,9,23 36:15 37:18
**cases** 3:18,19 12:13 13:5 34:3,4 37:14
**cause** 16:20 20:14 22:21
**CA-05-10902-DPW** 1:5 3:1
**CA-05-10970-DPW** 1:11 3:1
**cease** 9:17
**center** 10:14,16,17 11:13,14 12:21,22
**certain** 8:25 26:12
**certainly** 10:12 11:16 13:19 37:6
**certify** 38:6
**Chairman** 15:16
**challenged** 15:20
**chance** 27:25
**characterization** 7:16
**characterizations** 32:20,21
**charges** 34:21

**choose** 13:18
**circumstances** 28:3
**civil** 18:16
**claim** 30:25
**clear** 20:11 28:15 37:3
**clearly** 18:12,14 20:3 28:4,19
**CLERK** 3:3
**clerks** 8:5
**Clerk's** 18:6
**client** 9:12 21:20 36:10
**clients** 5:11 8:16 9:9,23 11:13 13:19,17 27:4 31:18 36:5
**closely** 25:21
**closer** 26:4
**Collier** 1:23
**come** 3:25 4:1 7:24 8:16 11:10 27:24
**coming** 10:9
**Commonwealth** 29:10
**compelling** 26:12
**competent** 21:2
**complaint** 10:4,7 12:9 12:11 20:5
**complaints** 36:3
**completed** 22:12
**complied** 26:14
**comply** 32:9
**Computer-Aided** 2:23
**concern** 11:19 24:16
**concerned** 5:18 6:24 24:19 34:17
**concerns** 8:21 32:9 33:8
**conduct** 3:17 37:10,11
**confidence** 31:19 36:6
**conflict** 20:11,11,17 25:17
**consider** 34:6
**consistent** 29:9
**consolidate** 34:13
**consolidated** 12:16
**constructive** 23:12,16
**contempt** 32:13
**CONTINUED** 2:1
**contract** 16:15
**contrary** 32:20
**control** 9:17 24:23,23
**conversations** 6:21
**copies** 23:24
**corporate** 16:17 17:13 20:12,12 21:25
**corporation** 16:4,8,9 22:16 24:23 28:12
**corporations** 25:22
**correct** 5:5 13:25 22:9 22:13 25:15 27:23

**30:9,12,20 31:6,10 32:4 38:7
**counsel** 3:3 20:12,13 22:1 32:22
**counsel's** 18:13
**countenanced** 9:13
**country** 5:16 24:5 33:17
**County** 26:16 34:4,5
**court** 1:1,17 2:20 3:15 3:25 4:1,1,6,7,8,9,13 4:15,24 5:1,3,20,22 6:2,6,8,9,13,14,22 7:5 7:7,10,17,23 8:12,19 8:21 9:3,6,12 10:3,6 10:19,23 11:2,4,8,11 11:16,18 12:1,5,8 13:7,24 14:1,5,9,15 14:18,21 15:5,8,10,13 15:21,22 16:6,11,23 17:15,19,22,24 18:5 18:19,24 19:14,21,25 20:5,6,9,15,16,22 21:1,6,13,16,18,24 22:2,6,10,17,22,24 23:3,7,9,11,13,15,16 23:18 24:7,10,12,16 24:22 25:2,5,7,10,10 25:13,16 26:7,15,16 26:18,21,24 27:6,6,9 27:12,13,16,21,24 28:5,14,17,19,24 29:3 29:6,8,17,17,22,25 30:3,7,8,10,14,17,18 30:21,25 31:2,4,7,11 31:14,21,23 32:2,5,7 32:10,10,12,12 33:1,6 33:15,22,23 34:1,4,5 34:12,15 35:4,7,10,13 35:20,22 36:1,1,6,8 36:15,18 37:5,25 38:5 38:6
**courthouse** 2:11,20,21 12:22
**Courtroom** 2:11
**courts** 21:2 31:20 33:6 33:9,13
**Court's** 3:22 36:13,13
**CPA** 14:24
**Cram** 1:10 5:17
**cramdown** 22:7
**created** 4:21
**crossed** 36:12
**currently** 14:24
**cut** 24:17

**D**

**damages** 16:21

Page 40

**date** 10:10 22:19 26:8
    26:13
**days** 6:5,15,16 28:3,3
    34:25 37:19
**deal** 6:19,21 8:2,16
    11:12,13,19 20:22
    25:18,19 26:17 32:11
    32:14
**dealing** 25:23 31:15,22
**dealt** 11:25 32:7
**dec** 4:20 11:6
**decide** 4:14 19:1 22:18
    37:19
**decided** 11:23
**decision** 30:23
**declaratory** 8:20
**declaration** 16:15
**declaratory** 3:14 8:13
    11:5,21,22 12:5,6
    22:24 23:2 37:16
**deed** 30:25
**default** 13:13,21,22
    14:1,14
**defendant** 14:18
**defendants** 1:7,14,24
    2:3 3:8
**defense** 13:15,17,18
    15:18 22:15
**defer** 7:1
**degree** 9:17 17:14 31:4
    31:8 32:8
**delayed** 10:10
**demean** 33:17
**denying** 34:21
**depose** 21:14
**deposited** 37:4
**depositions** 5:11 8:3
**derivative** 16:6,7
**deserves** 34:9
**determinations** 22:3,8
**determines** 23:13
**different** 9:6 19:7 20:1
    21:9 26:23 28:15
    36:20
**dignity** 8:3 12:24
**directed** 17:8
**disapproves** 11:15
**disburse** 24:5
**discovery** 4:5 10:11
    21:11
**discrete** 10:15
**dismissal** 31:12
**dismissed** 5:10
**disrespect** 31:20
**District** 1:1,2,17 2:20
    33:18 38:6
**diversity** 4:21 28:6
    29:5 30:6 33:13

**documentation** 28:19
**documents** 16:2 26:12
    26:14 29:20
**doing** 17:13
**dollar** 25:1
**dollars** 5:18 24:13,14
**DOUGLAS** 1:16
**Dr** 3:9 9:1 10:15 11:15
    13:16 14:7,10,11,19
    15:16,19 16:16,18
**dramatic** 8:6
**duplicative** 18:25
**dust-stirring** 34:9

———————
E
———————

**E** 2:2 38:3,3
**easy** 12:9 19:14 25:18
    25:19
**Edward** 1:20 3:5
**effect** 23:9
**either** 8:19
**embark** 9:10
**embarrassing** 3:18
**encompasses** 36:14
**enemy** 15:24
**enhance** 12:23
**enjoy** 9:14 25:24
**ensure** 15:18
**entered** 26:12
**entertain** 35:1
**entertaining** 17:20
**entities** 24:6
**entitled** 34:10 35:10
    36:23 37:1
**entity** 17:13
**equity** 8:21
**equivalent** 16:17
**ESQ** 1:20,22 2:2
**Essex** 10:24 21:7 26:16
    34:4,5 36:1
**event** 36:8
**evident** 17:2
**excuse** 19:9 22:23
**exercise** 9:17 35:15
**expect** 36:2
**expecting** 24:17
**expedited** 11:3 12:10
**exposed** 35:17
**extended** 36:17
**extent** 13:18

———————
F
———————

**F** 38:3
**fact** 9:2,14 12:12,16
    13:8 29:13
**failure** 32:9
**fair** 33:5,20 34:10
**faire** 37:10

**fairly** 18:18 25:18 37:2
**fairness** 33:8
**falls** 18:7
**familiar** 19:13
**far** 34:17
**fashion** 6:10,12 17:11
    35:24
**fearful** 23:21
**February** 4:4 26:12
**federal** 3:25 4:1 6:8
    20:21 25:7 26:22
    31:21 32:16 33:13,23
    36:15
**fee** 34:10 36:11
**feel** 8:8
**fees** 17:20 34:7,20,22
    36:11,15,16
**file** 6:22 7:18 20:24
    32:24 33:3 34:23,24
**filed** 3:13 4:19 5:1,3,6,7
    5:8,9,13 6:25 7:2,21
    7:22 8:13,23 12:14,17
    13:1 18:3 20:3,19,23
    27:14 29:20,24 30:13
**files** 20:13
**filing** 8:20 19:4 27:18
    37:15
**filings** 29:9
**find** 5:10
**finding** 11:14 26:4
**findings** 36:14
**fire** 32:13
**firm** 3:11 10:8,9 20:10
    20:11,12 26:8
**first** 6:25 7:2 8:22
    10:21 11:25 12:4
    13:1,8,21 18:2 27:17
**float** 24:18
**Floor** 1:20 2:11
**floors** 18:10
**Florida** 1:24 3:11 5:3,7
    5:13 6:8,25 7:1,9
    13:1,1,2,3 14:16,23
    15:2,15 17:14 22:25
    23:2,4,9,9 24:11,18
    25:4 27:10 29:17
    30:5,6,16 32:19,25
    33:3,18
**Foley** 2:2
**foolish** 19:25
**fools** 9:16
**force** 16:17 24:25 25:3
**foregoing** 38:7
**forget** 28:21
**form** 17:8
**forth** 26:3
**forum** 17:23 18:3
**forward** 10:20 12:20

**12:21 23:11 25:1
**found** 4:21 20:18 33:19
**four** 5:18 28:11
**Foye** 1:20 3:5,5 6:1,4
    6:11,16,24 7:6,8,15
    8:9,15,25 9:5,8,23
    10:5,8,22 11:6,9,12
    12:3,6,12 13:14,25
    14:3,6,10,16,19,23
    15:7,9,11,16 16:4,7
    16:12 28:23 35:20,21
    36:9 37:22
**frankly** 11:22 25:23
    29:3
**fruition** 8:16
**fully** 26:14 36:2
**fun** 27:17
**funds** 23:12,16 24:5
    26:2

———————
G
———————

**gamesmanship** 7:13
    33:4
**general** 36:13
**generally** 37:4
**getting** 10:9 26:4 29:12
**Gideon** 33:24
**give** 17:4 21:1 35:14
    36:23
**go** 5:15,24 10:19 12:19
    12:20 17:6 18:20
    24:25 35:22
**goals** 16:14
**goes** 18:6 23:11
**going** 4:24 5:14 7:3,11
    7:13 8:4 10:19,20
    11:25 12:3 20:20
    21:18 26:16,21 27:5
    29:10 34:3,15,18
    35:13,15
**Gordon** 1:23
**gotten** 19:2
**guess** 20:7 32:23
**guy** 33:25

———————
H
———————

**hac** 3:12,14
**half** 15:20 18:5
**hand** 27:21
**handle** 21:2
**hands** 9:18
**happen** 12:25 23:20,21
**happened** 5:7 30:7
**happens** 27:16
**head** 10:15
**hear** 11:3,4 17:25
**heard** 9:12 10:1
**hearing** 1:18 33:5,20

**held** 25:21
**help** 36:6
**highly** 37:6
**hired** 9:18
**Hirsch** 1:4,9 14:22,24
    15:10,24,25 16:4,8,10
    16:12 22:5,14 29:23
**history** 35:6,8
**Hoag** 2:2
**hog** 36:19
**hold** 23:5,12 32:13
**home** 27:6
**honest** 20:20 31:18
**Honor** 3:5,7,20,25 4:12
    4:16 5:21 6:1,5,12
    7:8 8:9 9:1,9,24
    10:10,23 11:7 12:3,7
    12:12 13:25 14:3,17
    17:21 18:2,15,23 19:3
    19:6,24 20:19,21 21:5
    21:8 24:15 25:12,25
    27:2 28:9 31:17 32:1
    32:24 33:11 34:11
    35:1,19,21,25 36:9,12
    37:22,23,24
**HONORABLE** 1:16
**Honor's** 7:15
**hope** 18:9 36:8
**hospice** 29:12
**hospitable** 25:20

———————
I
———————

**idea** 8:22 19:8 26:22
**identifies** 28:20
**identify** 3:3
**ignored** 4:5
**immediate** 12:1
**immense** 9:21
**imminently** 30:11
**impose** 37:17
**impression** 27:3
**improperly** 8:13
**inappropriate** 22:20
**including** 17:3 32:21
    37:15
**incompetent** 21:5
**Incorporated** 3:10
**incurred** 36:15
**indemnification** 14:8
**intelligent** 30:11
**intended** 36:16
**intent** 6:6,17,18 8:17
    18:14,14 21:10 23:24
    23:25
**interest** 20:17 23:22
**interesting** 29:16 33:25
**invitation** 19:1

involved 3:22 23:25
    24:20 25:6 31:21
issue 10:14 14:6 19:7
    20:1,23 21:8
issues 31:22 33:9

_____ J _____

Jennkay 1:13 3:10
John 1:4,9 2:20 15:10
    15:24,25 22:4
joined 20:3,8
joint 8:6 17:2,7
Joseph 2:20
judge 1:17 4:2,4,6,9
    7:24 12:15 13:2,4
    17:23 18:4,6,9,10,17
    18:19,21 19:1,8,19
    20:21 26:9,16,22,24
    27:1 29:5 32:3 33:21
    33:22 36:25
Judges 10:24 11:1
judgment 3:14 8:14,20
    11:5,21,22 12:5,6
    13:22,22 14:1,4,10
    22:24 23:2 35:16
    37:1,16
judgments 37:7
judicial 10:21 16:22,23
    16:25 17:8
JULY 1:18 3:2
jump 7:19
jurisdiction 5:19 23:4
    24:10 25:5 32:8,11,16
    34:17 37:9,13
jurisdictional 31:24

_____ K _____

Kathy 1:7,13 3:9
Kenneth 1:9 5:17
killed 26:2
kind 8:4 9:15 17:1
    26:23 30:2
kinds 22:8
knew 6:7
know 3:16 4:15,16 5:6
    5:8 8:5 14:24 17:5,6
    17:19,22 19:8,9,12
    20:7,8 24:4 26:19
    29:3,3 30:3
knowing 30:14
known 9:2
knows 31:1

_____ L _____

lack 28:5
laissez 37:9
Lamensdorf 1:6,7,12
    1:13 3:8,9 9:2 10:15

11:15 13:16 14:7,11
    14:11,13,19 15:16,19
    16:18
Lamensdorfs 4:18,20
    6:7
Lamensdorf's 3:9
    16:16
language 28:21
law 6:13,25 8:5 13:3
    25:20
lawsuit 6:22 7:9,22,23
    8:23 9:8,10 16:14
    20:19,23
lawsuits 7:3,11
lawyer 33:19
lawyers 8:4 9:15,16
league 27:19
learn 36:25
leave 5:18 36:21
legal 37:3
lest 9:17
letter 6:5,17,18 8:17
    22:14 23:24
letters 23:24
let's 5:24
life 7:12,18 29:11
light 35:5,8
Lindsay 4:2,4,6,10 18:6
    18:10,17,20,21 19:1,8
    19:20 29:5 32:3
line 7:20 8:23
lis 30:12,18
list 18:17 26:9
lists 18:19
litigate 14:12 24:7
litigated 13:5 33:18
litigating 24:8
litigation 3:17 4:10
    9:21 22:10,11 24:6
    37:11
little 15:23 36:20
LLP 1:20 2:2
local 18:13 27:6
located 23:9
long 6:17 13:15
longer 19:15
look 7:17 18:5 26:1
    28:10
lot 26:1,2,2

_____ M _____

machine 38:8
Magistrate 3:22 20:21
    31:21
main 28:6
majority 22:4
management 9:13
    16:15

manner 14:12
March 26:13
Massachsuetts 29:21
Massachusetts 1:2,21
    2:2,12,21 5:8 7:1,2
    10:1 15:12,14,14 16:1
    21:2 23:3,13,15,18
    24:8,10 25:10,12,14
    25:20,22 26:23,24
    27:1,7 28:12,13 29:7
    29:10,19 30:4,5,25
    31:16 33:5,9,19
materials 15:6
matter 10:1 12:25
    15:22 20:15
Matthew 2:2 3:7
mean 5:5,22 11:4,6
    23:23 26:22 29:4,11
    30:22 33:17
meaning 9:6
meaningless 8:23 9:1,3
means 8:13
medical 3:9
meet 31:24
meeting 16:18 24:1
members 37:11
mere 9:18
meritorious 22:15
merits 13:23 14:4,10
    18:21 19:4,6 27:22
Method 2:23
Michael 1:6,12,22 3:8
    3:10
middle 24:3 30:24
Miller 2:2 3:7,7 18:15
    18:23 37:24
million 5:18
mindset 36:7
minority 25:19,21
mistake 18:12,13
Moakley 2:20
modus 7:14
moment 28:17
money 22:16,19 23:17
    23:18 24:20,22 25:1
month 4:17
months 5:12
motion 3:13 4:10 15:6
    19:18 26:16 34:19,21
move 10:3,6 21:17
moved 13:13 27:14
moving 13:20

_____ N _____

necessarily 15:2
necessary 9:11
need 3:21,22,23,24
    11:16 22:10 31:4,8

needed 20:21
needs 15:2
negotiation 24:1
never 5:9,9,12,19 11:10
    21:5
new 4:19
Newburyport 10:25
    27:12
nibbling 17:1
Niceville 27:9 33:17
night 24:4 30:24
Northern 33:18
notice 15:19
notwithstanding 32:20
number 20:2

_____ O _____

obtaining 36:17
Obviously 20:22
occur 18:24 37:5
odd 17:10
Office 1:23 18:6
Official 2:20 38:5
Oh 35:4
okay 11:8 12:8 18:19
    22:6 24:2,7 25:16
    30:22,22 31:2 35:12
    37:21
ones 13:24
open 7:3
operandi 7:14
Ophnet 1:9 3:13 15:1
    16:16,20 18:16 20:3
    22:17
opinion 11:16
opportunity 14:12
opposed 33:7
opposite 29:18
order 4:3,5,7 26:11,18
    32:10 34:19
ordering 4:5
original 28:10
other's 17:1
ought 17:5,6,15 28:8
    32:6 37:12
outside 24:5
overcome 32:22
overstating 26:8
Owens 2:20 38:5
owes 22:16
owned 16:10
owner 25:8,9
owns 16:9

_____ P _____

P 1:16
paid 29:12
Pamela 2:20 38:5

paper 21:11
papers 14:20 18:1
parallel 7:6
Pardon 35:7
part 8:15 24:6,24
particularly 10:24,25
    21:6
parties 7:14 9:14,14
    28:6,7 34:18,23 37:11
party 4:25 14:2 23:22
part-time 29:12
pay 9:15 16:20 22:17
pendens 30:12,18
pending 10:7 34:5
people 25:24 36:24
percent 16:9
perfectly 31:18
permit 17:11
person 15:17
personal 25:5
persuasive 13:7
piece 24:10,12 25:3
Pineapple 1:23
Pitchford 1:23
place 13:21 28:13 29:7
    29:14,14,19,20 30:4
    32:18,19
placeholder 6:7 7:21
places 28:11
plaintiff 1:4 4:22
plaintiffs 1:10,21 3:6
    5:16 29:13
pleading 10:16 35:6,8
pleadings 28:10 29:1
please 3:3
pleased 26:17
pockets 33:16
Pogo 15:23
point 6:19 9:1,16 10:8
    11:14 12:16,18 17:4
    24:24 29:4,13
portion 24:17
position 13:20 17:17
    22:8
positioning 26:3
possibility 12:19,20
possible 9:20
possibly 14:13
Post 1:23
potentially 36:10
practice 3:9,12
practicing 8:3
preemptive 13:9
prefer 13:21,22
prepared 7:20
preparing 36:11
presence 15:2
present 32:21

HIRSCH V LAMENSDORF>

Page 42

presented 4:4
pressed 33:10 35:23
pretend 18:10
pretty 19:14 33:2
primary 30:15
principal 28:13 29:6,13
  29:19,20 30:4 32:18
  32:18
principally 17:13 28:21
principals 25:6 27:5,8
prior 18:17 36:13
pro 3:12,14
probably 6:8 7:25 27:2
  28:1,2 36:4
problem 5:6 19:10
procedural 14:14
proceeding 14:8 17:9
  21:10
proceedings 38:8
proceeds 5:15 23:5
process 6:4,20,23 16:22
  16:24,25 36:11
profession 12:24
professionals 9:18
proliferating 12:11
  37:14
proliferation 9:20
promptly 9:20 37:13
proper 34:19
properly 28:7 32:7,11
  32:16 37:8
property 5:14 23:4,8
  24:2,11,12 25:3,8
  30:14,16,21,24
protect 11:20 25:20
protected 31:2,5
protecting 30:13
provided 16:2
prudence 34:6,8 36:18
  36:19,20
prudent 37:20
purchase 23:25
purpose 9:19 27:21
  30:13,15
put 24:5 26:9 32:13
P.M 2:12,12 38:1

**Q**

question 3:15 7:3 13:12
  15:23 26:6 32:14,15
  32:23 34:6,8 36:9
questionable 8:24
  11:23
quick 30:25
quickly 10:20
quite 8:25

**R**

R 2:20 38:3,5
Races 12:22
ragtime 5:20,23,23
randomly 19:12
ratify 11:17,17
reading 6:12 8:6 13:3
real 12:24 18:25 28:6
  33:7
really 3:21 5:17 17:7
  32:13
reason 4:16 10:13
  12:17 17:11 19:6
  23:1
rebuffed 17:24
receiver 24:25
recess 37:25
RECESSED 38:1
recitation 5:22
recollecting 12:13
reconsider 7:25
record 37:4
reduced 24:12,14
refuse 24:25
regarding 36:5
registered 14:25 15:1,3
  15:5 16:1,11
regret 7:15,17
related 18:18 19:16
relatedness 18:8 19:15
reluctant 9:10
rem 23:3,7 24:10
remand 4:11 29:1 34:3
  34:18 36:17
remanded 19:2 20:5
  29:5 34:12
remanding 34:14
remarkable 16:23,24
  17:6
remove 20:16
removed 17:11,12
reopen 31:9
repeated 27:4
repeating 12:18
Reporter 2:20 38:5
Reporting 2:23
represent 21:19,24
  28:25
representation 29:6
represented 4:22,23
  5:2 20:10,10 28:8
  33:24
representing 3:8
represents 21:22 25:12
request 36:11,22
require 10:20
requirements 31:24
requires 12:1
resident 14:21,23 15:11

resolve 20:23
resolved 9:19 17:16
respect 8:21 22:3
respond 19:3
response 9:24 12:2
responsibility 19:5
responsive 36:2
rest 5:23
result 16:16 17:15
ridden 33:8
right 5:4,21 9:7 15:13
  19:23 20:7 21:22
  23:1 24:21 25:17
  26:5 27:3,11,13,20
  28:24 29:8 30:19,22
  31:3,11 34:1,22 35:22
rights 25:21
ripe 8:10,11,19 37:15
  37:15
risk 10:12
RONALD 1:9
rotated 4:16
rough 3:23
roughly 6:5
rule 18:8 19:15 33:13
  37:2
ruled 18:7,21
rulings 36:14
run 3:23
Russell 1:22

**S**

S 1:22 38:6
sale 10:14,16,17 23:5
  23:11,11 24:2,25 25:1
  25:3 30:14
sanctions 26:19 37:17
sand 17:8
Sarasota 1:24 3:11
  24:18
sat 20:24
save 36:10
says 12:3 18:6 19:15
  22:14 28:11
Seaport 2:2
second 5:8 9:10 20:4
Secretary 28:20
see 5:19 17:10 19:14
  37:7
seeing 15:24
seek 34:7
seeks 16:14
seen 3:18,19 9:8 16:25
sell 11:13,14 12:21
  23:22 24:3 30:24
  31:10
send 23:23
sense 6:20,23 18:25,25

sent 4:10
separate 4:18 12:17
  13:6 17:7 20:14,19,23
sequencing 10:21
serve 6:9,10,11 7:20
  9:4 15:13 20:24
served 5:9 14:16,19
  27:15
serves 5:11
service 5:25 6:3,20,23
  14:15 15:19
services 37:3
serving 6:4
session 10:25 11:1
  12:14
sessions 21:7
set 26:13
shareholders 22:4
  25:19,21
shareholder's 16:18
  24:1
sheet 18:16
Sheriff 14:17 15:15
shod 3:23
shop 17:23
shopped 18:3
short 8:7 34:1
shorthand 38:8
showed 29:20
shown 21:9
sides 3:19 34:11 35:9
sign 6:17
signature 26:10
signed 6:6,18 8:18
simply 13:10 14:14
  28:4 33:7 34:18
  35:14 36:21 37:10
sitting 19:10 26:22,24
situation 21:9
small 27:6
smile 36:22
sold 5:15 30:16
sooner 8:17,18
sophisticated 33:6
sorry 6:1 28:18
sort 12:10 13:9 21:3
  25:24 32:14,15
South 1:23 5:17
specific 32:14,15
specifically 19:19 36:16
spent 26:3
squalling 17:1
state 1:20 4:7,8,19 6:6
  6:13 7:23 10:15,22
  11:24 15:20 17:15,17
  20:5,9,16,22 21:2
  23:13 24:18 25:2,3,15
  26:24 27:1,3,6 28:5

28:20 29:5,17 30:3,7
  30:21,25 31:20 33:5,6
  33:9 36:6
statement 8:6 17:3,7
states 1:1,17 7:4 13:6
stayed 7:9,10 13:2,4
  30:8
stealth 37:15
step 5:24,24 25:25
steps 34:18
stop 23:5 37:12
Street 1:20
strikes 8:23
strong 8:1
stuff 8:4 12:11 21:1
  32:6
stupid 18:9 19:17
submit 15:6
submits 8:20
submitted 18:1 22:14
subsequent 14:8
sudden 5:10
sued 4:18,20 6:6 20:3
sues 20:13
suggest 35:23
suing 13:24 16:3,4,9
  20:10
Suite 2:21
Superior 26:16 34:4,5
  36:1
support 29:11 34:8
  35:15 37:21
supported 34:20
suppose 33:23
supposed 31:15
sure 15:1 17:19 18:18
  31:7 33:1,2,2
surgery 10:14 11:13,14
  12:21,22
surprise 28:1
suspect 12:15
system 33:6

**T**

T 38:3,3
Taaffe 1:22 3:11,12,20
  4:3,8,12,15,25 5:2,5
  5:21 17:17,21 18:2,12
  19:3,18,23 20:1,7,18
  21:4,8,14,17,21,25
  22:4,9,13,23 23:1,8
  23:20 24:9,14,21,24
  25:8,11,15,25 26:11
  26:18 27:2,11,13,20
  29:4,16,23 30:1,9,12
  30:20 31:3,6,9,13,17
  32:1,4,23 33:11,21,24

34:11,13 35:1,5,8,12
  35:18,25 36:4 37:23
tail 13:10
take 6:14 23:5,12,16
  24:4 28:3 34:15,18
  37:9
taken 21:11 38:8
talking 4:9 10:21 22:6
  22:7 23:16,17 27:9,10
  27:12 31:14
tell 7:12,22 20:25 37:9
ten 37:19
tendered 13:14,15
  15:18 32:2
term 8:1
terms 34:10
test 34:6
Thank 15:9 35:5,18
  37:22,23,24,25
thing 11:25 12:1 17:16
  21:3 25:24 27:17
  30:2,11 37:20
think 5:14,15 9:25 10:2
  12:13 13:2,3 14:13
  18:20 25:7 26:15,21
  27:18 33:4,12 36:24
  37:2,3,5,17
thinks 36:25
third 16:10 23:22
thought 7:19 8:5
three 6:5 7:11 17:24
  28:11
time 8:2 9:22,23 10:22
  11:3 13:8,15 16:10,25
  26:2 27:16,18 31:21
  32:8 33:16 34:20
  35:18 37:14
timely 5:25 6:2,10,12
times 36:12,24
title 23:10,17
Today 3:13
Todd 1:20
told 5:9,12 27:7
touchstones 36:19
town 27:6
tracks 7:6
transact 28:23
transaction 22:12
transcribed 36:5 38:9
transcript 36:5
transcription 2:23 38:7
treatment 12:10
trees 26:1
trial 10:9,9 26:8,9,13
tried 3:24
trough 36:19
true 38:7
trust 23:6,12,16

trying 26:4
turn 13:12
Turner 33:21
twist 13:10
two 7:3,4 13:5,5 18:10
  19:15

U

U 38:6
unacceptable 37:10
unbeknownst 23:23
unconscionable 7:25
underlying 10:7
underpinnings 33:12
understand 7:11,19
  11:18 13:11 17:21
  28:4 30:1,1 33:2,11
undone 22:20
undoubtedly 36:12
unfamiliar 33:7
UNITED 1:1,17
unreal 8:6
unreasonable 9:25 10:2
unrepresented 21:22
  25:11,13
unsuccessful 32:5
use 15:15

V

validity 15:19,22
value 37:3
variety 28:14
various 32:19
VERSUS 1:5,11
vice 3:14
Vincent 33:22

W

W 1:9
want 9:5,25 10:10
  13:20 14:1 16:21
  30:3,5,6,16 31:10
  34:19,23,23 36:21
  37:7,16
wanted 10:13 15:18
  16:21
wasn't 9:3 19:9
waste 9:22
wasted 26:2
wasting 37:14
water 15:7
way 2:11,21 19:13
  33:17 34:16
ways 28:15
week 29:17
Weld 1:20
well-founded 36:3
Welsh 26:9

weren't 7:20
we'll 5:19 18:10 37:25
we're 3:21,24 5:17
  10:21 21:21 22:6,19
  23:10,16,17,21 24:2
  27:9,10,12 30:22,22
  31:14
we've 13:14
wheeling 25:23
whining 17:3
wholly 28:23 29:8
William 14:24
witness 16:5
WOODLOCK 1:16
words 23:10 30:15
work 28:21 35:2
workers 29:12
worse 13:9 18:8 19:17
worth 12:13 35:16
wouldn't 7:12 11:11
  15:13 25:2
wrong 18:8 19:2,17
  26:5

Y

year 10:11 15:20
years 17:24 19:15

Z

ZHL 4:17,22,22 13:13
  13:14,16,17,19,24
  14:15,23 15:17,25
  16:15,19,20 20:3,4,9
  20:10,12,13,13 21:10
  21:12,15,18,19,19,24
  22:3,16 23:22 25:8
  28:10,11 32:17
Zolla 1:9 16:13

0

02109 1:21
02135 2:3
02210 2:12,21

1

1 2:11,11,21
10 34:25
11th 26:12
12 1:18 3:2
120 28:3
1447(c) 36:14
155 2:2
1789 33:15

2

2005 1:18 3:2 6:19
240 1:23
28 1:20

3

3rd 2:11
3:15 2:12
3:55 2:12 38:1
31st 1:20
3200 2:21
34230-6948 1:24

4

49 16:9
49948 1:23

5

51 16:9

6

6th 6:18

8

8th 26:13

9

90 6:14,16 28:3

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Ophnet, Inc., John A. Hirsch, Ronald W. Zolla and Kenneth Cram

### DEFENDANTS

Michael Lamensdorf, Michael Lamensdorf, M.D., P.C., Bayou Jennkay, Inc., Kathy Lamensdorf and ZHL, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Essex, MA

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Sarasota, FL

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

J. Owen Todd
Edward Foye
Todd & Weld
28 State Street
Boston, MA 02109
(617) 720-2626

ATTORNEYS (IF KNOWN)

Brandon F. White
Matthew E. Miller
Foley Hoag LLP
155 Seaport Blvd., Boston, MA 02210-2600
617-832-1000

## II. BASIS OF JURISDICTION (PLACE AND "x" IN ONE BOX ONLY)

☐ 1 U.S. GOVERNMENT
Plaintiff

☐ 2 U.S. GOVERNMENT
Defendant

☐ 3 FEDERAL QUESTION
(US Government Not a Party)

☒ 4 DIVERSITY
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY.)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholder Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Medical Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395 ff)
☐ 862 Black Lung (923)
☐ 863 DIWC,DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commercial/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 USC § 1332. Plaintiffs seek recovery for breach of contract, breach of fiduciary duty, fraud, and tortious interference with economic relations in connection with written agreements among the parties. Defendants remove due to fraudulent joinder of defendant ZHL, Inc.

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ in excess of $75,000

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ YES   ☐ NO

## VIII. RELATED CASE(S)
IF ANY (See Instructions): Hirsch et al. v. Lamensdorf et al.; Ophnet, Inc. et al. v. Lamensdorf et al.  JUDGE  Woodlock; Lindsay (respectively)   DOCKET NUMBER  05-10902; 02-10570

DATE May 10, 2005

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT# _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG.JUDGE _____